**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

MARIBEL BAEZ; FELIPA CRUZ; R.D., ON BEHALF OF
HER MINOR CHILD, A.S.; on their own behalf and
on behalf of all others similarly situated;
UPPER MANHATTAN TOGETHER, INC.; and
SOUTH BRONX CHURCHES SPONSORING COMMITTEE, INC.,

       Plaintiffs,

       v.

NEW YORK CITY HOUSING AUTHORITY,

       Defendant.

---

13 CV 8916

No. 13-cv-

ECF Case



---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.    Public housing tenants who suffer from asthma bring this action on behalf of themselves and all others similarly situated to compel the New York City Housing Authority (NYCHA) to make reasonable accommodations and modifications in its policies, practices, and procedures to effectively abate mold and moisture in their apartments, which exacerbate their asthma symptoms. NYCHA's failure to make reasonable accommodations and modifications in policies, practices, and procedures to effectively abate mold and moisture in plaintiffs' apartments denies them an equal and meaningful opportunity to use, benefit from, and enjoy public housing, in violation of the Americans with Disabilities Act of 1990 (ADA) (codified as amended in scattered sections of 42 U.S.C. and 47 U.S.C.), Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 701 *et seq.*, the Fair Housing

1

Amendments Act of 1988 (FHAA), 42 U.S.C. § 3604, and Article 15 of New York State Executive Law, or the Human Rights Law, § 296.2-a(d)(1)-(2).

2.      Plaintiffs in this action are three residents of NYCHA housing who have asthma, and two nonprofit community-based organizations—Upper Manhattan Together, Inc. (Manhattan Together) and South Bronx Churches Sponsoring Committee, Inc. (South Bronx Churches)—that advocate for the rights of NYCHA tenants, including those with asthma who have mold and moisture in their apartments.[1]

3.      Then apartments of the named plaintiffs and the putative class contain mold and moisture, which are particularly hazardous to plaintiffs as a result of their asthma. Indoor mold and moisture in plaintiffs' homes exacerbate their asthma symptoms.

4.      NYCHA policies, practices, and procedures for responding to complaints of mold and moisture and for performing related repairs are not modified for residents with asthma, and are therefore inadequate to meet plaintiffs' needs. NYCHA does not modify these policies, practices, and procedures for individual plaintiffs and the plaintiff class.

5.      As a result of their asthma, plaintiffs need NYCHA to respond promptly to complaints of mold and moisture; use plumbers to diagnose and address underlying plumbing problems or leaks causing mold and moisture; remove infected walls, ceilings, and flooring when necessary to diagnose the cause of the mold and  moisture and remove infected surfaces; use low-toxicity chemicals to clean and treat infected areas; fully isolate work areas from the rest of plaintiffs' apartments to minimize plaintiffs' exposure to contaminated surfaces; conduct air quality testing and regular inspections to ensure that

---

[1] This complaint uses the term "plaintiffs" to refer to the individual plaintiffs.

remediation work was effective; and in some circumstances, move plaintiffs to another apartment while work is being performed.

6.    The named plaintiffs have informed NYCHA that they have asthma, informed NYCHA that mold and moisture in their apartments is particularly hazardous to them as a result of their asthma, and asked NYCHA to provide reasonable accommodations and reasonable modifications of NYCHA mold remediation and repair policies and practices needed to ensure that mold and moisture are promptly and effectively remediated from their apartments. Plaintiffs requested that NYCHA modify: the timeframe for performing the work, the nature of the work performed, the types of chemicals used for remediation, the steps used to ensure that work performed was effective in addressing the mold and moisture, the expertise of staff used to perform the work, and other aspects of NYCHA's response to complaints of mold and moisture.

7.    NYCHA has failed to provide the requested reasonable accommodations and modifications.

8.    The named plaintiffs continue to reside in apartments with mold and moisture, which exacerbate their asthma symptoms.

9.    NYCHA's failure to reasonably modify its policies, practices, and procedures for residents, who need these modifications as a result of their asthma, denies plaintiffs and members of the plaintiff class an equal and meaningful opportunity to use, benefit from, and enjoy public housing in violation of the ADA, Section 504, the FHAA, and the Human Rights Law.

10.   Manhattan Together and South Bronx Churches advocate for the provision of safe public housing on behalf of public housing tenants. Manhattan Together and South

Bronx Churches serve the individually named plaintiffs, and seek an order granting plaintiffs' accommodation requests, which will benefit Manhattan Together and South Bronx Churches as well. Manhattan Together and South Bronx Churches seek an order requiring systemic changes to the manner in which NYCHA addresses mold and moisture problems in apartments with tenants with asthma, which will benefit other tenants with asthma who are served or will be served by Manhattan Together and South Bronx Churches.

11.     Plaintiffs seek this Court's intervention to protect the legal rights of NYCHA residents with asthma to use and enjoy their homes without suffering harm because of their disabilities.

## JURISDICTION AND VENUE

12.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1343(3)-(4), because plaintiffs assert civil rights claims against NYCHA under federal law, specifically the ADA, Section 504, and the FHAA.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), because NYCHA resides in this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Most of the individual plaintiffs reside in public housing units owned and operated by NYCHA that are located in this judicial district. Plaintiffs Manhattan Together and South Bronx Churches also are located in this judicial district.

