

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

MARIBEL BAEZ; FELIPA CRUZ; R.D., ON BEHALF OF
HER MINOR CHILD, A.S.; on their own behalf and
on behalf of all others similarly situated;
UPPER MANHATTAN TOGETHER, INC.; and
SOUTH BRONX CHURCHES SPONSORING COMMITTEE, INC.,

        Plaintiffs,

        v.

NEW YORK CITY HOUSING AUTHORITY,

        Defendant.

**13 CV 8916**

No. 13-cv-_____

ECF Case

---

## STIPULATION AND ORDER OF SETTLEMENT

WHEREAS, individual public housing residents who allege they suffer from asthma and who brought this action on behalf of themselves and all others similarly situated, and two nonprofit community-based organizations — Upper Manhattan Together, Inc. and South Bronx Churches Sponsoring Committee, Inc. — that advocate for the rights of New York City public housing residents, including those with asthma who have mold and excessive moisture in their apartments (hereinafter plaintiffs), allege that defendant, New York City Housing Authority (hereinafter NYCHA) fails to make reasonable accommodations and modifications in its policies, practices, and procedures to effectively abate mold and excessive moisture in their apartments, which they allege exacerbates their asthma symptoms;

WHEREAS, plaintiffs allege that NYCHA's failure to make reasonable accommodations and modifications in policies, practices, and procedures to effectively abate mold and moisture in plaintiffs' apartments denies them an equal and meaningful opportunity to use, benefit from,

1

and enjoy public housing, in violation of the Americans with Disabilities Act of 1990 (ADA) (codified as amended in scattered sections of 42 U.S.C. and 47 U.S.C.), Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 701 *et seq.*, and the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. § 3604;

WHEREAS, NYCHA states it is its policy to combat the problems of mold growth and excessive moisture in apartments and other areas by taking proactive measures;

WHEREAS, NYCHA states it is its policy that, where mold and excessive moisture problems are detected, NYCHA shall promptly and methodically assess the situation and apply remediation techniques designed to eliminate or control mold and/or excessive moisture problems at their source, while protecting the health of residents and staff.  NYCHA's stated policy includes, but is not limited to, removing visible mold, identifying the excessive moisture sources that support the mold growth, and eliminating them;

WHEREAS, nothing in this Stipulation and Order of Settlement ("Stipulation and Order") shall be deemed to be a finding or an admission that NYCHA has in any manner violated plaintiffs' rights as contained in the constitutions, statutes, ordinances, rules, and regulations of the United States, the State of New York, or the City of New York;

WHEREAS, the parties believe that the best interests of the class will be advanced by the settlement of this action; and

WHEREAS, the parties desire to settle this action on terms and conditions just and fair to all parties; it is hereby

**ORDERED ON CONSENT:**

**I.     DEFINITIONS**

1.     The following definitions apply in this Stipulation and Order:

a.      Mold – one or more of various types of fungi that grow in filaments and reproduce by forming spores. The term "mildew" is sometimes used to refer to some kinds of mold, particularly mold in the household with a white or grayish color or mold growing in shower stalls and bathrooms.

b.      Excessive moisture – uncontrolled dampness, wetness, or the presence of water due to leaks in or seepage from building infrastructure or systems.

c.      Work Order – the process by which NYCHA schedules a repair or other work to be performed to address a condition in an apartment requiring remediation.

d.      Work Order to be Completed within Seven (7) days – Work orders for which the time between the Creation Date and the Actual Finish Date should, on average, be less than or equal to seven days.  They involve simple repairs that can be done by a maintenance worker in a single visit to the apartment.

e.      Work Order to be Completed within Fifteen (15) days – Work orders for which the time between the Creation Date and the Actual Finish Date should, on average, be less than or equal to fifteen days.  These involve relatively complex repairs that need skilled trades or other specialized staff to address and may require multiple visits to the apartment.

f.      Service Level – The sum of the total days for all closed and open work divided by the total work orders closed and open at the end of the reporting period.

g.      Capital Improvement – Major repair requiring a total system upgrade

h.      Disability – A physical, medical, mental, or psychological impairment.

i.      Asthma – A chronic respiratory illness characterized by inflammation and narrowing of the airways to the lungs, difficulty breathing, and shortness of breath.

## II.    CLASS CERTIFICATION

2.    A class is certified as follows:

> Current and future residents of NYCHA who have asthma that
> substantially limits a major life activity and who have mold and/or
> excessive moisture in their NYCHA housing.

## III.   NYCHA'S RESPONSIBILITIES

3.    NYCHA shall abate flooding conditions when feasible within 24 hours, and all standing water relating to the flood shall be mopped up and water soaked areas, with the exception of residents' personal property, shall be dried within 48 hours.

4.    When residents provide NYCHA with access to their apartments, NYCHA shall maintain an average service level of no more than seven (7) days for completion of mold and excessive moisture-related work orders that require simple repairs that can be done by a maintenance worker in a single visit to the apartment and an average service level of no more than fifteen days (15) days for completion of more complex repairs.

5.    (a) For purposes of this Stipulation and Order, NYCHA shall be deemed to be in compliance with paragraph 4 of this Stipulation and Order with respect to work orders that are to be completed within seven days during a quarterly period defined in paragraph 10 so long as NYCHA processes to completion at least ninety-five percent (95%) of such work orders in an average of no more than seven (7) days during the period.  For purposes of this Stipulation and Order, NYCHA shall be deemed in compliance with paragraph 4 of this Stipulation and Order with respect to work orders to be completed within fifteen days during a quarterly period defined in paragraph 10 so long as NYCHA processes to completion at least ninety-five percent (95%) of such work orders in an average of no more than fifteen (15) days during the period.

(c) Paragraphs 4 and 5 of the Stipulation and Order shall not apply to capital improvements.

6.      When a mold and/or excessive moisture condition is detected by NYCHA or reported by an authorized occupant in an apartment, NYCHA will create a work order and staff will discuss the possible causes of mold growth with an adult authorized occupant of the apartment. NYCHA staff shall provide the adult authorized occupant with a copy of NYCHA 060.303, Preventing Mold Growth in Your Apartment, and emphasize sections of the form that are most appropriate. An entry shall be documented on the work order after the adult authorized occupant interview. Within no more than 60 days after the completion of a Level II or Level III Work Order, NYCHA shall make a good-faith attempt to contact the resident to determine if all of the work identified in the Work Order was completed, and the mold and excessive moisture problems and their underlying causes have been effectively addressed. NYCHA will record the date(s) and nature of its attempts to contact the resident, the associated work order number and whether the resident reported that the problems were effectively addressed. If the resident indicates the problems and/or their causes have not been effectively addressed, a new work order will be created and a supervisor will perform an inspection of the apartment.

After the close of each Annual Quarter, NYCHA will report to plaintiffs' counsel the number of residents contacted and the percentage of work orders for which the resident reported that the problems were not effectively addressed.

7.      NYCHA shall implement the requirements of paragraphs 3 through 6 of this Stipulation and Order in accordance with the provisions of the Policy Document entitled "Operations & Maintenance Policy for Mold & Moisture Control in Residential Buildings" annexed hereto as Exhibit A. NYCHA shall modify written policies, standard operating procedures, forms, and

informational materials for residents and staff (including maintenance staff, development staff, and maintenance supervisors), as necessary to effect the policy set forth in Exhibit A hereto.

8.     (a)     NYCHA shall modify the Reasonable Accommodations in Housing for Applicants, Section 8 Voucher Holders, and NYCHA Residents Policy (040:12:1) ("ADA Policy"); Disability Status and Notice of Reasonable Accommodation form (040:422); Reasonable Accommodation Request form (040:425); Medical Verification form (040:426); A Home to Be Proud Of ("NYCHA Residents' Handbook"); and Mold Handout (060:303), as set forth as Exhibits B, C, D, E, F, and G hereto.

       (b)     NYCHA shall attach the Disability Status and Notice of Reasonable Accommodation forms (040:422), the Reasonable Accommodation Request form (040:425), and the Medical Verification form (040:426) into one packet;

       (c)     NYCHA will distribute the revised policies, procedures, and forms referenced in this Paragraph 8 of the Stipulation and Order as required by this Stipulation and Order to all staff involved in the reasonable accommodation process. NYCHA will inform all staff involved in the reasonable accommodation process of the existence and substance of changes in policies, procedures, and forms.

       (d)     The forms annexed hereto as Exhibits C, D, E, F, and G shall be deemed to implement the ADA Policy annexed hereto as Exhibit B.

       (e)     NYCHA shall, within sixty (60) days of the effective date of this Stipulation and Order, train staff, including all staff with responsibility for responding to reasonable accommodation requests and handling Customer Contact Center calls, on (i) the written policies, procedures, forms, and informational materials revised as required by this Stipulation and Order; and (ii) the fact that mold can exacerbate the symptoms of asthma.

9.      NYCHA will submit to plaintiffs' counsel within sixty (60) days of the effective date of this Stipulation and Order a draft of a standard operating procedure, and any additional manuals, informational materials, forms, or training materials implementing Exhibit A, for plaintiffs' review and comment before these documents are finalized.  After plaintiffs have received the drafts, they will have sixty (60) days to review and provide comments.  Plaintiffs' comments will be taken into consideration by NYCHA.  NYCHA must finalize and issue revised procedures within sixty (60) days after receiving plaintiffs' comments, and promptly provide copies of all finalized policies, procedures, manuals, informational materials, forms, and training materials to plaintiffs' counsel.  Nothing herein precludes plaintiffs from seeking to compel changes in procedures, manuals, informational materials, forms, and training materials submitted to plaintiffs after the effective date of this Stipulation and Order in the event that, after defendant has considered plaintiffs' comments, plaintiffs believe in good faith that defendant's proposed or actual issuances do not conform to the Policies annexed hereto as Exhibits A and/or B.

**IV.    MONITORING**

10.     (a) On a quarterly basis (commencing with data for the first full calendar month after the effective date of this Stipulation and Order as defined in Paragraph 16 of this Stipulation and Order), NYCHA shall provide plaintiffs' counsel with a report that identifies the percentage of work orders concerning mold or uncontrolled moisture or both requiring action within seven (7) days, action within fifteen (15) days, or deferred for capital improvement work; the number of post-closed work order closure contacts and quality assurance inspections attempted; and the total number of mold and uncontrolled moisture work orders, and shall report the number and percentage of work orders that were completed within the agreed upon service levels; the number and percentage of work orders that were not completed within the agreed upon service levels; the

number of post-closed work order contacts and quality assurance inspections completed; and the number of post-work order quality assurance inspections not completed within the agreed upon timeframe. These data shall be further broken down by (i) housing property; (ii) problem code and failure class; (iii) whether the work order is a seven (7) day, fifteen (15) day, or deferred for capital improvement work order; (iv) if average service levels are not met, an explanation of why they are not met.