14.     This action is timely under the ADA and the Rehabilitation Act because it was filed within three years of the denial of the requests for reasonable accommodation and modification.

15.     This action is timely under the FHAA, 42 U.S.C. § 3613(a)(1)(A), because it was filed within two years of the occurrence of a discriminatory housing practice.

16.     This action is timely under the Human Rights Law because it was filed within three years of the refusal to permit reasonable modifications or accommodations in publicly-assisted housing.

## PARTIES

17.     Plaintiffs consist of individual plaintiffs Maribel Baez; Felipa Cruz; R.D., on behalf of her minor child, A.S.; and organizational plaintiffs Manhattan Together and South Bronx Churches.  The individual plaintiffs bring this action on behalf of themselves and all others similarly situated.

18.     Plaintiff Maribel Baez resides in the Bronx, in the Melrose Houses development, owned and operated by NYCHA. She has resided there since 2006.

19.     Plaintiff Felipa Cruz resides in the Bronx, in the Webster development, owned and operated by NYCHA. She has resided there since 2002.

20.     Plaintiff R.D. brings this action on behalf of her six-year old daughter, A.S. They reside with A.S.'s three siblings in Brooklyn, in the Van Dyke I development, owned and operated by NYCHA. R.D. has resided there since 1997.

21.     Plaintiff Manhattan Together is a nonprofit, community-based membership organization composed of institutions—primarily religious congregations and nonprofit community groups—located in the borough of Manhattan. Its mission is to improve the quality of life of poor and working class individuals, with focus on upgrading living conditions in public housing, ensuring pedestrian safety, and creating livable communities for senior citizens. Since its founding in 1991, it has advocated for change by mobilizing

5

community members and strengthening community institutions. Manhattan Together is an affiliate of the Industrial Areas Foundation, a network of congregation-based citizens' organizations throughout the United States. Manhattan Together is incorporated in New York and has an office address of 125 E. 105th Street, New York, NY 10029.

22.     Plaintiff South Bronx Churches is a nonprofit, community-based membership organization composed of religious congregations located in the South Bronx. Established in 1987 by community leaders to combat the degradation of the urban environment, South Bronx Churches has long worked for better and more affordable housing and quality education and medical care in the South Bronx. South Bronx Churches is an affiliate of the Industrial Areas Foundation. South Bronx Churches is incorporated in New York and has an office address of 389 E. 150th Street, Bronx, NY 10455.

23.     Manhattan Together and South Bronx Churches have long advocated on behalf of New York City public housing tenants with asthma for NYCHA to remedy the mold and moisture in their homes, by helping with the submission of complaints to NYCHA and follow up, requesting assistance from tenants' doctors and local representatives, and raising awareness of the problems among NYCHA and the public. Manhattan Together and South Bronx Churches also worked directly with each of the individual plaintiffs on preparation and submission of their requests for reasonable accommodations and modifications. Manhattan Together and South Bronx Churches have invested hundreds of hours of staff time in this effort.

24.     Manhattan Together and South Bronx Churches have devoted many more hours to advocating on behalf of other public housing tenants with asthma who need NYCHA to remediate the mold and moisture in their homes.

6

25.     Manhattan Together has limited resources to support its mission. NYCHA's failure to provide the requested accommodations and modifications to the individual plaintiffs and its systemic failure to correct the mold and moisture problems in the homes of tenants with asthma harms individuals served by Manhattan Together. NYCHA's unlawful actions require Manhattan Together to divert resources to combat NYCHA's continued discrimination. This drain on Manhattan Together's resources impairs its ability to carry out its mission. Manhattan Together's injuries will be redressed by an order requiring NYCHA to provide the requested accommodations and modifications and to implement changes to the manner in which NYCHA responds to complaints of mold and moisture where tenants have asthma.

26.     South Bronx Churches has limited resources to support its mission. NYCHA's failure to provide the reasonable accommodations and modifications to the individual plaintiffs and its systemic failure to effectively address mold and moisture problems in the homes of tenants with asthma harms individuals served by South Bronx Churches. NYCHA's unlawful actions require South Bronx Churches to divert resources to combat NYCHA's continued discrimination. This drain on the resources of South Bronx Churches impairs its ability to carry out its mission. South Bronx Churches' injuries will be redressed by an order requiring NYCHA to provide the requested accommodations and modifications and to implement changes to the manner in which NYCHA responds to complaints of mold and moisture where tenants have asthma.

27.     Defendant NYCHA is a public housing authority in the City of New York that owns and operates housing for low- and moderate-income residents in all five boroughs of New York.

28.     NYCHA is the largest public housing authority in North America, with over 400,000 residents in its housing.

29.     To carry out its mission, NYCHA receives federal funding from the U.S. Department of Housing and Urban Development (HUD). NYCHA is a public entity created pursuant to New York Public Housing Law § 401. NYCHA's principal offices are located at 250 Broadway, New York, NY 10007.

## STATUTORY AND REGULATORY FRAMEWORK

### Americans with Disabilities Act

30.     Congress passed the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

31.     Title II of the ADA prohibits public entities, defined to include state and local governments and their departments, agencies, and instrumentalities, from excluding qualified individuals with disabilities from participation in or denying them the benefits of the services, programs, or activities of the public entity. 42 U.S.C. §§ 12132, 12131(1)(A)-(B); 28 C.F.R. §§ 35.104, 35.130(a).