      (b)     Defendant shall engage in sampling of mold and uncontrolled moisture complaints as follows:

      1.     Sample Definition

      a.     Defendants shall, every six (6) months, draw a systematic or random sample of the complaints made to defendant for one month to be determined randomly. Within sixty (60) days after the conclusion of the six (6) month sampling period, defendant shall submit a report to plaintiffs' counsel that indicates the following:

      (1)     All work orders generated to respond to the complaint;

      (2)     Whether or not the work was completed within the agreed upon service levels.

      2.     Sample Size – The size of the samples referenced in this paragraph 10(b) shall be the number of complaints necessary to provide a statistically valid sample at the 95% confidence level with a 3% margin of error;

      (c)     After the close of each Annual Quarter, NYCHA shall randomly or systematically select 100 closed work orders related to mold and uncontrolled moisture for re-inspection, provided the work orders satisfy the following criteria:

(1)     The physical work was completed within the annual quarter that is being assessed;

(2)     The work order was for a Level II or Level III abatement; and

(3)     The resident has not reported to NYCHA that the problems targeted by the work order were not effectively addressed.

The assessed work orders in the samples drawn pursuant to Paragraph 10(c) of the Stipulation and Order shall be split proportionally between Level II and Level III work orders based upon the total numbers closed for the quarter.  To the extent that they are available, moisture meters shall be used during the assessment to verify the effectiveness of the moisture control work.  If the assessment finds mold or uncontrolled moisture problems, a new work order will be created. NYCHA shall report the findings of the inspections to plaintiff's counsel within sixty (60) days of the completion of the assessments.

Of those apartments selected for each quarterly sample, NYCHA will identify for plaintiffs' counsel:

(1)     the number of apartments for which NYCHA performed physical work to remediate a complaint of mold and/or moisture in a prior quarter subsequent to the effective date of this Stipulation and Order of Settlement; and

(2)     the number of apartments that, subsequent to the effective date of this Stipulation and Order of Settlement, had previously been included in a quarterly sample and inspected for a mold or moisture complaint other than the one that is the subject of the  work order(s) selected in the current sample.

The findings of the assessments will be used solely to confirm, adjust, or improve NYCHA's Mold and Moisture Control Program.

11.     On a semi-annual basis (commencing with data for the first full calendar month after the effective date of this Stipulation and Order as defined in Paragraph 16 of this Stipulation and Order), NYCHA shall provide plaintiffs' counsel with the following:

    a.     Copies of reasonable accommodation requests submitted to NYCHA on behalf of residents with asthma related to mold and/or excessive moisture in their apartments;

    b.     Information on the status of each such accommodation request, including whether the request was granted, was denied, is still pending, or whether an alternative accommodation was provided, and if so, the nature of the alternative accommodation;

    c.     Copies of all ADA/Section 504 grievances submitted to NYCHA on behalf of individuals seeking reasonable accommodations in Paragraph 11(a) above.

## V.     JURISDICTION OF THE COURT

12.     For the duration of this Stipulation and Order, plaintiffs shall not seek to have imposed any additional systemic obligations upon NYCHA with respect to the issues that are the subject of this action, except as a remedy should the plaintiffs establish their entitlement to such a remedy in connection with a motion to enforce the Stipulation and Order (made in accordance with paragraph 17 of this Stipulation and Order), or with the written consent of the parties.

13.     Dismissal of the action shall be in conformity with the following paragraphs:

    a.     This Court shall retain jurisdiction over this Stipulation and Order for thirty (30) or thirty-six (36) months ("Stipulation Period") for the purpose of modification and enforcement. At the end of this period, this Stipulation and Order shall cease to have any effect except as provided in accordance with sub-paragraph "b". If NYCHA is in compliance with paragraph 5 of this Stipulation and Order for two or more consecutive quarterly periods immediately prior to

the 30th month, the jurisdiction of the Court will terminate, subject to the provisions of paragraph 13(b) below, immediately.

      b.     If plaintiffs move to enforce any provision of this Stipulation and Order during the Stipulation Period, the Court will retain jurisdiction to decide the motion notwithstanding the conclusion of the Stipulation Period. Non-systemic, individual, and isolated violations of this Stipulation and Order shall not form a basis for a finding that NYCHA has acted in violation of this Stipulation and Order. Nothing herein shall be deemed a limitation on the jurisdiction of the Court to effectuate any relief the Court deems proper, subject to the rights of the parties to appeal, including the extension of the Court's jurisdiction in order to give defendant time to comply with any such Order.

      c.     In any month(s) in which NYCHA's performance under paragraphs 3 through 7 of this Stipulation and Order is affected by systematic computer malfunctions in which the computers are out of operation for more than twenty-four (24) consecutive hours as a result of natural disasters, terrorist attacks, or other similar circumstances beyond NYCHA's control (Force Majeure), NYCHA's non-complying performance for such month(s) shall be disregarded for the purposes of determining NYCHA's compliance pursuant to this paragraph, but the terms of this Stipulation and Order and the Court's jurisdiction to enforce it, shall be automatically extended by an equal number of additional month(s) if NYCHA asserts a Force Majeure. If NYCHA invokes a Force Majeure, NYCHA shall, as soon as practicable (but in no event later than fourteen (14) days after NYCHA knew, or should have known, of such event) notify plaintiffs' counsel, in writing. In such notification, NYCHA shall report the anticipated length of the disruption, the precise cause or causes of disruption, the measures taken and to be taken by NYCHA to prevent or minimize the disruption, and the timetable by which those measures will

be implemented.  NYCHA will adopt all reasonable measures to avoid or minimize any such

disruption.  If plaintiffs agree that a disruption has been or will be caused entirely by

circumstances beyond the control of NYCHA or any of its employees, agents, contractors, or

consultants, and that NYCHA and its employees, agents, contractors, and consultants could not,

despite the exercise of their best efforts, have foreseen or prevented such violation, the time for

performance of such requirement shall be extended for a period not to exceed the actual

disruption resulting from such circumstance.  In the event plaintiffs do not agree, NYCHA may

submit the matter to this Court for resolution.

## VI.    MISCELLANEOUS PROVISIONS

14.    Upon the execution of this Stipulation and Order and the submission of it to the Court for

approval and so ordering, for those residents who were brought to NYCHA's attention by

plaintiffs' counsel who have previously submitted to NYCHA requests for repairs contained

within the requests for accommodation related to the issues of mold or uncontrolled moisture,

NYCHA will inspect and complete, as necessary, any requested repairs and/or otherwise provide

accommodations, as soon as possible after the residents provide access.  In completing those

repairs and/or providing those accommodations, NYCHA will use as much of the Mold Policy as

is reasonably practicable.

15.    The purpose of the moisture meter pilot project is to evaluate the efficacy of moisture

meters, borescopes, and humidity gauges for mold and excessive moisture investigations

conducted by NYCHA staff at select NYCHA Developments located in New York City

neighborhoods with high asthma rates (i.e. Northern Manhattan and the South Bronx).  NYCHA

will engage in a pilot program regarding the effectiveness of moisture meters if it receives funds

from the City of New York to do so.  Based upon NYCHA's assessment of the performance of

the equipment during the pilot, and considering the totality of the circumstances, including other uses for NYCHA resources, NYCHA will determine whether it will continue to use such equipment and deploy it more broadly throughout NYCHA. The determinations of NYCHA as to (1) how to structure the program; (2) how to evaluate the program; and (3) whether to acquire more moisture meters and/or use them more broadly are solely within the discretion of NYCHA, and plaintiffs agree not challenge any of those determinations. At the conclusion of the pilot, NYCHA will advise the plaintiffs in writing, through their attorneys, of the outcome of the pilot and whether NYCHA will use such equipment more broadly. Plaintiffs will not use that information in any litigation against NYCHA.

16.     The terms and conditions of this Stipulation and Order shall be deemed effective ("Effective date"), and the parties' obligations, rights, and responsibilities hereunder shall commence when approval by the Court of this Stipulation and Order, following notice to the Class and a hearing as prescribed by Fed. R. Civ. P. 23, issues in the form of an order granting final approval to this Stipulation and Order.

17.     In the event that plaintiffs believe that NYCHA has not complied with the terms of this Stipulation and Order, plaintiffs may move for enforcement of the Stipulation and Order against NYCHA after attempting to remedy the violation through good faith discussions with NYCHA. Plaintiffs shall provide NYCHA's counsel with written notice of the nature and specifics of the claimed violations in order to give NYCHA an opportunity to cure such alleged violations, at least thirty (30) days before any enforcement motion is made, and shall meet and discuss with NYCHA the claimed violations and possible solutions. Plaintiffs shall provide copies of any documents or data they rely on that plaintiffs' counsel obtained from sources other than NYCHA and shall identify any NYCHA documents on which they rely.

13

18.     No provision of this Stipulation and Order shall infringe upon an individual's right to challenge NYCHA's failure to provide an accommodation or to otherwise address conditions in his or her apartment in any appropriate administrative agency or State court proceeding, nor shall any provision of this Stipulation and Order create rights for individuals to obtain judicial or administrative relief.

19.     Notwithstanding the provisions of this Stipulation and Order, NYCHA reserves the right to implement, change, or otherwise alter or amend the procedures and requirements of this Stipulation and Order if consistent with federal statutes or regulations and state statutes and regulations.  NYCHA shall provide plaintiffs' counsel written notification of a change at least thirty (30) days prior to the commencement of implementation, unless NYCHA is required to implement such a change in less than thirty (30) days.  If NYCHA is required by federal or state law or regulation to implement a change in less than thirty (30) days, NYCHA shall provide notice to plaintiffs' counsel no later than seven (7) working days after learning of a required change.  Plaintiffs may move to challenge whether the change is consistent with federal statutes or regulations or state statutes or regulations.  If defendants have given plaintiffs at least thirty (30) days' notice of the change, plaintiffs will give defendants at least seven (7) days' notice of an intention to move to challenge the change.

20.     This Stipulation and Order is solely for the purposes of settlement, and does not reflect the positions of the parties in any other judicial or administrative action or proceeding.  This Stipulation and Order shall not be admissible in any other judicial or administrative action or proceeding or used in any settlement negotiations.  Nothing herein shall prevent the use of this Stipulation and Order in connection with a motion filed in this action, including a motion to enforce pursuant to paragraph 17, or motion to challenge under paragraph 19.

14

21.     Unless as otherwise stated herein, notices must be provided by electronic mail and United States Postal Service mail.

**VII.   ATTORNEY'S FEES**

22.     Defendant shall pay the sum of $ 250,000 to counsel for plaintiffs for attorneys' fees, costs, and disbursements in or arising from this action within sixty (60) days of the entry of this stipulation and order.  Plaintiffs accept  this sum  in full settlement of any claims for attorneys' fees, costs, and disbursements that plaintiffs or the class, as defined in paragraph 2 of this Stipulation and Order, may have incurred, or will incur against the defendant except plaintiffs may move for fees in connection with any enforcement motion pursuant to paragraph 17 of this Stipulation and Order that results in the entry of an order that either finds defendant in contempt, mandates additional obligations by defendant, or approves an agreement between the parties resolving the motion in a way that requires NYCHA to take, or refrain from taking, a particular action.  Nothing herein shall preclude defendant from opposing such a motion.