32.     Regulations implementing Title II of the ADA provide, in pertinent part, as follows:

A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability
. . .
(ii)  Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

. . .

(vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

28 C.F.R. § 35.130(b)(1)(ii)-(iii), (vii).

33.     Regulations promulgated by the U.S. Department of Justice to implement Title II of the ADA provide that "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities." 28 C.F.R. § 35.130(b)(3)(i)-(ii).

34.     Regulations implementing Title II of the ADA further provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7); *see also* 42 U.S.C. § 12131(2) (defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity").

35.     The ADA protects "qualified individual[s] with a disability." 42 U.S.C. § 12131(2); 28 C.F.R. § 35.130(a).

36.     Under the ADA, a "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies,

or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

37.     Under the ADA, "disability" is defined in pertinent part as "a physical or mental impairment that substantially limits one or more major life activities. . . ." 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 35.104.

38.     "Physical or mental impairment" is defined in regulations implementing Title II of the ADA to include "[a]ny physiological disorder or condition" affecting the respiratory system. 28 C.F.R. § 35.104. "Major life activities" is defined in the ADA to include breathing, working, sleeping, concentrating, and the operation of major bodily systems, including the respiratory system. 42 U.S.C. § 12102(2)(A)-(B); *see also* 28 C.F.R. § 35.104.

<u>Section 504 of the Rehabilitation Act</u>

39.     Section 504 prohibits programs and activities receiving federal financial assistance from excluding otherwise qualified individuals with disabilities from participation in, or denying them the benefits of, or otherwise subjecting them to discrimination solely by reason of disability. 29 U.S.C. § 794(a).

40.     Section 504 requires the head of each Executive agency to promulgate regulations to carry out the Act. 29 U.S.C. § 794(a).

41.     HUD has promulgated regulations implementing Section 504 that apply to recipients of federal financial assistance from HUD. 24 C.F.R. pt. 8.

42.     HUD regulations implementing Section 504, which use the older term "individual with handicaps," provide, in pertinent part, as follows:

10

A recipient, in providing any housing, aid, benefit, or service in a program or activity that receives Federal financial assistance from [HUD] may not, directly or through contractual, licensing, or other arrangements, solely on the basis of handicap:

. . .

(ii) Afford a qualified individual with handicaps an opportunity to participate in, or benefit from, the housing, aid, benefit, or service that is not equal to that afforded to others;

(iii) Provide a qualified individual with handicaps with any housing, aid, benefit, or service that is not as effective in affording the individual an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

. . .

(viii) Otherwise limit a qualified individual with handicaps in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by other qualified individuals receiving the housing, aid, benefit, or service.

24 C.F.R. § 8.4(b)(1)(ii)-(iii), (viii).

43.     HUD regulations implementing Section 504 provide that "[f]or purposes of this part, housing, aids, benefits, and services, to be equally effective, are not required to produce the identical result or level of achievement for individuals with handicaps and non-handicapped persons, but must afford individuals with handicaps equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement." 24 C.F.R. § 8.4(b)(2).

44.     HUD regulations implementing Section 504 provide that recipients of federal financial assistance from HUD must not "directly or through contractual or other arrangements, utilize criteria or methods of administration the purpose or effect of which would: (i) Subject qualified individuals with handicaps to discrimination solely on the basis of handicap; [or] (ii) Defeat or substantially impair the accomplishment of the objectives of the recipient's federally assisted program or activity for qualified individuals with a particular handicap involved in the program or activity, unless the recipient can

demonstrate that the criteria or methods of administration are manifestly related to the accomplishment of an objective of a program or activity. . . ." 24 C.F.R. § 8.4(b)(4)(i)-(ii).

45.     Section 504 protects "otherwise qualified individual[s] with a disability." 29 U.S.C. § 794(a).

46.     HUD Section 504 regulations, which use the older term "qualified individual with handicaps," define a "qualified individual with handicaps," as "an individual with handicaps who meets the essential eligibility requirements for participation in, or receipt of benefits from, that program or activity." 24 C.F.R. § 8.3.

47.     Under Section 504, "individual with a disability" is defined, in pertinent part, as an individual with a physical or mental impairment that substantially limits one or more major life activities. 29 U.S.C. § 705(20)(B) (defining "individual with a disability" as "any person who has a disability as defined in section 12102 of Title 42); *see also* 24 C.F.R. § 8.3 (defining the older term "individual with handicaps").

48.     "Major life activities" as defined in Section 504 includes breathing, working, sleeping, concentrating, and the operation of major bodily systems. 29 U.S.C. § 705(20)(B) (incorporating the definition of disability in 42 U.S.C. § 12102(2)(A)-(B)); *see also* 24 C.F.R. § 8.3 (defining major life activities to include breathing, taking care of oneself, and working).

<u>Fair Housing Amendments Act</u>

49.     The FHAA provides that "it shall be unlawful . . . [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of– (A) that buyer or renter, [or] (B) a person residing in or

intending to reside in that dwelling after it is so sold, rented, or made available. . . ." 42

U.S.C. § 3604(f)(1)(A)-(B); *accord* 24 C.F.R. § 100.202(a)(1)-(2).