DATED:          DECEMBER 16, 2013          Nancy S. Marks (NM 3348)
                                           Albert Y. Huang
                                           Mitchell S. Bernard (MB 5823)
                                           Natural Resources Defense Council
                                           40 West 20th Street
                                           New York, New York 10011
                                           Tel:    (212) 727-2700
                                           Fax:    (212) 727-1773
                                           nmarks@nrdc.org
                                           ahuang@nrdc.org
                                           mbernard@nrdc.org


                                           NANCY S. MARKS
                                           Counsel for all Plaintiffs

Henry A. Freedman, Esq.
National Center for Law & Economic
Justice, Inc.
Marc Cohan, Of Counsel (MC 2612)
Petra T. Tasheff, Of Counsel (PT 8762)
Jenny R. Pelaez, of Counsel,
275 Seventh Avenue, Suite 1506
New York, New York 10001-6708
Phone: (212) 633-6967
Fax: (212) 633-6371
cohan@nclej.org
tasheff@nclej.org
Peleaz@nclej.org

By:

_____
        PETRA T. TASHEFF

Counsel for Individual and Class Plaintiffs


KELLY D. MACNEAL
Acting General Counsel
New York City Housing Authority
Attorney for Respondent NYCHA
250 Broadway, 9th Floor
New York, NY 10007
Tel:    (212) 776-5152
Fax:    (212) 776-5401

By:_____
        STEVEN J. RAPPAPORT

So Ordered:


_____
    UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

*Operations & Maintenance Policy*
*For*
*Mold & Moisture Control*
*In*
*Residential Buildings*



NEW YORK CITY
HOUSING
AUTHORITY

# Table of Contents

**I. Introduction**                                                          **Page**
    Introduction to Molds and Moisture Control ......................................................  3

**II. Resident's Responsibilities**
    .................................................................................................................  5

**III. Management's Responsibilities**
    Mold and Moisture Preventive Maintenance Program ......................................  6

**IV. Levels of Abatement**
    Level I:  Small Isolated Areas (10 sq. ft. or less).............................................. 10
    Level II:  Medium Isolated Areas (10-100 sq. ft.) ............................................ 11
    Level III:  Large Areas (Greater than 100 sq. ft.) ............................................. 11

**V.  Training**
    .................................................................................................................. 12

**VI. Reasonable Accommodations**
    .................................................................................................................. 12

**VII. Resident Communications**
    ..................................................................................................................13

**VIII. Quality Assurance**
    ..................................................................................................................13

# I. Introduction

## Introduction to Molds and Moisture Control

Moisture control is the key to mold control.  Since molds can digest most things, water is the factor that limits mold growth.  Molds will often grow in damp or wet areas indoors.  Common sites for indoor mold growth include bathroom tile, basement walls, areas around windows where moisture condenses, and near leaky water fountains or sinks.  Common sources or causes of water or moisture problems include roof leaks, deferred maintenance, condensation associated with high humidity or cold spots in the building, localized flooding due to plumbing failures or heavy rains, and slow leaks in plumbing fixtures. Uncontrolled humidity can also be a source of moisture leading to mold growth, particularly in hot, humid climates.  The general approach to preventing mold growth in buildings is widely understood: keep exterior moisture out of the building, and control moisture from internal sources.  In order to accomplish this, it is important to establish a cooperative partnership between the housing management staff and residents so that conditions that require attention are identified and dealt with promptly.

Exposures from residential dampness and mold have been associated with increased risks for respiratory symptoms, asthma, hypersensitivity pneumonitis, rhinosinusitis, bronchitis, and respiratory infections. NYCHA staff and residents should take action to detect and correct leaks, condensation problems and floods as soon as they are discovered. The potential for building structural damage, microbial growth and increased adverse health effects can and should be reduced by limiting the buildup of indoor moisture. It is the intent of this policy document to provide a framework for a formal mold/water prevention program with clear actions and responsibilities.

## Basic Mold and Uncontrolled Moisture Prevention

Maintenance and effective management of mold and uncontrolled moisture requires an ongoing strategy involving occupants, contractors and NYCHA staff.  It is important to dry water damaged areas and items within 24-48 hours to prevent mold growth.  If mold and/or uncontrolled moisture are problems in an apartment or building, clean up the mold and get rid of the excess water or moisture (fix leaky plumbing or other sources of water)as soon as possible.  Wash mold off hard surfaces with detergent and water, and dry completely.  Absorbent materials (such as sheetrock, ceiling tiles & carpet) that become moldy or wet may have to be replaced.

## Ten Things Residents and NYCHA Staff Should Know About Mold & Moisture

1. Potential health effects and symptoms associated with exposures to mold and uncontrolled moisture itself include allergic reactions, asthma, and other respiratory complaints.
2. There is no practical way to eliminate all mold and mold spores in the indoor environment; the way to control indoor mold growth is to control moisture.
3. If mold is a problem in an apartment or building, we must clean up the mold and eliminate sources of moisture.
4. Fix the source of the water problem or leak to prevent mold growth, including repairing leaky roofs.

5. Reduce indoor humidity (to 30-60%) to decrease mold growth by: venting bathrooms; using air conditioners and de-humidifiers; increasing ventilation; using exhaust fans whenever cooking, dishwashing, and cleaning; and pursuing tenancy actions for lease violations for using moisture-generating sources such as dryers within apartments. The Weather.com website has an online tool that can calculate the relative humidity in a resident's apartment.

6. Clean and dry any damp or wet building materials and furnishings within 24-48 hours to prevent mold growth.

7. Clean mold off hard surfaces with water and detergent, and dry completely.  Absorbent materials such as sheetrock, that are moldy, may need to be replaced.

8. Prevent condensation: Reduce the potential for condensation on cold surfaces such as piping by adding insulation.

9. If needed as a result of asthma, individuals with mold and/or moisture in their apartments are entitled to reasonable accommodations from NYCHA.

10. Molds can be found almost anywhere; they can grow on virtually any substance, providing moisture is present.  There are molds that can grow on wood, paper, carpet, and foods.



# II. Resident's Responsibility

As previously stated, maintenance and effective management of mold and uncontrolled moisture requires an ongoing strategy involving residents and NYCHA staff. To minimize the occurrence and growth of mold in the Leased premises, Residents need to do their part by being responsible for the following:

1.  **MOISTURE ACCUMULATION.** Resident shall remove any visible moisture accumulation under their control in or on the Leased Premises, including on walls, windows, floors, ceilings, and bathroom fixtures; mop up spills and thoroughly dry affected area as soon as possible after occurrence; use exhaust fans in kitchen and bathroom when necessary; and keep climate and moisture in the Leased Premises at reasonable levels.

2.  **VENTILATION.** Resident shall arrange their possessions to allow proper circulation of air throughout the unit and shall introduce fresh air as much as possible. Furniture and possessions should not block windows or doorways. Residents must not block or cover vent openings. Relative humidity should be maintained at seasonal levels, ideally below 60% to discourage mold growth. Excessive humidity in your apartment may cause you to sneeze or cough for no apparent reason.

3.  **APARTMENT CLEANLINESS.** Resident shall clean and dust the Leased Premises regularly, and shall keep the Leased Premises, particularly kitchen and bathrooms, clean. Mold on bathroom tile grout, in shower stalls, and on bathtubs is a common occurrence. Residents should make reasonable efforts to keep these surfaces clean using household cleaners.

4.  **NOTIFICATION OF MANAGEMENT.** Resident shall promptly notify management by calling the Customer Contact Center at (718) 707-7771 of the presence of the following conditions:

    i.   A water leak, uncontrolled moisture, or standing water inside the Leased Premises;

    ii.  A water leak, uncontrolled moisture, or standing water in any community common area;

    iii. Mold growth on building components other than bathroom tile grout, in shower stalls, and on bathtubs;

    iv.  A malfunction in any part of the heating or ventilation system in the Leased Premises.

5.  **LIABILITY.** Resident shall be liable to Owner for damages sustained to the Leased Premises or to Resident's person or property as a result of Resident's failure to comply with the terms of the Lease.

## III. Management's Responsibility

**Mold and Uncontrolled Moisture Preventive Maintenance Program**

NYCHA shall combat the problems of mold growth and uncontrolled moisture in apartments and other areas by taking proactive measures to avoid the problems. Where mold and moisture problems are detected NYCHA staff shall promptly and methodically assess the situation and apply remediation techniques designed to eliminate or control the problems at their source, while protecting the health of residents and staff.

Our guiding principles are as follows:
- we shall promptly remove visible mold and identify the root cause for the mold growth
- we shall identify the moisture source that supports the mold growth and promptly correct it
- we recognize that a moisture problem itself is unhealthy in an indoor environment and shall seek to promptly correct it.

Moisture related problems, such as plumbing leaks, inadequately insulated cold water pipes, windows that are not operating properly, improper apartment heating, and inadequate room ventilation, should be detected and corrected. Some mold and moisture-producing conditions that require repairs include the following:

- Malfunctioning roof fans
- Clogged and dirty ducts
- Cracks in bricks and missing mortar (pointing) in building exterior
- Roof leaks
- Ceiling and wall leaks, broken pipes, and other plumbing problems, such as defective faucets, and unsealed or loose sink cabinets
- Windows not closing properly
- Apartment heat complaints (too much heat)
- Improper insulation of pipes
- Broken wall tiles and loose tub surrounds

**Customer Contact Center**

Residents and the general public will use the Customer Contact Center for reporting all water leaks, mold and moisture related repair issues.  The 24 hour number is (718) 707-7771.

**Respond Time**

After NYCHA receives a complaint from the Customer Contact Center, NYCHA:
- shall abate floods within 24 hours and all standing water shall be mopped up and water soaked areas, with the exception of residents' personal property, shall be dried within 48 hours.
- shall complete simple repairs related to mold and moisture by a maintenance worker in a single visit to the apartment on average in less than or equal to seven (7) days.  Examples

of simple repairs are unclogging vent openings, repairing windows that won't open and correcting conditions that cause condensation on toilet waste pipes.

- shall complete complex repairs related to mold and/or moisture that need skilled trades or other specialized staff that may require multiple visits to the apartment on average in less than or equal to fifteen (15) days. Examples of complex repairs are plumbing repairs within pipe chases, replacing/installing tub surrounds, and roof drain repairs.

**These timeframes will not apply where capital improvements are needed**

## Remediation

Mold and moisture remediation shall remove, or clean and dry, wet, moldy, and contaminated materials to prevent human exposure and further damage to building materials and furnishings caused by mold growth or water damage. In all instances, any sources of water must be identified and corrected and the extent of water damage and any mold growth determined. In all cases, the remediation shall be performed as quickly as reasonably possible and in accordance with the above "Respond Time" requirements.

The highest priority, during the mold and moisture remediation process, is to protect the health and safety of NYCHA residents and staff. This requires, but is not limited to, employing dust suppression methods to the best extent practicable during the remediation.