50.     The FHAA provides that "it shall be unlawful . . . [t]o discriminate against any

person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the

provision of services or facilities in connection with such dwelling, because of a handicap

of– (A) that person; or (B) a person residing in or intending to reside in that dwelling after

it is so sold, rented, or made available. . . ." 42 U.S.C. § 3604(f)(2)(A)-(B); *accord* 24 C.F.R.

§ 100.202(b)(1)-(2).

51.     "Discrimination" is defined in the FHAA to include "a refusal to make

reasonable accommodations in rules, policies, practices, or services, when such

accommodations may be necessary to afford such person equal opportunity to use and

enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *accord* 24 C.F.R. § 100.204(a).

52.     "Handicap" is defined under the FHAA in pertinent part as "a physical or

mental impairment which substantially limits one or more of such person's major life

activities." 42 U.S.C. § 3602(h); *accord* 24 C.F.R. § 100.201. "Physical or mental impairment"

is defined to include any physiological disorder or condition of the respiratory system. 24

C.F.R. § 100.201. "Major life activities" is defined to include breathing and working. Id.

<u>New York Human Rights Law</u>

53.     The New York Legislature passed the Human Rights Law because "the state

has the responsibility to act to assure that every individual within this state is afforded an

equal opportunity to enjoy a full and productive life and that the failure to provide such

equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate

. . . housing . . . not only threatens the rights and proper privileges of its inhabitants but

menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants." § 290.3.

54.     The Human Rights Law makes it an unlawful discriminatory practice for the owner of "publicly-assisted housing accommodations" to "refuse to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied or to be occupied by the said person, if the modifications may be necessary to afford the said person full enjoyment of the premises," and to "refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling." § 296.2-a(d)(1)-(2).

55.     "Publicly-assisted housing accommodations" are defined to include all public housing within New York State. § 292.11(a).

56.     "Disability" is defined under the Human Rights Law in pertinent part as "a physical, mental or medical impairment resulting from anatomical, physiological or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or a record of such an impairment." § 292.21(a)-(b).

**GENERAL FACTUAL ALLEGATIONS**

57.     Moisture in indoor living environments favors mold growth. Moisture is the primary factor for growth of mold indoors.

58.     Moisture also fosters bacterial growth, triggers the release of air toxins, and attracts dust mites and cockroaches, which contribute allergens to household air and dust. Persistently damp conditions degrade the quality of indoor air.

14

59.     Individual plaintiffs have mold and moisture problems in their apartments.

60.     Individual plaintiffs have asthma, a chronic respiratory disease that inflames and narrows the airways, causing recurring periods of wheezing, chest tightness, shortness of breath, and coughing.

61.     Contaminants in the air, when breathed in by individuals with asthma, react with their inflamed airways and trigger asthma symptoms and reactions. Severe asthma reactions can require emergency care, and may result in death.

62.     Individuals with asthma are particularly vulnerable to the ill health effects of mold and moisture. Asthma symptoms and attacks occur more frequently when the individual is exposed to mold and moisture at home.

63.     The link between mold, moisture, and other contaminants found in damp indoor environments (e.g., dust mite and cockroach allergens) and the exacerbation of asthma symptoms is well established.

64.     Levels of mold that harm the health of individuals with asthma may be present in an indoor environment even when mold growth is not visible.

65.     NYCHA's mold remediation policy GM-3735 acknowledges that mold can exacerbate health problems, particularly for people with serious respiratory disease.

66.     NYCHA's Tenant Handbook, "A Home to Be Proud Of," states that "too much exposure to mold may cause or worsen conditions such as asthma, hay fever, or other allergies. The most common symptoms of overexposure are similar to reactions to plant pollen, such as coughing, congestion, runny nose, eye irritation, and aggravation of asthma." The Tenant Handbook further states, "Mold and mildew can pose a health hazard for you and your family, so it is important to eliminate the problem as soon as possible."

15

67.     Manhattan Together and South Bronx Churches serve and assist many individuals with asthma who are exposed to mold and moisture in their public housing in addition to the individual plaintiffs.

68.     NYCHA is responsible for remediating mold and moisture conditions in residences it owns and operates.

69.     NYCHA has written policies and procedures for addressing mold in tenants' apartments and for making repairs generally in the housing it operates.

70.     NYCHA's mold policy, GM-3735, "Prevention, Detection, and Remediation of Mold" provides that when mold is reported, a work ticket is generated and a determination must be made about the extent of the problem and probable cause. Section IV.B. Policy GM-3735 also acknowledges that "in all situations, the underlying cause of water filtration must be rectified or fungal growth will recur," and requires maintenance staff to "identify and control the moisture source." *Id.* Policy GM-3735:

a) Requires maintenance staff to assess the extent of the mold problem through visual inspection. § IV.B.1. However, some mold may not be visible and visual inspection provides limited information about the nature and scope of the mold or its underlying cause;

b) Does not require plumbers to be involved in any stage of the problem identification or mold remediation process;

c) Requires the Environmental Health and Safety Unit to perform the mold remediation only when visible mold is greater than ten cumulative square feet in any given apartment, unless it is a chronic condition that cannot be remedied by maintenance staff, § V.A;