## Inspect Periodically For Leaks Or Standing Water Or Mold

The NYCHA's Inspections utilize the HUD mandated Uniform Physical Condition Standard (UPCS) which includes a check for plumbing leaks and mold. Work orders shall be created within 24 hours for corrective maintenance based upon inspection findings.

## Inspect During Routine Maintenance

The maintenance staff shall ask the resident if they are experiencing water leaks or uncontrolled moisture issues any time they are in a unit.

## Inspect During Vacancy Prep Maintenance

All plumbing shall be checked for leaks and repaired, and all mold shall be remediated as part of occupancy preparation of vacant units.

## Capital Plan

Modernization planning shall consider moisture control and elimination as part of the assessment and planning process.

### A. Identify the Problem – All Property Staff and Inspectors

A visual inspection by a Maintenance Supervisor is the most important initial step in identifying a possible mold and/or moisture problem and in determining remedial strategies. The extent of any water damage and mold growth shall be visually assessed and the affected building materials identified. A visual inspection shall also include observations of hidden areas where damages may be present, such as within the sink base cabinet. Insulation and other materials that are suspected of hiding mold growth shall also be assessed.

Sheetrock wallboard (gypsum drywall), structural wood, and other cellulose-containing surfaces shall be given careful attention during a visual inspection. Ventilation systems shall be visually checked and tested for proper operation.

Identifying mold growth visually is fairly easy.  Look for the following:
- Visible mold growth (discoloration ranging from white to orange and from green to brown or black).
- Musty odor.
- Discoloration of building materials in areas where previous water damage occurred, such as drywall or plaster.
- Rotting material.

Identifying a moisture problem visually is also fairly easy.  Look for the following:
- Discoloration of building materials in areas where water damage is or has occurred, such as drywall or plaster.
- Rotting material.
- Bubbling or peeling of paint or plaster.
- Visible moisture or wetness on a surface.
- Leaks.
- High humidity.

The Supervisor shall make best efforts to interview an adult listed on the household composition for the subject apartment as part of the assessment process.  The staff person shall record information regarding the history of mold and moisture in the apartment, and other relevant information, using the Work Order.  Completed Work Orders shall be submitted to development property management so that other relevant NYCHA staff have access to this information.

### B. Identify the Cause – Maintenance Supervisor
If there is a mold or uncontrolled moisture problem, the Maintenance Supervisor shall now move forward to identify the source and cause of the problem.  Mold and moisture problems are most often the result of three critical factors:  water, temperature, and substrate availability (i.e., viable food source for mold growth).  Therefore, the mechanism for all water leaks or areas of uncontrolled moisture infiltration shall be identified.  The Supervisor shall create a Work Order with a mold or moisture-related task code.  Remediations shall occur in accordance with the Respond Time requirements contained in this Policy.

### C. Notifications – Research Management & Analysis Department (RMA)
The RMA will maintain reports of all mold and uncontrolled moisture service requests.

**D.  Authorize Remediation/Abatement**

Level I mold should be corrected as soon as possible.  Levels II & III remediation will require coordination with the Maintenance, Repair and Skilled Trades Department to perform the work as soon as possible.

**E.  Remediation/Abatement – Maintenance Supervisor**

Remediation or "mold/moisture abatement" is the actual process of removing all contaminated building materials and addressing the underlying moisture problem.  In the most drastic cases, abatement could involve demolition and temporary relocation of residents.

# IV. Levels of Abatement [1]

The key to controlling mold growth is to remove the moisture, the nutrients, and the source of spores. Generally this is accomplished by cleaning with a detergent solution and/or physical removal of drywall, ceiling tiles, cellulose insulation, etc., as well as repairing the source of the uncontrolled moisture. Workers performing these tasks must have appropriate work protection and personal protective equipment.

Three different levels of abatement are described below. The size of the area impacted by fungal contamination primarily determines the type of remediation. The sizing levels below are based on professional judgment and practicality; currently there is not adequate data to relate the extent of contamination to frequency or severity of health effects. The goal of remediation is to remove or clean contaminated materials in a way that prevents the emission of mold and dust contaminated with mold from leaving a work area and entering an occupied or non-abatement area, while protecting the health of workers performing the abatement.

**Non-porous** (e.g., metals, glass, and hard plastics) and **semi-porous** (e.g., wood, and concrete) materials that are structurally sound and are visibly moldy can be cleaned and reused. **Porous** materials such as ceiling tiles and insulation, and sheetrock with more than a small area of contamination should be removed and discarded. Follow up inspections will be conducted to confirm the effectiveness of remediation work.

*Level I:* **Small Isolated Areas (10 sq. ft. or less)** - e.g., small areas on walls

    a. Remediation can be conducted by **regular building maintenance staff**. Such persons should receive training on proper clean up methods, personal protection, and potential health hazards. This training can be performed as part of a program to comply with the requirements of the OSHA Hazard Communication Standard (29 CFR 1910.1200).

    b. Respiratory protection (e.g., N95 disposable respirator), in accordance with the OSHA respiratory protection standard (29 CFR 1910.134), is recommended. Gloves and eye protection should be worn.

    c. The work area should be unoccupied. Vacating people from spaces adjacent to the work area is not necessary but is recommended for infants (less than 12 months old), persons recovering from recent surgery, immune suppressed people, or people with chronic inflammatory lung diseases (e.g., asthma, hypersensitivity pneumonitis, and severe allergies).

    d. Containment of the work area is not necessary. Dust suppression methods, such as misting (not soaking) surfaces prior to remediation, are recommended.

    e. Contaminated materials that cannot be cleaned should be removed from the building in a sealed plastic bag. There are no special requirements for the disposal of moldy materials.

---

[1] New York City Department of Health and Mental Hygiene, Bureau of Environmental & Occupational Disease Epidemiology, Guidelines on Assessment and Remediation of Fungi in Indoor Environments

f.  The work area and areas used by remedial workers for egress should be cleaned with a damp cloth and/or mop and a detergent solution.

g.  All areas should be left dry and visibly free from contamination and debris.

*Level II*: **Medium Isolated Areas (10 - 100 sq. ft.)** - e.g., individual sheetrock panels.

a.  Remediation can be conducted by **regular building maintenance staff**.  Such persons should receive training on proper cleanup methods, personal protection, and potential health hazards. This training can be performed as part of a program to comply with the requirements of the OSHA Hazard Communication Standard (29 CFR 1910.1200).

b.  Respiratory protection (e.g., N95 disposable respirator), in accordance with the OSHA respiratory protection standard (29 CFR 1910.134), is recommended.  Gloves and eye protection should be worn.

c.  The work area should be unoccupied.  Vacating people from spaces adjacent to the work area is not necessary but is recommended for infants (less than 12 months old), persons having undergone recent surgery, immune suppressed people, or people with chronic inflammatory lung diseases (e.g., asthma, hypersensitivity pneumonitis, and severe allergies).

d.  The work area should be covered with a plastic sheet(s) and sealed with tape before remediation, to contain dust/debris. Seal ventilation ducts/grills in the work area and areas directly adjacent with plastic sheeting

e.  Dust suppression methods, such as misting (not soaking) surfaces prior to remediation, are recommended.

f.  Contaminated materials that cannot be cleaned should be removed from the building in sealed plastic bags.  There are no special requirements for the disposal of moldy materials.

g.  When a HEPA vacuum (a vacuum equipped with a High-Efficiency Particulate Air filter) is available, the work area and areas used by remedial workers for egress should be vacuumed with a HEPA vacuum and cleaned with a damp cloth and/or mop and a detergent solution.

h.  All areas should be left dry and visibly free from contamination and debris. If abatement procedures are expected to generate a lot of dust (e.g., abrasive cleaning of contaminated surfaces, demolition of plaster walls) or the visible concentration of the fungi is heavy (blanket coverage as opposed to patchy), then it is recommended that the remediation procedures for Level III are followed.

*Level III*: **Large Areas (greater than 100 contiguous square feet in an area)**.
A health and safety professional with experience performing microbial investigations should be consulted prior to remediation activities to provide oversight for the project.  The following procedures are recommended:

a.  Personnel trained in the handling of hazardous materials equipped with:
   1.  A minimum of half-face elastomeric respirators with P-100 filters used in accordance with the OSHA respiratory protection standard (29 CFR 1910.134)
   2.  Disposable protective clothing covering both head and shoes

    3.    Gloves

  b.  Containment of the affected area:
    1.    Complete isolation of work area from occupied spaces using plastic sheeting sealed with duct tape (including ventilation ducts/grills, fixtures, and any other openings)
    2.    Consider using an exhaust fan with a HEPA filter to generate negative pressurization
    3.    Consider using airlocks and decontamination room

  c.  Vacating people from spaces adjacent to the work area is not necessary but is recommended for infants (less than 12 months old), persons having undergone recent surgery, immune suppressed people, or people with chronic inflammatory lung diseases (e.g., asthma, hypersensitivity pneumonitis, and severe allergies).

  d.  Contaminated materials that cannot be cleaned should be removed from the building in sealed plastic bags.  The outside of the bags should be cleaned with a damp cloth and a detergent solution or HEPA vacuumed in the decontamination chamber prior to their transport to uncontaminated areas of the building.  There are no special requirements for the disposal of moldy materials.

  e.  The contained area and decontamination room should be HEPA vacuumed and cleaned with a damp cloth and/or mop with a detergent solution and be visibly clean prior to the removal of isolation barriers.

# V. Training

Currently there are no specific training requirements mandated by state and federal law for workers who may remediate mold as part of their responsibilities. This does not negate the importance of proper and qualified remediation and prevention training. Staff shall receive training necessary to carry out their responsibilities articulated in this policy and with respect to, but not limited to, the following:

- conducting a full investigation of the mold/moisture problem;
- best practices in the visual inspection of an apartment;
- communicating with residents;
- cleaning, removing, and restoring damaged surfaces; and
- documenting all remediation efforts.

# VI. Reasonable Accommodations

If needed as a result of asthma, individuals with mold and/or uncontrolled moisture in their apartments are entitled to reasonable accommodations from NYCHA, including but not limited to the following accommodations: (a) the right to purchase and operate an additional air conditioning unit in their apartment, if the electrical system permits an additional unit; (b) permanent relocation to other NYCHA housing if the apartment is uninhabitable and another apartment is available; (c) temporary relocation during mold and moisture abatement; (d) use of low-toxicity fungicides to cover surfaces with mold; and/or (e) the use of appropriate dust suppression methods during mold removal.

## VII. Resident Communications

When a mold and/or moisture condition is detected by NYCHA or reported by an adult authorized occupant in an apartment, NYCHA staff will discuss the possible causes of mold growth with the occupant. NYCHA staff shall provide the occupant with a copy of NYCHA 060.303, Preventing Mold Growth in Your Apartment, and emphasize sections of the form that are most appropriate. NYCHA will document the communication with the resident.