16

d) Leaves it up to maintenance staff to determine if a problem is chronic and cannot be remedied by maintenance staff and contains no guidelines for making this determination, § V.A;

e) Does not require NYCHA to remove parts of walls that are mold and-moisture-infested, *see* § V.D, and states that "mold can generally be removed from non-porous surfaces by wiping or scrubbing with a detergent solution containing a fungicide," § V.D.2;

f) Does not require NYCHA to paint surfaces with a low-toxic coating as an interim measure to contain mold, *see* § V.D;

g) Does not require NYCHA to remove property and furnishings from the work area, erect barriers isolating the work area from the rest of the apartment, or protect heating and air conditioning units *see* § V.D.1.

h) Recommends but does not require NYCHA to use a High Efficiency Particulate Air (HEPA) filter during clean-up or take other steps to protect tenants from exposure to dust, fumes, and mold-infested substances while work is being performed or during clean-up, § V.D.3; and

i) Does not contain different procedures or instructions for mold detection or remediation for apartments where tenants with asthma reside.

71.     NYCHA also has an ADA reasonable accommodation/modification policy, GM-3584, "Disabled Residents:  Processing Requests for Accommodations and Modifications Under the Voluntary Compliance Agreement." The policy, which uses the terms "reasonable accommodations" and "reasonable modifications" interchangeably, provides that tenants can request reasonable accommodations at any time.

72.     The examples of reasonable accommodations and modifications mentioned in the NYCHA ADA policy are: (1) modifications needed to make an apartment accessible to a wheelchair user, such as widening doorways and installing accessible cabinets; and (2) modifications in policies and practices where a part of a building cannot be made accessible to a wheelchair user, such as picking up and dropping off laundry for an individual if a laundry room is not wheelchair accessible and cannot be made accessible. The ADA policy does not mention asthma or discuss reasonable accommodations and modifications that tenants with asthma may need.

73.     The NYCHA ADA policy distinguishes ADA reasonable accommodations and modifications requests from a request "that is actually a maintenance complaint," such as "mold, mildew, leaking plumbing." The ADA policy states: "DO NOT INCLUDE AS AN ACCOMMODATION OR MODIFICATION[,] IF IT IS A MAINTENANCE-RELATED REQUEST, SUCH AS ELEVATORS, MOLD, MILDEW, LEAKING PLUMBING, ETC. . . ." The ADA policy contains no process for NYCHA to modify maintenance-related policies, practices, or procedures for individuals with a disability, even if the modification is needed for a reason related to a disability.

## FACTUAL ALLEGATIONS OF INDIVIDUAL PLAINTIFFS

### Maribel Baez

74.     Maribel Baez suffers from asthma, which substantially limits her major life activities, including breathing and respiration, a major bodily function.

75.     When Ms. Baez is exposed to the mold and moisture in her apartment, it exacerbates her asthma symptoms, and it is difficult for her to breathe.

76.     Because of Ms. Baez's asthma, she needs mold and moisture eliminated from her home.

77.     On December 18, 2012, Ms. Baez asked NYCHA for reasonable accommodations and modifications of NYCHA repair and mold removal policies, practices, and procedures, as detailed in paragraphs 89 through 94 below.

78.     NYCHA's work has not corrected the recurrent mold and moisture conditions in Ms. Baez's apartment. NYCHA has not otherwise provided the accommodations sought.

<u>Felipa Cruz</u>

79.     Felipa Cruz suffers from asthma, which substantially limits her major life activities, including breathing and respiration, a major bodily function.

80.     Mold and moisture in Ms. Cruz's apartment exacerbate her asthma symptoms.

81.     Because of Ms. Cruz's asthma, she needs mold and moisture eliminated from her home.

82.     On December 18, 2012, Ms. Cruz asked NYCHA for reasonable accommodations and modifications of NYCHA repair and mold removal policies, practices, and procedures, as detailed in paragraphs 89 through 94 below.

83.     NYCHA's work has not corrected the recurrent mold and excessive moisture conditions in Ms. Cruz's apartment. NYCHA has not otherwise provided the accommodations sought.

<u>A.S.</u>

84.     A.S. suffers from asthma, which substantially limits her major life activities, including breathing and respiration, a major bodily function.

19

85.     Mold and moisture in A.S.'s home exacerbate her asthma symptoms.

86.     Because of A.S.'s asthma, she needs mold and moisture eliminated from her home.

87.     On December 18, 2012, R.D. asked NYCHA on A.S.'s behalf for reasonable accommodations and modifications of NYCHA repair and mold removal policies, practices, and procedures, as detailed in paragraphs 89 through 94 below.

88.     NYCHA's work did not correct the mold and moisture conditions in the bathroom or bedroom of R.D.'s apartment. NYCHA has not otherwise provided the accommodations sought.

### REQUESTS FOR REASONABLE ACCOMMODATIONS AND MODIFICATIONS

89.     On December 18, 2012, counsel for plaintiffs submitted to NYCHA a written request for reasonable accommodations and modifications under the ADA, Section 504, and the FHAA for Maribel Baez, Felipa Cruz, and A.S.

90.     Each request for reasonable accommodations and modifications stated that the plaintiff has asthma that substantially limits breathing and respiration, and thus is an individual with a disability under the ADA, Section 504, and FHAA.

91.     Each request for reasonable accommodations and modifications discussed the mold and moisture conditions in the plaintiff's apartment and summarized the results of environmental inspections and airborne mold tests of plaintiff's apartment.