## VIII. Quality Assurance Program

Measures to ensure the quality and effectiveness of remediation should be undertaken regardless of the project size. During and after remediation, evaluations should be conducted to confirm the effectiveness of remedial work. At minimum, these quality assurance indicators should be followed and documented:

- The underlying moisture problem was identified and eliminated
- Isolation of the work area was appropriate and effective
- Mold and uncontrolled moisture removal and worksite cleanup was performed
- Any additional moisture or mold damage discovered during remediation was properly addressed
- Upon completion of remediation, surfaces are free from visible dust and debris.

NYCHA's Quality Assurance Plan will include randomly sampling closed work orders related to mold and uncontrolled moisture for the quality assurance indicators listed above. After the close of each Annual Quarter, NYCHA will randomly or systematically select 100 closed work orders related to mold and uncontrolled moisture for re-inspection provided the work orders satisfy the following criteria:

- The physical work was completed within the annual quarter that is being assessed
- The work order was for a Level II or Level III abatement
- The resident has not reported to NYCHA that the problems targeted by the work order were not effectively addressed.

The assessed work orders will be split proportionally between Level II and Level III work orders based upon the total numbers closed for the quarter. To the extent that they are available, moisture meters will be used during the assessment to verify the effectiveness of the moisture control work. If the assessment finds mold or uncontrolled moisture problems, a new work order will be created. NYCHA will identify the number of apartments in each quarterly sample that had continuing mold or moisture problems and the number of apartments included in the sample that were inspected again for the same issue. The findings of the assessments will be used solely to confirm, adjust, or improve NYCHA's Mold and Moisture Control Program.

Within no more than 60 days after the completion of a Level II or Level III Work Order, NYCHA shall make a good faith attempt to contact the resident to determine if all of the work identified in the Work Order was completed, and the mold and uncontrolled moisture problems and their underlying causes have been effectively addressed. NYCHA will record the date(s) and nature of its attempts to contact

the resident, and whether the resident reported that the problems were effectively addressed.  If the resident indicates the problems and/or their causes have not been effectively addressed, a new work order will be created and a supervisor will perform an inspection of the apartment.



**EXHIBIT B**

NEW YORK CITY HOUSING AUTHORITY **(DRAFT December 4, 2013)**     STANDARD PROCEDURE

| SUBJECT | ADMINISTERING DEPARTMENT | APPROVED DATE | APPROVED BY | INDEX NO. |
|---|---|---|---|---|
| **REASONABLE ACCOMMODATIONS IN HOUSING FOR APPLICANTS, SECTION 8 VOUCHER HOLDERS, AND NYCHA RESIDENTS** | **OPERATIONS AND LEASED HOUSING** | Revised [month]_____ 2013 | **Carlos G. Laboy-Díaz Executive Vice-President for Operations** **Cathy Pennington Executive Vice-President for Leased Housing** **Cecil House General Manager** | **040:12:1** |

## I.   PURPOSE

This Standard Procedure delineates the responsibilities of development Property Managers, Leased Housing Department (LHD) staff, Applications and Tenancy Administration (ATAD) staff, and the Public Housing and Section 8 Reasonable Accommodation Coordinators in reviewing reasonable accommodation requests submitted by applicants, Section 8 voucher holders, and New York City Housing Authority (NYCHA) residents.

This Standard Procedure supersedes the previous version of this Standard Procedure.  It supplements, but does not supersede, other NYCHA policies or procedures unless expressly stated or unless their provisions are inconsistent with this Standard Procedure. Accordingly, Managers or Supervisors must continue to review such requests in conformance with any existing NYCHA policies and procedures in the normal course of business.

## II.   POLICY

**Equal Housing Opportunities:** It is the policy of the NYCHA to provide equal housing opportunities for all qualified applicants, Section 8 voucher holders, and NYCHA residents. NYCHA Fair Housing Non-Discrimination Policy prohibits discrimination based on, among other factors, disability, in the selection of families and in the provision of services.

**Reasonable Accommodations:** It is the policy of NYCHA to provide reasonable accommodations for applicants, Section 8 voucher holders, or NYCHA residents with disabilities.  A reasonable accommodation is a change, modification or alteration in policy, procedure, practice or program, that provides a qualified individual with a disability the same opportunity, as exists for non-disabled individuals, to participate in, or benefit from, a program or activity. Any accommodation considered by NYCHA cannot result in an undue financial or administrative burden or create a fundamental change in a program.

All accommodation requests must be considered regardless of whether there is a policy or procedure regarding the type of accommodation requested.

## III.   REASONABLE ACCOMMODATION COORDINATORS

In implementing this Standard Procedure, NYCHA has created two Reasonable Accommodation Coordinator positions, as follows:

A. **Public Housing Reasonable Accommodation Coordinator** (PHRAC): to be designated by the Executive Vice President for Operations, is created to resolve reasonable accommodation requests made by applicants and public housing residents.

B. **Section 8 Reasonable Accommodation Coordinator** (SERAC): to be designated by the Executive Vice President for Leased Housing, is created to resolve reasonable accommodation requests made by Section 8 voucher holders.

The PHRAC or SERAC performs the following functions, as part of the reasonable accommodation process:

A. Maintains records of all reasonable accommodation requests submitted to the PHRAC or SERAC and their respective determinations

B. Reviews requests and determines whether additional information is needed from the requesting party in order to consider the request

C. Consults with personnel from the following departments, Applications and Tenancy Administration, Capital Projects, Equal Opportunity, Leased Housing, Property Management, and Law, as necessary, for assistance in making determinations regarding reasonable accommodation requests

D. Monitors implementation of reasonable accommodations


## IV.   KEY TERMS

A. Disability

A disability is a physical, medical, mental, or psychological impairment. Examples of impairments include mobility impairments, sensory impairments (e.g., blindness or deafness), chronic health problems (e.g., asthma), and mental health problems.

B. Reasonable Accommodation

A reasonable accommodation in housing is a change, modification or alteration in policy, procedure, practice or program, that provides a qualified individual with a disability the same opportunity, as exists for non-disabled individuals, to participate in, or benefit from, a program or activity.  The reasonableness of a given accommodation depends upon the individual circumstances of the person(s) for whom the request is made.  In order to be reasonable, an accommodation may not create an undue administrative or financial burden upon NYCHA, considering all funding resources available for the service, program, or activity or fundamentally alter the nature of NYCHA's services or programs.

Some examples of reasonable accommodations include, but are not limited to:

- qualified sign language interpreters
- documents in Braille
- other ways of making information and communications accessible to people who have speech, hearing, or vision impairments
- accessible apartments for mobility-impaired residents
- allowing a third party to make rent payments on behalf of a tenant with a mental disability
- for persons with breathing or respiratory disorders, permission to install and operate an additional air conditioner unit if the electrical system permits, transfer to a temporary location during mold/moisture remediation, permanent relocation to another NYCHA apartment if the apartment is uninhabitable and another apartment is available, use of low-toxicity fungicides to cover surfaces with mold, and/or the use of appropriate dust suppression methods during mold removal, and/or
- extension of Section 8 voucher periods.

    This list is not exhaustive.

C. Applicant

    An Applicant is any person who has submitted an application for public housing or Section 8 and has not signed a lease for a public housing apartment or has not been issued a Section 8 voucher.

D. Section 8 Voucher Holder

    A Section 8 voucher holder is any person who has been issued a Section 8 voucher, and applicable to those persons searching for an apartment, as well as those persons receiving a rental subsidy.

E. NYCHA Resident

    A NYCHA resident is any person who is authorized by NYCHA to reside in a NYCHA development.


## V.   PROCESSING REASONABLE ACCOMMODATION REQUESTS

A. Initiating Reasonable Accommodation Requests

    An applicant, public housing resident, or Section 8 voucher holder (referred to as the "**Requesting Party**") can make a reasonable accommodation request at any time. Public housing residents and Section 8 voucher holders are not required to wait to make the request only during an annual review period.

1.  NYCHA Forms: A Requesting Party does not need to use NYCHA forms to request an accommodation. However, NYCHA development and Leased Housing staff should offer copies of the following forms to individuals who want to request an accommodation:

   a.  <u>Applicants</u>: *Reasonable Accommodation Letter*, (NYCHA form 070.144A).

   b.  <u>Public Housing Residents</u>: (These three forms are to be given together as one packet to a Requesting Party)
      - *Disability Status Notice and Reasonable Accommodation Request*, (NYCHA form 040.422)
      - *Reasonable Accommodation Request Detail*, (NYCHA form 040.425)
      - *Reasonable Accommodation Request - Disability Verification* (NYCHA form 040.426)

   c.  <u>Section 8 Voucher Holders</u> (residing in privately owned and managed buildings):
      - *Request for Reasonable Accommodation*, (NYCHA form 059.109)
      - *Voucher Holder's Request for Transfer*, (NYCHA form 059.004)

   d.  <u>NYCHA Public Housing Preservation I & II LLC</u> (LLC I and LLC II):
       If the Requesting Party is a Section 8 Voucher Holder residing in an LLC development, development property management staff shall handle the accommodation request as follows:
      - Most accommodation requests are handled the same as those for other public residents.
      - If the accommodation request deals with just a Section 8 issue, development staff shall consult with Leased Housing Department staff regarding the accommodation. If the accommodation cannot be granted, the request shall be referred to the SERAC for review.

   e.  <u>Downloads</u>: The forms are available for download:
      - for NYCHA staff use from the NYCHA Forms and Reference Library,
      - for the public from the NYCHA web site at:
        http://www.nyc.gov/html/nycha/html/community/equalopp.shtml.

2.  Contact Locations

    When a Requesting Party calls the Customer Contact Center to request an accommodation or indicate that they wish to request an accommodation, Contact Center staff must inform callers that:

      - they may contact their development management office (during the office's hours of operation (8:30am to 4:30pm), or

      - they may download the forms from the NYCHA web site (see web address above), or

- they may contact the Department of Equal Opportunity (DEO), Services for People with Disabilities Unit for assistance during DEO's hours of operation (8:30am to 5:00pm)

B. Processing Reasonable Accommodation Requests

1. Process within 5 Days: The appropriate property management development, Applications and Tenancy Administration Department or Leased Housing Department manager or supervisor determines the merits of the reasonable accommodation request within **five calendar days** of receipt of the applicable request form and all supporting documents, unless circumstances warrant additional time.

2. Consider ALL Requests: Managers and supervisors must act upon *all* requests for accommodations. If a third party makes a request on behalf of a Requesting Party, staff must verify, wherever practical, that the Requesting Party agrees with the request.

3. Types of Reasonable Accommodations: Upon receiving a request for an accommodation, the Manager or Supervisor must determine whether the type of Reasonable Accommodation is consistent with a type of accommodations regularly available from NYCHA. (see **Attachment A**-Types of Reasonable Accommodations). Staff may not offer accommodations or modifications that are inconsistent with the requesting individual's disability. For example, a roll-in shower may be a reasonable accommodation for a resident with a wheelchair, but not for a tenant who is hearing-impaired.

4. Supporting Documentation: If the documents submitted do not support the alleged disability or meet the criteria for an accommodation, the manager or supervisor shall advise the Requesting Party of this fact and inform him or her that additional medical documentation or other documentation is required in order to support their request for an accommodation.