92.     Attached to each request for reasonable accommodations and modifications was medical documentation of the plaintiff's asthma and the results of environmental inspection report(s). The inspection report(s) identified mold and moisture problems in the plaintiff's apartment and detailed the steps that need to be taken to effectively

20

remediate mold and moisture from the apartment in a manner that protects the plaintiff's

safety and health.

93.     Each letter requested that NYCHA reasonably modify NYCHA policies so that

mold, moisture, and their underlying causes would be effectively remediated in plaintiffs'

apartments. Plaintiffs requested that NYCHA policies be modified for them in the following

ways: expedite the timeframe for responding to complaints of mold and moisture and for

performing the corrective work; use plumbers to diagnose and address underlying

plumbing problems or leaks causing mold and excessive moisture; remove infected walls,

ceilings, and flooring when necessary to diagnose the cause of the mold and excessive

moisture and remove infected surfaces; use low-toxicity chemicals to clean and treat

infected areas; fully isolate work areas from the rest of plaintiffs' apartments to minimize

plaintiffs' exposure to contaminated surfaces; and in some circumstances, move plaintiffs

to another apartment while work is being performed.

94.     The requests for reasonable accommodations and modifications asked

NYCHA to respond within ten business days to the requests.

95.     After the requests for reasonable accommodations and modifications were

submitted, NYCHA performed maintenance work in each of plaintiffs' apartments following

NYCHA's standard policies, procedures, and practices. No NYCHA policies, procedures, or

practices were modified in the performance of the work.

96.     On March 12, 2013, NYCHA sent a written response to the requests for

accommodations and modifications submitted on behalf of plaintiffs. The letter did not

mention or respond to any of plaintiffs' specific requests for reasonable accommodations

and modifications of NYCHA policies, or identify any NYCHA policies, practices, or procedures that were modified in the performance of the work.

97.     On May 7, 2013, plaintiffs sent NYCHA a letter informing it that the maintenance work it undertook did not correct the mold and moisture conditions or their underlying causes, and did not provide those plaintiffs with the reasonable accommodations and modifications requested for their asthma.

## CLASS ALLEGATIONS

98.     Pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, plaintiffs bring this action individually and on behalf of themselves and a class of similarly situated individuals who are:

> Current and future residents of NYCHA who have asthma that substantially limits a major life activity and who have mold and/or excessive moisture in their NYCHA housing.

99.     Members of the class are so numerous that joinder of all members is impracticable.

100.    Upon information and belief, NYCHA does not maintain and publish data on the number of tenants in NYCHA housing who have a diagnosis of asthma.

101.    Upon information and belief, thousands of NYCHA residents are diagnosed with asthma.

102.    Upon information and belief, NYCHA does not maintain and publish data on the number of NYCHA housing units with mold and moisture, or the number of NYCHA residents with asthma who reside in NYCHA apartments that contain mold or moisture.

103.    Upon information and belief, mold is extremely common in NYCHA housing. NYCHA's Residents' Handbook discusses mold in a section of the handbook on "Potential Hazards." NYCHA has a separate policy on mold remediation, GM-3735.

104.    Upon information and belief, the number of NYCHA residents with asthma who reside in apartments with mold and moisture is in the thousands.

105.    The number of NYCHA residents with asthma who live in apartments with mold and moisture is unknown but ascertainable, and joinder would be impracticable.

106.    Individual litigation by each member of the class would burden the judicial system and would be impracticable because individual class members lack the knowledge, sophistication, and financial means to maintain individual actions.

107.    The prosecution of individual actions by plaintiffs and other similarly situated individuals would create a risk of inconsistent adjudications and incompatible rules of law.

108.    This case raises common questions of law and fact, including but not limited to the following:

      a.    Whether NYCHA policies, practices, and procedures for responding to mold complaints and for performing repairs are inadequate to meet proposed class members' needs, given their asthma;

      b.    Whether NYCHA has provided reasonable accommodations or modifications in its policies, practices, and procedures to effectively abate mold and moisture in proposed class members' apartments;

      c.    Whether, in failing to provide an apartment free of mold and moisture, and failing to reasonable modify its policies, practices, and procedures to

provide an apartment free of mold and moisture, NYCHA violates the

Americans with Disabilities Act;

d.   Whether, in failing to provide an apartment free of mold and moisture, and

failing to reasonably modify its policies, practices, and procedures to

provide an apartment free of mold and moisture, NYCHA violates Section

504 of the Rehabilitation Act; and

e.   Whether, in failing to provide an apartment free of mold and moisture, and

failing to reasonably modify its policies, practices, and procedures to

provide an apartment free of mold and moisture, NYCHA violates the Fair

Housing Amendments Act.

109.    The claims of the named plaintiffs are typical of the class in that plaintiffs and

each member of the class are current and future residents of NYCHA who have asthma that

substantially limits a major life activity and who have mold and moisture in their NYCHA

housing.

110.    The named plaintiffs will fairly and adequately represent interests of the

class because their interests do not conflict with the interests of other class members they

seek to represent.