5. Reasonableness of the Accommodation: If the manager or supervisor determines that the request qualifies for a reasonable accommodation, the appropriate course of action must be taken to provide the requested accommodation as long as the accommodation is reasonable. In order to be reasonable, an accommodation may not create an undue administrative or financial burden upon NYCHA or fundamentally alter the nature of NYCHA's services or programs. Only the PHRAC or SERAC can make a determination that an accommodation is a fundamental alteration or undue administrative or financial burden. See paragraph G below.

   The determination must consider all funding resources available for the service, program, or activity, and must be in writing, with a statement of the reasons for the conclusion. If an action would result in such an alteration or undue burden, NYCHA must provide other accommodations or modifications, if any are available, that would not result in a fundamental alteration or undue burden that will ensure that individuals with disabilities receive the benefits or services provided by NYCHA.

C. Meeting With The Requesting Party To Discuss The Accommodation Request

If the accommodation request clearly identifies the type of accommodation being requested, and no additional information is needed, there is no need to schedule a meeting with the Requesting Party. If the nature of the accommodation being requested is not clear or NYCHA needs other information from the Requesting Party to process and decide the request, contact the Requesting Party promptly to schedule a meeting. Meetings are not required in all instances; this supersedes any contradictory pre-existing procedure

D. Assistance with Submitting Reasonable Accommodation Request

Although requesters are not required to complete NYCHA forms in order to request a reasonable accommodation, NYCHA staff should complete all applicable forms and follow up.

If a Requesting Party is unable to fill out and submit the appropriate form, or requires an auxiliary aid, service, or an alternate format to complete the form, staff must assist in completing the form. If necessary or appropriate, staff may receive assistance from the Department of Communication, Language Services Unit, (use NYCHA form 036.020, *Requests for Sign Language Interpreter Services)*, or from the Department of Equal Opportunity, Services for People With Disabilities Unit (at (212) 306-4652 or TTY (212) 306-4845).The completed form must be submitted to the appropriate department. All costs relating to the use of contract vendors, including sign language and Braille services, are charged to the requesting department's budget.

A request for reasonable accommodation cannot be denied on the basis that the proper form was not used.

E. Transfer as a Reasonable Accommodation

Public Housing and Section 8 voucher holders or participants who seek to transfer must complete and submit the following forms and supporting documentation of the need for a transfer as a reasonable accommodation:

1. Public Housing- *The, Transfer: Tenant Request for Transfer (*NYCHA form 040.050*),* is submitted to the Property Management Office for evaluation under NYCHA's Tenant Selection and Assignment Plan (TSAP)

2. Section 8 – The *Voucher Holder's Request for Transfer (*NYCHA form 059.004), is submitted to the Leased Housing Department, Management Services Unit

The development Property Manager or Leased Housing Department, Management Services Unit, determines the merits of the transfer request within **five calendar days** of receipt of the request and all supporting documents unless circumstances warrant additional time.

F. Apartment Repairs as a Reasonable Accommodation

Some reasonable accommodations relate to the process of repairing an apartment. If a requested accommodation relates to apartment repairs, the procedures set forth herein apply.  This supersedes any contradictory pre-existing policy or procedure.

G. Referral to Reasonable Accommodation Coordinator (PHRAC or SERAC)

1. The Property development manager, Applications and Tenancy Administration Department or Leased Housing Department Manager or Supervisor grants the Reasonable Accommodation Request when possible.

2. If the Property development manager, Applications and Tenancy Administration Department or Leased Housing Department cannot grant the accommodation request within **five calendar days** of receiving the accommodation request and all supporting documentation, the request is referred to the PHRAC or SERAC as follows:

   a. Two Days: The property development manager, Applications and Tenancy Administration Department or Leased Housing Department has an additional **two business days** to:
      - Complete the appropriate sections of the *Reasonable Accommodation Request Review and Determination (*NYCHA form 040.797).
      - Assemble Documents:
         (1)   all appropriate Reasonable Accommodation Request forms,
         (2)   all supporting documentation submitted by the Requesting Party, and
         (3)   any other documents relied on by NYCHA in deciding not to grant the accommodation request, and
      - Send these documents to the PHRAC or SERAC for review. Keep a copy of all documents sent in the applicant, Section 8 voucher holder, or tenant's folder.

| **NOTE:** | If the Accommodation Request that cannot be granted is for a transfer, Development or Leased Housing Department staff: |
| --- | --- |
| | • Sends the *Reasonable Accommodation Request Review and Determination* indicating the transfer disapproval to the PHRAC or SERAC. |
| | • Does not inform the Requesting Party that the transfer is denied. The PHRAC or SERAC makes a determination and informs the Requesting Party about the status of the transfer request. |

H. PHRAC or SERAC Review

1. Upon receipt of the, *Reasonable Accommodation Request Review and Determination,* from the Applications and Tenancy Administration Department, Leased Housing Department, or Property Management Office, the PHRAC or

SERAC proceeds as follows:

    a. Reviews the *Reasonable Accommodation Request Review and Determination,* and supporting documentation;

    b. Seeks additional information from the Requesting Party, as appropriate, as part of an interactive process;

    c. Consults with personnel from the appropriate departments, including Applications and Tenancy Administration, Capital Projects, Equal Opportunity, Leased Housing, Property Management and Law, as necessary, for assistance in making a determination regarding the reasonable accommodation request;

    d. Grants or denies the accommodation request, or proposes an alternative accommodation.

2. <u>Timing of the PHRAC or SERAC Review</u>: The PHRAC or SERAC must render a determination **within thirty calendar days** of receipt of the, *Reasonable Accommodation Request Review and Determination*, unless circumstances warrant additional time.

    • If the PHRAC or SERAC does not render a determination within 30 calendar days, he or she must send a notice letter to the Requesting Party informing him or her that a determination will be delayed and provides a projected date by which the accommodation request will be addressed.

    a. The PHRAC or SERAC indicates the Determination by completing the appropriate portion of the *Reasonable Accommodation Request Review and Determination*

    b. The PHRAC or SERAC sends the completed *Reasonable Accommodation Request Review and Determination* to notify the following applicable parties:
      • the Requesting Party
      • The originating department: Applications and Tenancy Administration, Leased Housing or Property Management Office
      • Any other NYCHA Department that provided consultation

    c. The originating department/office must ensure that a copy of the completed request form and supporting documentation is placed in the application or tenant folder, and noted in the appropriate systems.

3. <u>Implementing the PHRAC or SERAC Determination</u>: If the PHRAC or SERAC grants the requested accommodation, or proposes an alternative accommodation / modification:

    a. The PHRAC or SERAC identifies all necessary steps to implement the accommodation and ensures that those steps are followed. The accommodation / modification must be provided in time to serve its purpose.

    b.   The originating department / office must notify the PHRAC or SERAC by mail of the status of the implementation of the reasonable accommodation. This notification must be done **within forty-five days** of the mailing of the *Reasonable Accommodation Request Determination,* and upon final implementation of the reasonable accommodation (e.g., grab bars installed, transfer approved and entered in TSAP, voucher extension granted) if implemented after 45 days. The grant of the requested accommodation, or proposal of an alternate accommodation, must be noted in the appropriate systems.

- Notice between the PHRAC or SERAC and originating department can be by mail, email, or by computerized system developed by NYCHA which provides the requisite notice.

I.   Grievance, Impartial and Informal Hearings

In the event the Requesting Party is dissatisfied with NYCHA's resolution of his or her Reasonable Accommodation Request, their options to review the PHRAC or SERAC's Determination are as follows:

1.  Public Housing Residents (Offered a Grievance Hearing)

If the Requesting Party is a public housing tenant, he or she may request a grievance hearing before an Impartial Hearing Officer by checking the appropriate box on the *Reasonable Accommodation Request Review and Determination.* The form must be submitted to the development Property Manager within 30 days of the resident's receipt of the PHRAC's decision.

The development Property Manager forwards both the tenant's grievance hearing request and completed *Transmittal to Termination Unit,* (NYCHA form 040.276) directly to the Office of the Tenancy Administrator for the scheduling of an impartial hearing.

| NOTE: | For reasonable accommodation grievance hearings, the development Property Manager does not refer the grievance to the Property Management Department Office for review, but refers directly for an impartial hearing before an Impartial Hearing Officer. |
|---|---|

2.  Section 8 Voucher Holders (offered an Impartial Hearing)

If the Requesting Party is a Section 8 voucher holder, he or she may request an impartial hearing before an Impartial Hearing Officer by checking the appropriate box on the *Reasonable Accommodation Request Review and Determination.* The form must be submitted to the Leased Housing Department, Management Services Unit within 30 days of the voucher holder's receipt of the SERAC's decision.

Leased Housing Department, Management Services Unit staff forwards the voucher holder's hearing request directly to the Law Department for the scheduling of an impartial hearing.

3. Applicants for Public Housing and Section 8 (offered an Informal Hearing)

If the Requesting Party is an applicant, he or she may request an informal hearing by checking the appropriate box on the *Reasonable Accommodation Request Review and Determination*. The form must be submitted to the Applications and Tenancy Administration Department, Appeals Unit within 30 days of applicant's receipt of PHRAC's decision.

The Applications and Tenancy Administration Department, Appeals Unit staff forwards the applicants hearing request directly to the Law Department for scheduling of an informal hearing.

J. ADA/Section 504 Grievance Procedure

At any point during the reasonable accommodation request process, the Requesting Party may file a complaint orally, or in writing, regarding the alleged violation of the Americans with Disabilities Act of 1990 (as amended by the ADA Amendment Act of 2008) or of Section 504 of the Rehabilitation Act of 1973, with the ADA/504 Grievance Coordinator in the Department of Equal Opportunity.

The complaint must be filed within three months after the mailing of the *Reasonable Accommodation Request Review and Determination* by the PHRAC or SERAC. When appropriate, the ADA/504 Grievance Coordinator attempts to negotiate a resolution of the complaint.

The Department of Equal Opportunity will investigate complaints of disability discrimination for failure to provide a reasonable accommodation and provide its finding within 90 days of the receipt of the complaint unless circumstances warrant additional time. Parties to the complaint will receive notice of the complaint and findings.

## VI.    FORMS

A. NYCHA form 036.020, *Request for Sign Language Interpreter Services*

B. NYCHA form 040.050, *Transfer: Tenant Request for Transfer*

C. NYCHA form 040.276, *Transmittal to Termination Unit*

D. NYCHA form 040.422, *Disability Status and Notice of Reasonable Accommodation Request*

E. NYCHA form 040.425, *Reasonable Accommodation Request Detail*

F. NYCHA form 040.426, *Reasonable Accommodation Request – Disability Verification*

G. NYCHA form 040.797, *Reasonable Accommodation Request Review and Determination*

H.  NYCHA form 059.004, *Transfer Information Sheet and Tenant's Statement*

I.  NYCHA form 059.109, *Request for Reasonable Accommodation*

J.  NYCHA form 059.004, *Voucher Holder's Request for Transfer*

K.  NYCHA form 070.144A, *Reasonable Accommodation Letter*

L.  PHRAC extension letter

**Attachment A**

## TYPES OF REASONABLE ACCOMMODATIONS

NYCHA staff must evaluate *all* requests for accommodation by applicants, Section 8 voucher holders, and NYCHA residents, based upon the individual circumstances of the person(s) making the request. The PHRAC or SERAC may waive existing rules to accommodate a person with a disability.