111.    Plaintiffs intend to prosecute this action vigorously.

112.    The attorneys representing plaintiffs are experienced and capable litigators

with significant experience in class action litigation in federal and state courts, including

matters relating to public benefits, the ADA, Section 504 of the Rehabilitation Act, due

process protections, and environmental justice. Class counsel will prosecute this action

vigorously and competently.

113.   Defendants have acted on grounds generally applicable to the class, by:

    a.   Failing to provide apartments free of mold and moisture; and

    b.   Failing to provide reasonable accommodations or modifications in policies,

        practices, and procedures to effectively abate mold and moisture in

        proposed class members' apartments.

114.   Declaratory and injunctive relief are appropriate with respect to the class as

a whole.

115.   A class action is the exclusive method by which the interests of all affected

persons can be adequately protected.

**CLAIMS FOR RELIEF**

First Cause of Action
Title II of the Americans with Disabilities Act and Its Implementing Regulations
(On Behalf of All Plaintiffs, in Their Individual, Representative, and/or Organizational
Capacities, and the Class)

116.   NYCHA is a public entity for the purposes of 42 U.S.C. § 12131(1).

117.   Each of the individual plaintiffs is an "individual with a disability" as defined

in 42 U.S.C. § 12102(1)(A) and 28 C.F.R. § 35.104 and a "qualified individual with a

disability" as defined in 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104.

118.   In failing to provide apartments free of mold and moisture, and failing to

reasonably modify its policies, practices, and procedures to provide an apartment free of

mold and moisture, NYCHA has failed to afford plaintiffs an opportunity to participate in

and benefit from NYCHA housing that is equal to that afforded others, provided a benefit

that is not as effective in affording an equal opportunity to obtain the same result, failed to

provide reasonable accommodations and modifications necessary to avoid discrimination,

used methods of program administration with a discriminatory effect, and otherwise

limited plaintiffs in the enjoyment of rights, privileges, advantages and opportunities

provided to others, and otherwise discriminated against plaintiffs on the basis of disability

in violation of the ADA and its implementing regulations. 42 U.S.C. § 12132; 28 C.F.R.

§ 35.130(a), (b)(1)(ii)-(iv), (b)(3), (b)(7).

Second Cause of Action
Section 504 of the Rehabilitation Act and Its Implementing Regulations
(On Behalf of All Plaintiffs, in Their Individual, Representative, and/or Organizational
Capacities, and the Class)

119.   NYCHA receives federal financial assistance from HUD.

120.   Each of the individual plaintiffs is an "otherwise qualified individual with a

disability" under 29 U.S.C. § 794(a).

121.   Each of the individual plaintiffs is an "individual with a disability" under 29

U.S.C. § 705(20)(B) and an "individual with handicaps" under 24 C.F.R. § 8.3 and a

"qualified individual with handicaps" under 24 C.F.R. § 8.4(b)(1).

122.   In failing to provide apartments free of mold and moisture and failing to

reasonably modify its policies, practices, and procedures to provide an apartment free of

mold and moisture, NYCHA has failed to afford plaintiffs an opportunity to participate in

and benefit from NYCHA housing that is equal to that afforded others, provided a benefit

that is not as effective in affording an equal opportunity to obtain the same result, failed to

provide reasonable accommodations and modifications necessary to avoid discrimination,

used methods of program administration with a discriminatory effect, and otherwise

limited plaintiffs in the enjoyment of rights, privileges, advantages and opportunities

provided to others, and otherwise discriminated against plaintiffs solely by reason of

handicap and disability in violation of Section 504 of Rehabilitation Act and its

26

implementing regulations. 29 U.S.C. § 794(a); 24 C.F.R. § 8.4(b)(1)(ii)-(iv), (b)(1)(viii), (b)(2), (b)(4)(i)-(ii).

### Third Cause of Action
### Fair Housing Amendments Act and Its Implementing Regulations
(On Behalf of All Plaintiffs, in Their Individual, Representative, and/or Organizational Capacities, and the Class)

123.    Each of the individual plaintiffs has a "handicap" under 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.201.

124.    In failing to provide apartments free of mold and moisture, NYCHA has discriminated in the rental of dwellings on the basis of handicap, discriminated in the provision of services and facilities in connection with dwellings on the basis of handicap, and refused to make reasonable accommodations in rules, policies, practices, or services to individuals with handicaps when necessary to afford plaintiffs with an opportunity to use and enjoy NYCHA housing in violation of the FHAA and its implementing regulations. 42 U.S.C. § 3604(f)(1)(A)-(B), (f)(2)(A)-(B), (f)(3)(B); 24 C.F.R. §§ 100.202(a)(1)-(2), 100.202(b)(1)-(2), 100.204(a).

### Fourth Cause of Action
### New York State Human Rights Law
(On Behalf of All Plaintiffs, in Their Individual and/or Organizational Capacities, and the Class)

125.    Each of the individual plaintiffs has a "disability" as defined by § 292 (21)(a)-(b).

132.    NYCHA's policy, practice, and custom of failing and refusing to (a) provide apartments free of mold and moisture, (b) reasonably modify its policies, practices, and procedures to provide an apartment free of mold and moisture, and (c) otherwise make reasonable accommodations in rules, policies, practices, or services, when such

accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, including reasonable modification to common use portions of the dwelling violates the Human Rights Law § 296.2-a (d)(1)-(2).