Some examples of reasonable accommodations, which are addressed by existing NYCHA policies and procedures, include, but are not limited to, the following:

A. Home visits/briefings, or other arrangements, for disabled applicants, Section 8 voucher holders, or NYCHA residents, who cannot attend in-person interviews

B. Assistance with the completion of Annual Income Review documents or extension of time for submission of such documents

C. Public Housing transfers and applicant assignments, for reasons expressly provided for under NYCHA Tenant Selection and Assignment Plan (TSAP), e.g., as follows:

   1. Need for an accessible (504) apartment

   2. Need for medical care not available near current development

   3. Need for an extra bedroom to accommodate large medical equipment

   4. Need for elevator building or apartment on a low floor (even if currently in elevator building)

   5. Need for an apartment near relatives due to medical reasons

D. Exemption of service animals from the registration fee, weight limits or breed restrictions, under NYCHA Pet Policy

E. Modification of public housing apartments, or other facilities, to make these apartments or facilities physically accessible to, and usable by, an individual with a disability, including, without limitation:

   1. Roll-in shower or hand-held shower

   2. Grab bars

   3. Ramps

   4. Flashing doorbell or smoke detector

   5. Lower cabinets, light sockets, faucets, and other fixtures

   6. Allowing extra air conditioners for people with respiratory difficulties

F. Referral to NYCHA's Family Services Department

G. Assessment of the mental competence of NYCHA tenants who may be subject to termination of tenancy or remaining family member claimants who are entitled to administrative grievance hearings; appointment of guardians ad litem; and informing Housing Court judges of possible mental incompetence

H. Temporary or permanent relocation of residents during elevator rehabilitation

I. Provision of stair climbers during unanticipated elevator service interruptions. Extension of the duration of a Section 8 voucher, in instances where a family requires additional time to locate a suitable apartment due to a family member's disability

J. Adjustment of voucher apartment size in instances where a family member requires an extra bedroom

K. Request for increase of a U.S. Department of Housing and Urban Development (HUD) payment standard, in instances where a family requires additional assistance to find a suitable apartment due to a family member's disability

L. Mailing to a Section 8 voucher holder a list of available apartments with information about accessibility

M. Providing to mobility impaired Section 8 voucher holders and residents a list of apartments modified for the mobility impaired

N. Request for increased utility allowances for Section 8 voucher holders due to medical equipment

O. For a resident with breathing problems, (i) permission to install and operate an additional air conditioner if the electrical system permits; (ii) transfer to a temporary location housing during mold and moisture abatement; (iii) permanent relocation to other NYCHA housing if the original apartment is uninhabitable and another apartment is available; (iv) use of low-toxicity fungicides to cover surfaces with mold; and/or (v) the use of appropriate dust suppression methods during mold removal.

**EXHIBIT C**

New York City Housing Authority
## Disability Status and Notice of Reasonable Accommodation Request

| NAME (Tenant/Co-Tenant): | Tel.#: (     ) |
|---|---|
| Street Address | Apartment# |
| Borough | Development: |

***You may use this form to notify NYCHA that a member of your household has a disability.   Although you do not have to disclose a disability,*** NYCHA strongly encourages you to accurately and completely fill in the information for several reasons:

- NYCHA will be able to provide additional service, if needed, in case of emergencies,
- NYCHA will provide reasonable accommodation to meet the needs of persons with disabilities,
- You may be entitled to an income deduction based on disability status.

The information supplied will be kept confidential in accordance with the law.

The New York City Housing Authority will provide reasonable accommodation to meet the needs of persons with disabilities. A disability can be a physical, medical, mental, or psychological impairment, such as mobility, hearing, vision, breathing or mental impairments. A reasonable accommodation may include a modification to your apartment, common areas in and around your apartment building, development grounds, NYCHA programs, policies, and facilities, or transfer to another unit. The reasonableness of a given accommodation depends upon the individual circumstances of the person(s) for whom the request is made. The Housing Authority may require you to provide documentation to support your claim for a reasonable accommodation. **You can request an accommodation at any time.** If you need an explanation of disabilities or reasonable accommodations, information regarding the rights of persons with disabilities, help in completing this form, or additional copies of this form, you may contact your development's management office or the NYCHA Department of Equal Opportunity, Services for People with Disabilities Unit at 212-306-4652 or TTY telephone is 212-306-4845.

**Part 1:** List all persons in your household with a disability. Write "YES" in those columns that describe the disability.

| Name of household member with a disability | Uses Wheel chair | Uses walker, crutches, cane, leg braces; is an amputee or has difficulty walking or climbing stairs | Blind or Vision Impaired | Deaf or hard of hearing | Other physical disability (e.g. breathing impairment) [please list] | Mental or psychological disability | Depends on life sustaining equipment (describe) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| **Part 2:** | **If You Request An Accommodation Check Box And Sign Below** |
|---|---|
| ☐ | If you are requesting that NYCHA provide an accommodation for a person listed in Part 1, please check the box to the left. |

You should have received the following three forms. NYCHA requests that you complete all three. Bring the Disability Verification form to a medical professional for completion. Return all forms to NYCHA.

1: This form: ***Disability Status and Notice of Reasonable Accommodation Request*** (Form 040.422),
2: ***Reasonable Accommodation Request Detail*** (Form 040.425), and
3: ***Reasonable Accommodation Request - Disability Verification*** (Form 040:426).

| Signature of Tenant(s) (Lessee(s)): | Date: |
|---|---|

**EXHIBIT  D**

# New York City Housing Authority  -  Reasonable Accommodation Request Detail

| NAME (Tenant/Co-Tenant): | Tel.#: (    ) |
|---|---|
| Street Address | Apartment# |
| Borough | Development: |

You can use this form to request NYCHA to provide a reasonable accommodation to any member of your household who has a disability, so that the household member can better use your residence and NYCHA's facilities or programs. If you are unable to complete this form and would like to request an accommodation, you may contact your management office, the Customer Contact Center, or the Department of Equal Opportunity for further assistance.   Anyone with a physical, medical, or psychological impairment has a disability and therefore has a right to reasonable accommodations if needed for the disability.   Examples of impairments are mobility, hearing, vision, breathing and mental impairments.

**Your management office staff will review your request within 5 days of receiving all of your medical and other documentation. If management office staff cannot grant the request, it will be referred to the Reasonable Accommodations Coordinator who will have 30 days to make a decision.   If the Coordinator needs more than 30 days, NYCHA will tell you in writing and explain why.   NYCHA will send you a notice with a decision on the reasonable accommodation request. If you do not agree with the decision, you can request a grievance hearing by checking the appropriate box on the notice of decision and returning the form to the address indicated, or by contacting your development management office.**

You can request a reasonable accommodation at any time. If you need an explanation of disabilities or reasonable accommodations, information regarding the rights of persons with disabilities, or help in completing this form, you may contact your development's management office or the NYCHA Department of Equal Opportunity, Services for People with Disabilities Unit at 212-306-4652 or TTY telephone is 212-306-4845.

SOME EXAMPLES (NOT A COMPLETE LIST) OF ACCOMMODATIONS THAT NYCHA CAN MAKE FOR A RESIDENT WHO EXPERIENCES PROBLEMS WITH A SPECIFIC AREA OF HIS/HER APARTMENT, BUILDING, DEVELOPMENT GROUNDS OR OTHER HOUSING AUTHORITY PROGRAMS BASED ON A DISABILITY.

- NYCHA CAN INSTALL A GRAB BAR IF A FAMILY MEMBER IS NOT STEADY IN THE SHOWER
- NYCHA CAN INSTALL A VISUAL SMOKE ALARM IF A FAMILY MEMBER HAS A HEARING PROBLEM
- IF A FAMILY MEMBER HAS A BREATHING PROBLEM, NYCHA CAN PERMIT INSTALLATION OF A THIRD AIR CONDITIONER, PROVIDE A TEMPORARY TRANSFER DURING MOLD/MOISTURE REMEDIATION, OR PERMANENTLY TRANSFER THE FAMILY IF THE APARTMENT IS UNINHABITABLE.
- NYCHA CAN SEND THE RENT BILL OR OTHER DOCUMENTS TO ANOTHER PERSON, SUCH AS A GUARDIAN, IF NEEDED

**Write in below the specific area of problem and kind of modification / accommodation which you think will help you.**   Add an additional piece of paper if you need more space.

| Room / Area of Problem | Type of Difficulty / Requested Reasonable Modification or Accommodation |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

You may request a physical modification to your present apartment or a transfer to a fully accessible apartment if required due to a disability (either in your current development or in another one). NYCHA will work with you to determine how to fulfill your request. Documentation to support your request may be required.

Please indicate which option you prefer:

1 ☐ I want modifications done to my present apartment only.

2 ☐ I would consider moving to a fully accessible apartment, but only within my present development.

3 ☐ I would consider moving to a fully accessible apartment, even if it is in another development.

| Signature of Tenant(s) (Lessee(s)): | Date: |
|---|---|

**EXHIBIT E**

New York City Housing Authority (NYCHA)

**NYCHA Staff: Before distributing form, add return address of appropriate NYCHA development at bottom of the next page so medical verification can be properly returned.**

### Reasonable Accommodation Request – Disability Verification

| NAME (Applicant / NYCHA Tenant): | | | Tel.#: (  ) |
|---|---|---|---|
| Street Address | | | Apartment# |
| City / Borough | State | Zip | Development *(NYCHA Tenants Only)*: |

**Dear Tenant / Applicant:**

**The purpose of this form is to help you get the medical proof needed to show that you or a family member has a disability and needs a reasonable accommodation from NYCHA. If more than one person in the household has a disability and is requesting a reasonable accommodation, a different form should be completed for each person.**

This form must be signed by an adult requesting a reasonable accommodation, or parent or guardian of the child with a disability for whom the accommodation is requested. Please complete this form and bring it and the enclosed pre-addressed envelope to your doctor or other health care provider. **The New York City Housing Authority will use this information only to decide if you/your child needs a reasonable accommodation of a disability, and the type of accommodation needed. NYCHA will keep the information, and any doctor's letters, confidential as required by law. If you choose not to authorize the release of this medical information to NYCHA, we will not be able to grant your accommodation request.**

| 1 | Identity of the person with a disability requesting a reasonable accommodation | Name: | |
|---|---|---|---|
| | | Date of Birth (mm/dd/yyyy): | Last 4 digits of Social Security No.: |
| | | Relation to above Applicant/Tenant: (if the same person, write "same"): | |
| 2 | Type of Modification/ Accommodation Requested | | |
| 3 | **Authorization to Release Information** | I, the above named Applicant/Tenant, authorize the health care provider listed below to provide NYCHA with the following information about the person with a disability named above, as it relates to the disabled person's reasonable accommodation request. | |

Within section 3:

- The patient's current physical, medical, mental, or psychological impairment, including the patient's diagnosis, the severity of symptoms, and resulting functional limitations;

- The history of the patient's medical treatment for the condition, including hospitalizations, medication, and other treatment for the condition;

- The history of the medical provider's treatment relationship with the patient, including how long the provider has treated the patient;

- Information regarding the patient's need for the reasonable accommodation listed above, or a recommendation for an alternative reasonable accommodation.