## REQUEST FOR RELIEF

Plaintiffs respectfully request that this Court:

1.      Certify that this lawsuit may be maintained as a class action under Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure;

2.      Declare that NYCHA has violated its obligations under the ADA, Section 504, the FHAA, and the Human Rights Law;

3.      Issue a preliminary and permanent injunction requiring NYCHA to provide plaintiffs with the reasonable accommodations and modifications they requested and remediate the mold and moisture in their apartments using the requested modified policies, practices, and procedures.

4.      Issue a preliminary and permanent injunction requiring NYCHA to:

   a.   Modify existing NYCHA policies, practices, and procedures for conducting apartment inspections, prioritizing work orders, and performing mold remediation to require NYCHA to do the following, when a tenant in the apartment has asthma:

      i.   Effectively remediate mold and moisture and effectively address their underlying causes, including plumbing problems,  regardless of the size of the visible mold;

      ii.  Perform remediation work in a manner than minimizes risk to tenants with asthma, by using low toxicity chemicals and HEPA

filters, double bagging old debris, and applying an interim low-toxic coating to moldy and damp surfaces to minimize exposure while work is performed;

   iii. Relocate tenants to suitable housing, if necessary, while remediation work is performed;

   iv. Inspect all apartments where tenants with asthma are known to reside and who suffer or have suffered from mold or moisture problems at least annually by a Maintenance Worker and Housing Assistant for mold and moisture, and if found, promptly eradicate using the procedures referred to in (i) above;

b. Provide notice to all NYCHA tenants of NYCHA's modified policies, practices, and procedures for mold remediation in apartments where individuals with asthma reside and the procedure(s) for requesting asthma-related mold and moisture remediation;

c. Create a process for identifying NYCHA tenants already known by NYCHA to have asthma and who suffer or have suffered from mold or moisture problems, offer them apartment inspections for mold and moisture, and if found, use the procedures in (i) above to remediate the problem and underlying causes;

d. Train staff on the mold and moisture policies, practices, and procedures for tenants with asthma;

e.  Modify NYCHA's Reasonable Accommodations in Housing for Applicants, Section 8 Voucher Holders, and NYCHA Residents Policy to state, among other things, that:

i.  The definition of a disability includes anyone with a physical, medical, mental, or psychological impairment; and provide examples, one of which is asthma;

ii.  If needed as a result of asthma, individuals with mold and/or moisture in their apartments are entitled to reasonable accommodations from NYCHA;

iii.  Residents may request an accommodation at any time, and explain where they can obtain copies of the Request for Reasonable Accommodation form;

iv.  Residents need not use NYCHA forms to request a reasonable accommodation or document the need for a reasonable accommodation and need not wait for an annual review to request a reasonable accommodation, and eliminate language stating or implying otherwise;

v.  NYCHA staff are not required to meet with residents each time an accommodation is requested if the nature of the request and need for accommodation are clear in the request form;

vi.  Language stating that resident requests are either repair requests or reasonable accommodation requests, but not both, and

30

anything related to maintenance cannot be treated as a reasonable accommodation have been superseded;

f.   Implement a system to monitor and verify NYCHA's compliance with the revised policies, practices, and procedures required by (a) above;

g.   Provide plaintiffs' counsel with a quarterly a report that identifies the percentage of work orders concerning mold or moisture or both requiring action within seven (7) days, action within fifteen (15) days, or capital improvement actions in that month (hereinafter "work orders"), the number of post-Work Order closure inspections executed, and the total number of work orders in that month, and shall report the number and percentage of work orders each month that were timely completed, the number and percentage of work orders that were not timely completed, the number and percentage of post-work order closure inspections completed, and the number and percentage of post-work order closure inspections not timely completed. These data shall be further broken down by (i) housing project; (ii) complaint code; (iii) whether the work order is a seven (7) day, fifteen (15) day, or capital improvement work order;  (iv) the reason the work order was not timely completed if not timely completed; and (v) the reason the post-work order closure inspection was not timely completed if not timely completed;

    h.   Establish metrics to track NYCHA's responses to complaints about mold and moisture from tenants with asthma and provide to plaintiffs' counsel an annual report on NYCHA's performance.

    5.     Award costs of suit and reasonable attorney fees pursuant to 29 U.S.C. § 794a; 42 U.S.C. §§ 3613, 12205; and any other applicable statute that would permit such award;

    6.     Grant such other relief as the Court deems just.

Dated:  New York, New York
          December 17, 2013

Respectfully submitted,

_Nancy S Marks_

Nancy S. Marks (NM 3348)
Albert Y. Huang
Mitchell S. Bernard (MB 5823)
Natural Resources Defense Council
40 West 20th Street
New York, NY 10011
Phone: (212) 727-2700
Fax: (212) 727-1773
nmarks@nrdc.org
ahuang@nrdc.org
mbernard@nrdc.org

Counsel for All Plaintiffs

Henry A. Freedman, Esq.
National Center for Law & Economic Justice, Inc.
Marc Cohan, Director of Litigation (MC 2612)
    Of Counsel
Petra T. Tasheff, Of Counsel (PT 8762)
275 Seventh Avenue, Suite 1506
New York, New York 10001-6708
Phone: (212) 633-6967
Fax: (212) 633-6371
cohan@nclej.org
tasheff@nclej.org

Counsel for Individual and Class Plaintiffs