The Health Care Provider is authorized to release information to NYCHA at the office and address listed below.

The tenant / applicant authorizes release of this information, even though it may otherwise be confidential under New York State Law or the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

- This Authorization does not waive any professional relationship confidentiality.
- This Authorization can be revoked by me at any time, by written statement to the Health Care Provider.
- The information provided to NYCHA will be in response to this form, and can either be written and attached to this form or provided as additional documents or responses to follow-up inquiries from NYCHA.
- This Authorization is for the limited time and purpose of allowing NYCHA to consider and respond to my reasonable accommodation request. In any event, this authorization expires one year from the date signed.

Date:

_____

*(Signature of Applicant / NYCHA Tenant*

_____

*Signature of parent or guardian of applicant/tenant*

_____

*If parent/guardian, explain relationship to applicant/tenant tenant*

---

## Notice to Doctor / Health Care Provider:

NYCHA applicants and residents with disabilities may have a right to reasonable accommodations in NYCHA housing or NYCHA programs, policies, or procedures if they need them because of their disability. Anyone with a physical, medical, mental, or psychological impairment may be entitled to reasonable accommodations. Examples of impairments are mobility impairments, sensory impairments (e.g., blindness or deafness), chronic health problems (e.g., asthma), and mental health problems.

**Please describe on your official stationery detailed responses to the following:**
a) How long has the NYCHA resident requesting a reasonable accommodation been your patient?
b) When did you last see this patient?
c) Describe the nature of the patient's disability, including the patient's symptoms and any functional limitations.
d) Describe why the patient needs the reasonable accommodation he/she has requested for his/her disability, and how the requested accommodation would accommodate the disabled person's disability.
e) Is the need for an accommodation permanent or temporary? If temporary, how long do you expect the need to last?

**Attach your letter to this Disability Verification form and return it directly to:**
*[NYCHA staff: Write the NYCHA return address or attach label below]*

**New York City Housing Authority -** *(NYCHA Department / Title of Official):*

*(Address):*

*(City/State/Zip):*

NYCHA 040.426 (Rev. 11/13)

**EXHIBIT F**

Revised Language for NYCHA tenant handbook (p. 51)

Residents and applicants for housing who believe they are at a disadvantage because of physical, linguistic or discriminatory circumstances, can turn to NYCHA's Department of Equal Opportunity. DEO provides several services.

In accordance with federal, state and local law, NYCHA's Department of Equal Opportunity, Office of Employment and Fair Housing Investigations investigates complaints of alleged discrimination from residents and applicants for housing. The Unit also reviews the applications of applicants who have been found ineligible for public housing and claim a disability-related right. Residents and applicants with disabilities who need help obtaining decent, affordable and accessible housing or a reasonable accommodation in NYCHA's developments can enlist the assistance of the DEO Services for People with Disabilities Unit (see below).

The NYCHA Language Services Unit translates official Authority documents and provides interpreter services to residents and applicants with limited English-speaking abilities to ensure equal access to information and services.

## Persons with Disabilities

NYCHA residents with mobility impairments and other physical disabilities may request transfers to apartments that are accessible. An apartment is considered to be accessible if, in addition to necessary modifications to the apartment itself, a mobility impaired resident can get from the street to the apartment without any obstruction. A resident may also request that his or her current apartment be modified to provide a "reasonable accommodation" for a household member with a disability. A "reasonable accommodation" can be structural, such as the installation of a grab-bar or a roll-in shower.

NYCHA housing applicants and residents with disabilities may have a right to other types of reasonable accommodations. Anyone with a medical, mental, or psychological impairment has a disability that may give the individual a right to reasonable accommodations. Examples of impairments are mobility impairments, sensory impairments (e.g., blindness or deafness), chronic health problems (e.g., asthma), and mental health problems. A reasonable accommodation can be a change in NYCHA policies, procedures or practices so that individuals with mobility impairments and other physical disabilities have equal opportunities to participate in and benefit from NYCHA programs. Some examples of reasonable accommodations include:

- Sign language interpreters
- Documents in Braille
- Other way of making information and communications accessible to people who have speech, language, or vision impairments
- Allowing a third party to make rent payments on behalf of a person with a mental disability

- For a resident with breathing problems: An additional air conditioner unit if the electrical system permits; transfer to a temporary location during mold and moisture abatement; permanent relocation to other NYCHA housing if the apartment is uninhabitable and another apartment is available; use of low-toxicity fungicides to cover surfaces with mold; and/or the use of appropriate dust suppression methods during mold removal.

To request a reasonable accommodation, you can use NYCHA's Reasonable Accommodation Request form (040:425) and the attached Disability Verification form (040:426), which are available at each development Manager's Office. Hearing impaired individuals may call TDD (Telephone Device for the Deaf) at (212) 306-4845 to inquire about transfers and reasonable accommodations). All forms may also be obtained online at http://www.nyc.gov/html/nycha/html/community/equalopp.shtml. You can request an accommodation from NYCHA at any time.

A development manager or supervisor will review your request within five days after receiving medical and other documentation. If he or she cannot grant your request, he or she will refer it to the Public Housing Reasonable Accommodations Coordinator, who will have 30 days to make a decision, unless NYCHA needs more time. If NYCHA needs more time, NYCHA will tell you in writing and explain why. NYCHA will send you a notice with the decision. If you do not agree with the decision, you can request a grievance hearing by checking the appropriate box on the notice and returning it to the address indicated within 30 days or by contacting your management office.

If you have any questions, you may contact NYCHA's Department of Equal Opportunity.

**EXHIBIT G**

NEW YORK CITY HOUSING AUTHORITY
NYCHA 060.303 (11/06) & Reverse

**MOLD** is a fungus that grows on, and sometimes in, damp surfaces and objects. In nature, mold helps break down dead material and can be found growing on soil, foods, plant matter, and other items. Mold produces microscopic cells called "spores" which are very tiny and spread easily through the air. Live spores act like seeds, forming new mold growth *(colonies)* when they find the right conditions. Mold is most likely to grow where there is water or dampness, such as in bathrooms.

Mold usually appears in its early stages as black circles or blotches. Most types of mold that are routinely encountered are not hazardous to healthy individuals. However, too much exposure to mold may cause existing conditions such as asthma, hay fever, or other allergies to get worse. The most common symptoms of overexposure are similar to the symptoms of overexposure to plant pollen, such as coughing, congestion, runny nose, eye irritation, and aggravation of asthma.

Asthma and allergies may be disabilities that give a tenant a right to reasonable accommodations from NYCHA.

A disability is a physical, medical, mental or psychological impairment. NYCHA will provide reasonable accommodation to meet the needs of persons with disabilities. A reasonable accommodation in housing is a change, modification or alteration in policy, procedure, practice or program, that provides a qualified individual with a disability the same opportunity, as exists for non-disabled individuals, to participate in, or benefit from, a program or activity.

Reasonable accommodations for persons whose asthma is exacerbated by mold in their apartments include:

- permission to install and operate an additional air conditioner if electrical system permits
- a transfer to a temporary location during mold and moisture abatement
- a permanent transfer to another NYCHA apartment if the apartment is uninhabitable and another apartment is available,
- the use of low-toxicity fungicides to cover surfaces with mold, and/or
- the use of appropriate dust suppression methods during mold removal.

If you think you need a reasonable accommodation for a disability, you can ask for an accommodation from your development management office. If you need assistance, you may contact the NYCHA Department of Equal Opportunity (212-306-4652; TTY: 212-306-4845) at any time. NYCHA has forms you can use to

ask for a reasonable accommodation and tell your doctor what information to include in a letter about your need for an accommodation.  You can get these forms from your development management office or online at http://www.nyc.gov/html/nycha/html/community/equalopp.shtml

# Controlling **MOLD** In Your Apartment

Mold needs water to grow and is most often confined to areas near water sources. Removing the source of moisture by repairs and by providing sufficient ventilation is critical to preventing mold growth.

# Preventing **MOLD**

## The Fresh Air Cure

Letting fresh air into your apartment lowers the amount of moisture which helps to reduce dust mites and cockroaches. Keep your apartment well ventilated by opening windows, using fans and arranging furniture so that windows are not blocked.

• Increase air circulation by moving fans and by moving sofas and other furniture away from walls and corners to promote air and heat circulation.

• Keep your bathroom window open even a little, when weather permits, especially when you are showering or drying clothes.

• If you have an exhaust fan in your bathroom, make sure it is working and remove any accumulated dust from the vent cover in order to improve air circulation. If your bathroom fan is not working, call the Customer Contact Center at (718) 707-7771

• Keep your apartment clean, dry and free of clutter.

• Lower humidity in the apartment during humid weather by using an air conditioner and/or a dehumidifier.

• Use your stove only for cooking, never for heating. When cooking, keep pots covered and windows open; even keeping windows slightly open will help.

• Use area rugs that can be taken up and washed often.

• Keep your drapes open during the day.

• Request repair of leaky plumbing or other water leaks as soon as possible.

• Keep the "drip pans" in your air conditioners, refrigerators and dehumidifiers clean and dry.

• Hang wet clothes to dry in open areas in your apartment, such as on bathroom shower rods, or on drying racks with the window open. Thoroughly wring out clothes prior to hanging. Take slow drying heavy items to the Laundromat.

• Dry all wet surfaces and reduce the moisture/water source upon discovery of condensation or moisture collecting on windows, walls or pipes.

## Other Ideas That Will Help:

Mold should be cleaned as soon as it is noticed using household cleaners such as Soft Scrub, Tilex, or other products labeled "antimicrobial." **Never mix products containing ammonia with those containing bleach.**

Individuals who are cleaning mold should be free of allergies or symptoms such as nasal congestion, cough, sore throat or upper respiratory infections. The individual should wear protective clothing as recommended by the manufacturer of the household cleaner used.

The cleaned area must be thoroughly dried with a sponge or rag that should **immediately be disposed of and not reused**. Absorbent materials that contain mold, such as linen or carpets, might need to be replaced.

# Cleaning **MOLD**

# If The Problem *Persists*

Mold can pose a health hazard for you and your family so it is important to eliminate the problem as soon as possible.

When you've tried cleaning fluids and proper ventilation and nothing seems to help, report the mold problem to your Management Office or the Customer Contact Center at (718) 707-7771. A returning mold condition may indicate an underlying problem such as a leak. Your Housing Manager will provide you with assistance to correct this condition.