IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARIBEL BAEZ; FELIPA CRUZ; R.D., ON BEHALF OF HER MINOR CHILD, A.S.; on their own behalf and on behalf of all others similarly situated; UPPER MANHATTAN TOGETHER, INC.; and SOUTH BRONX CHURCHES SPONSORING COMMITTEE, INC., | : : : : : : : : | No. 13 Civ. 8916 (WHP) |
| Plaintiffs, | : : | |
| v. | : : | DECLARATION IN SUPPORT OF |
| NEW YORK CITY HOUSING AUTHORITY, | : : | CLASS ACTION ORDER OF SETTLEMENT |
| Defendant. | : : | |

I, MARC COHAN, an attorney admitted in the United States District Court for the Southern District of New York, declare as true under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

**A.     Introduction**

1.     I am one of the counsel of record for plaintiffs herein.

2.     I make this declaration, pursuant to Rule 23(e) and (g)(4) of the Federal Rules of Civil Procedure, in support of the proposed Stipulation and Order of Settlement (hereinafter "Order") DKT 11.  As set forth below, the settlement reached in this matter, which this Court has certified as a class action, is fair, reasonable, and adequate, comprehensive, and in the best interests of the class and the organizational plaintiffs, especially the thousands of class members who stand to benefit if the Order is approved.  It further meets the criteria for settlement approval set forth under relevant Second Circuit Court of Appeals decisions.

3.     On December 17, 2013, following intensive, arm's-length negotiations between the parties' counsel, individual public housing residents Maribel Baez, Felipa Cruz, and R.D., on

behalf of her minor child A.S., on behalf of themselves and all others similarly situated, and two nonprofit community-based organizations, Upper Manhattan Together, Inc. and South Bronx Churches Sponsoring Committee, Inc. (collectively, "plaintiffs"), commenced this action against defendant New York City Housing Authority (hereinafter "defendant" or "NYCHA").  The community-based organizational plaintiffs advocate for the rights of New York City public housing residents, including those with asthma who have mold and excessive moisture in their apartments.

4. On December 17, 2013, the parties filed, simultaneously with the filing of the Complaint, and the Order, which contains the negotiated terms of their proposed settlement of this class action.

5. The named plaintiffs informed NYCHA, prior to commencing this action, that they have asthma, and that mold and excessive moisture present in their apartments exacerbates their symptoms and is, therefore, hazardous to their health.  They have further asked NYCHA to provide reasonable accommodations and reasonable modifications of NYCHA mold remediation and repair policies and practices needed to ensure that mold and excessive moisture are promptly and effectively remediated from their apartments.  The community-based organizational plaintiffs advocate for the rights of New York City public housing residents, including those with asthma who have mold and excessive moisture in their apartments.

6. Plaintiffs, on behalf of themselves and all those similarly situated, commenced this action to challenge the failure of NYCHA to make reasonable accommodations and modifications in its policies, practices, and procedures to effectively abate mold and excessive moisture in plaintiffs' apartments, which they exacerbates their asthma symptoms.  Plaintiffs allege that NYCHA policies, practices, and procedures for responding to complaints of mold and excessive

...
...

moisture and for performing related repairs are not modified for residents suffering from asthma, including members of the proposed plaintiff class, and are thus inadequate to meet their health-related needs.

7. Plaintiffs further allege that defendant's actions deny them an equal and meaningful opportunity to use, benefit from, and enjoy public housing, in violation of Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 - 12103, 12131 - 12134, 12201 - 12213; Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794; and the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. § 3604.  Plaintiffs allege that they and all those similarly situated are consequently denied the equal enjoyment and use of their residences through defendant's actions, by virtue of being forced to live in environments replete with indoor mold and excessive moisture.

8. The Complaint seeks injunctive relief ordering NYCHA to provide plaintiffs with the reasonable accommodations and modifications they requested, in order to remediate the mold and excessive moisture in their apartments. They request that this Court order NYCHA to modify existing policies, practices, and procedures concerning conducting apartment inspections, prioritizing work orders, and performing mold remediation for plaintiffs and class members who have asthma, according to the following:

    a. Remediation of mold and excessive moisture that effectively addresses their underlying causes, including plumbing problems, regardless of the size of the visible mold;

    b. Remediation work conducted in a manner that minimizes risk to tenants with asthma, by using low toxicity chemicals and HEPA filters, double-bagging of old debris, and applying an interim low-toxic coating to moldy and damp

surfaces to minimize exposure while work is being performed;

c. Relocation of tenants to suitable housing, if necessary, while remediation work is being performed;

d. Inspection at least annually of all apartments where tenants with asthma are known to reside and who suffer or have suffered from mold or excessive moisture problems, and if these conditions are found, prompt eradication using the procedures referenced above;

e. Provision of notice to NYCHA tenants of modified policies, practices, and procedures for remediation of both mold and excessive moisture in apartments where persons with asthma reside and the procedures for requesting remediation;

f. Creation of a process for identifying tenants already known by NYCHA to have asthma and who have mold or excessive moisture problems in their apartments, and use of the modified procedures to remediate the problems and underlying causes;

g. Training of staff on the mold and excessive moisture policies, practices, and procedures for tenants with asthma;

h. Modification of the Reasonable Accommodation in Housing for Applicants, Section 8 Voucher Holders, and NYCHA Residents Policy to: define and provide examples of disability in accordance with the ADA; specify that persons with asthma are entitled to reasonable accommodations under the ADA regarding remediation of mold and excessive moisture; and provide appropriate procedures for requesting reasonable accommodations.

9. The parties began settlement discussions in June 2013, prior to commencement of this action. These negotiations culminated in the Order currently before the Court.

10. On December 18, 2013, plaintiffs filed a motion for class certification. DKT ___. The parties agreed that this action should be certified as a class. On February 11, 2014, the Court issued an Order Certifying Class and Appointing Class Counsel (DKT # 15-1), which certified a class defined as follows:

> Current and future residents of NYCHA who have asthma that substantially limits a major life activity and who have mold and/or excessive moisture in their NYCHA housing.

The Court also designated attorneys from the National Center for Law and Economic Justice and the Natural Resources Defense Council as class counsel. *Id*.

11. On February 11, 2014, following a hearing, the Court issued an Order Scheduling Fairness Hearing and Approving Notice Pursuant to Rule 23(e) (DKT # 15-2). The Court approved the class notice provisions proposed by the parties and scheduled a hearing on March 27, 2014, for the purposes of determining whether the Court should approve the proposed settlement as fair, reasonable, and adequate.

12. Plaintiffs' counsel have received electronic copies from defendant of the class notices in English, Spanish, Chinese, Haitian-Creole, and Russian, as required by the Court's Order of February 11, 2014. Plaintiffs' counsel have posted the notices and the settlement agreement on their respective websites. Plaintiffs' counsel for the National Center on Law and Economic Justice have distributed the class notices to other legal services providers and community-based organizations that serve the plaintiff class, and requested that those organizations post the notices, as allowed.

13. Plaintiffs' counsel for the National Center on Law and Economic Justice have

received approximately 74 contacts by telephone and email from class members, regarding the class notices they received in the mail, which contain a description of the litigation and proposed terms of settlement. In addition, plaintiffs' counsel have received approximately 37 written comments forwarded by the Court.

The great majority of these class members, as well as legal and community-based organizational advocates contacting the National Center for Law and Economic Justice, have indicated to plaintiffs' counsel their support for the comprehensive settlement provisions contained in the Order. Virtually all of these individuals describe difficulties with their respiratory health, including asthma, and conditions of mold and moisture build-up in their NYCHA apartments which have not been effectively remediated.

Plaintiffs' counsel have received seven comments from class members contacting the National Center for Law and Economic Justice that voice a desire for the availability of compensatory damages against NYCHA regarding the presence of mold or excessive moisture in their apartments, as potential relief. One of these commenters specifically objected to the terms of the Order, because the plaintiffs have not sought damages as relief in the litigation.

One commenter stated, without further specificity, that the litigation was conducted in "secrecy" and the settlement inadequately represents the concerns of NYCHA tenants living in substandard conditions. Another commenter appeared to object to the class notices being issued in non-English languages. One commenter asks "why capitol improvements will be excluded?" This person also states that mold should be sent to a NYC health department laboratory for inspection, to determine which agents will eradicate it. One commenter objects because she feels the settlement should provide for compensatory damages. One commenter states: "Please take us off the class action lawsuit list." One commenter details the leaks and

mold conditions in his apartment, and tells the court the case should "not proceed forward with negotiation towards a settlement." He urges the court to "move to put in place an injunction stay order to continue to push NYCHA to do all the lingering work order repairs completely, not just the most recent complaints just brought to their attention." One commenter says, "I . . . disagree with the settlement," without further explanation.

One commenter says that "this settlement doesn't provide justice for those who have been affected by NYCHA's inability to address mold issues in a timely manner. While studies and preventive measures are good, the proposed settlement is not sufficient." He goes on to suggest specific measures, including free annual medical check-ups for mold-related illnesses, a trust fund and related monetary fund to cover healthcare costs, semi-annual bathroom vent and elevator shaft cleanings, temporary housing, moving and storage for tenants needing to vacate their apartments while mold is being abated. In addition, workers and home attendants working in mold conditions need to be included in the settlement. Finally, one commenter stated his apartment was "OK."

Plaintiffs' counsel received from the Court four comments in Spanish and one comment in Chinese, and arranged informal, non-certified translations of the documents. Each of these comments, except one, describes the persons' respiratory problems and mold conditions in their apartments. One comment appears to describe a broken window, instead of mold.

    **B.**    <u>**Overview of the Order**</u>

        **(i)**    **Terms of the Order**

14. The Order meets the standards used by the Second Circuit to evaluate class action settlements. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell I*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).

In *Wal-Mart Stores, Inc. v. VISA USA, Inc.*, 396 F.3d 96, 116-17 (2nd Cir. 2005), the court stated:

> A court may approve a class action settlement if it is "fair adequate, and reasonable, and not a product of collusion." A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to the settlement. A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." We are mindful of the "strong judicial policy in favor of settlements, particularly in the class action context."

15. The terms of the Order charge NYCHA with specific responsibilities regarding remediation of mold and excessive moisture, and the provision of residents' rights under the ADA, Section 504, and the FHAA. These terms are comprehensive, they protect the interests of the named and absent class members, and they provide substantially all the relief that plaintiffs could have achieved were they to have prevailed after trial.

16. First, under ¶ 3 of the Order, NYCHA must abate flooding conditions, when feasible, within 24 hours. All standing water relating to the flood must be mopped up, and all water-soaked areas, except residents' personal property, must be dried within 48 hours.

17. Second, ¶ 4 sets forth strict timelines pursuant to which NYCHA must inspect complaints and provides repairs where necessary to abate excessive moisture and mold conditions, which exacerbate asthma. The paragraph mandates NYCHA to maintain an average service level of no more than seven (7) days for completion of mold and excessive moisture-related work orders requiring simple repairs that can be accomplished by a maintenance worker in a single visit, when residents provide access to their apartments. An average service level of no more than fifteen (15) days is required for completion of more complex repairs. Under ¶ 5, service level compliance for both simple and complex repairs is governed by a ninety-five percent (95%) completion level of work orders in an average of, respectively, no more than seven (7) or fifteen (15) days during a

defined quarterly period. These service levels will not apply to capital improvements.

18. Third, ¶ 6 provides that when mold or excessive moisture conditions are detected by NYCHA or reported by apartment occupants, NYCHA will create work orders and staff will discuss mold growth causation with the occupants, including furnishing them a copy of NYCHA publication 060.303, "Preventing Mold Growth in Your Apartment." Within no more than sixty (60) days following completion of work orders, NYCHA must make a good-faith attempt to contact the apartment resident to determine if the work scheduled was completed and the mold and excessive moisture problems and their underlying causes have been effectively addressed. If not, new work orders must be created and supervisors must perform inspections of the apartments. NYCHA must report quarterly to plaintiffs' counsel the numbers of residents contacted and the percentages of those work orders where residents report that problems are not effectively addressed.

19. Fourth, under ¶ 7, NYCHA must implement these mold and excessive moisture remediation requirements contained in ¶¶ 3 – 6 in accordance with its Policy Document, "Operations & Maintenance Policy for Mold & Moisture Control in Residential Buildings," attached as Exhibit "A" to the Order. Pursuant to ¶ 9, NYCHA will submit to plaintiffs' counsel, within sixty (60) days of the effective date of the Order, a draft of a standard operating procedure and supporting documents designed to implement this policy. Plaintiffs' counsel will be afforded the opportunity to review and comment on the standard operating procedure and related documents.

20. Fifth, under ¶s 7 and 8, NYCHA must modify its policies, operating procedures, forms, and informational materials, including reasonable accommodation notices and forms, in accordance with Exhibits "A" through "G," attached to the Stipulation and Order. Under ¶ 8(c)

and (e), NYCHA must distribute these documents to staff, including those responsible for the reasonable accommodation process, and must train staff responsible for responding to reasonable accommodation requests and handling customer contacts, within sixty (60) days of the effective date of the Order, on these policies and the fact that mold can exacerbate asthma symptoms.

21. Sixth, under ¶ 10(a), NYCHA will provide plaintiffs' counsel with quarterly monitoring reports specifying: (a) percentages of work orders concerning mold or uncontrolled moisture requiring action within seven (7) or fifteen (15) days, or deferred for capital improvement work; (b) number of post-closed work order closure contacts and quality assurance inspections attempted, those completed, and those inspections not completed within agreed-upon timeframes; (c) total number of mold and uncontrolled moisture work orders; and (d) number and percentage of work orders completed and not completed within agreed-upon service levels. This data will be further broken down into specified demographic and work order categories.

22. Seventh, under ¶ 10(b), NYCHA must engage in systematic or random sampling, at stated intervals and according to specified parameters, of mold and uncontrolled moisture complaints, with a sample size designed to provide a statistically valid sample at the 95% confidence level with a 3% margin of error. Pursuant to ¶ 10(c), NYCHA must randomly or systematically select 100 closed work orders related to mold and uncontrolled moisture for re-inspection, according to specified criteria. To the extent they are available, moisture meters will be used during the assessment to verify the effectiveness of the moisture control work. If an assessment finds mold or uncontrolled moisture problems, a new work order will be created. NYCHA will report inspection findings to plaintiffs' counsel within sixty (60) days of the completion of the assessments. NYCHA must identify the number of apartments where physical remediation work was performed in a prior quarter, and the number of apartments previously

included in a quarterly sample and inspected for a mold or moisture complaint other than the one that is the subject of the work order selected in the current sample.

23. Eighth, under ¶ 11, NYCHA must provide plaintiffs' counsel, on a semi-annual basis: (a) copies of reasonable accommodation requests regarding residents with asthma related to mold or excessive moisture in their apartments; (b) information on the status of each accommodation request; and (c) copies of all ADA/Section 504 grievances submitted to NYCHA by individuals seeking reasonable accommodations related to mold or excessive moisture.

24. Ninth, ¶ 13(a) provides for this Court to retain jurisdiction over the Order for thirty (30) or thirty-six (36) months. If NYCHA is in compliance with the work order provisions of ¶ 5 for two or more consecutive quarterly periods immediately prior to the 30th month, the jurisdiction of the Court will terminate, subject to the retention of jurisdiction to decide, under ¶ 13(b), a motion by plaintiffs to enforce systemic violations of the Order, and further subject, under ¶ 13(c), to periods of non-complying performance by NYCHA that are affected by systematic computer malfunctions beyond its control.

25. Tenth, ¶ 15 provides that NYCHA will engage in a pilot program regarding the effectiveness of moisture meters, borescopes, and humidity gauges for mold and excessive moisture investigations, if it receives appropriate funding from the City of New York. NYCHA will reserve the discretion to determine whether it will continue to use this equipment following the pilot project.

26. Eleventh, ¶ 17 specifies that plaintiffs may move for enforcement of the Order against NYCHA after attempting to remedy the violation through good-faith discussions with NYCHA, and after provision of written notice with an opportunity for the defendant to cure at least thirty (30) days prior to any enforcement motion.

27. Twelfth, ¶ 22 states that NYCHA will pay the sum of $250,000 to plaintiffs' counsel, as full settlement for attorneys' fees, costs, and disbursements, provided that plaintiffs' counsel may move for fees in connection with any enforcement motion pursuant to ¶ 17.

### (ii)  Discovery

28. While the parties have not conducted formal discovery in this action, they exchanged significant amounts of data and documentation as part of the negotiations leading to settlement.

29. Additionally, plaintiffs' counsel conducted significant pre-filing investigation, which including interviewing numerous tenants residing in NYCHA properties who suffer from asthma and who live with mold and excessive moisture in their apartments.  They also consulted with community-based organizations who advocate for the provision of safe public housing, on behalf of tenants that include individuals with asthma.  This enabled plaintiffs' counsel to ascertain the extent of the conditions they sought to challenge as part of the litigation.  Further, plaintiffs' counsel reviewed professional literature and consulted with experts in mold and moisture remediation, to determine potential methods that could be used to eradicate these conditions.  They arranged for and funded comprehensive inspections of NYCHA apartments by certified industrial hygienists and health investigators to determine residential conditions and health risks to occupants, and to prescribe modifications in NYCHA practices, policies, and procedures needed for residents of those apartments.

### (iii)  Negotiations

30. Commencing in June 2013, counsel for the parties conducted multiple negotiating sessions, both in person and by telephone conference calls.  They exchanged and revised numerous draft settlement agreements during this process.  These negotiations were conducted at arm's

length by teams of capable and very experienced attorneys whose familiarity with the NYCHA operational issues and program intricacies, in addition to the relevant statutes, regulations and caselaw, helped inform and expedite the process of reaching a fair settlement.

31.     The parties negotiated over complex issues including, but not limited to: the nature and scope of defendant's obligations to provide reasonable accommodations in the form of remediation of mold and excessive moisture in apartments where tenants with asthma reside; the effectiveness of various mold and moisture eradication techniques; the prevalence of these conditions in NYCHA housing; communication of effective notice of modified policies, practices, and procedures to class members, including the right and procedures to request reasonable accommodations; implementation of an adequate system of procedures for reporting and consequent work orders designed to timely and effectively eradicate mold and moisture in the affected apartments of thousands of affected class members; the term of the Court's retained jurisdiction; and the appropriate methods for receiving adequate performance reporting under the settlement and monitoring defendant's compliance with its terms.

32.     On December 15, 2013, the parties agreed to a settlement on all of the issues with respect to both the merits of plaintiffs' claims and the amount of attorneys' fees to be paid to plaintiffs' counsel.

33.     Both the process and the result demonstrate the parties conducted negotiations at arm's length and without collusion.

### C.     **The Order Should be Approved.**

34.     The terms of the Order are fair, adequate, and reasonable based on the substantive factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir 1974) ("*Grinnell I*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000);

*accord, Charron v. Wiener,* 731 F.3d 241, 247 (2d Cir. 2013); *Wal-Mart Stores, Inc., v. VISA, USA*, 396 F.3d 96, 117-18 (2d Cir., 2005); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009). The *Grinnell* factors to be reviewed by the Court are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463; *see Mentor v. Imperial Parking Sys., Inc.*, No. 05-Civ.-7993 (WHP), 2010 U.S. Dist. LEXIS 132831, at *5 (S.D.N.Y. Dec. 15, 2010).

35. The *Grinnell* factors relating to monetary damages (5) and the size of the judgment (7, 8, and 9) do not apply where, as here, no monetary relief is sought. *See Selby v. Principal Mut. Life Ins. Co.*, No. 98-Civ.-5283 (RLC), 2003 U.S. Dist. Lexis 21138 at *8-9 (S.D.N.Y. Nov. 21, 2003) ("Those factors most relevant to the settlement of an action seeking purely injunctive relief are the reaction of class members to the settlement, the state of the proceedings and the amount of discovery completed, the terms of the settlement, the costs and risk of continued litigation and the likelihood of recovery"); *see also, D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 70-74 (E.D.N.Y. 2008). Settlements in cases that seek injunctive relief, and do not request damages, are routinely found fair, adequate, and reasonable, and are approved. *See Marisol A. by Forbes v. Giuliani*, 185 F.R.D. 152 (S.D.N.Y. 1999), *aff'd Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000); *see also Blatch v. Hernandez*, No. 97-Civ.-3918 (LTS) (HBP), 2008 U.S. Dist. LEXIS 92984 (S.D.N.Y. Nov. 3, 2008).

36. Application of the relevant factors to the present case demonstrates that the Order should be approved.

37. First, the complexity, expense and likely duration of the litigation are directly relevant to approval. This case presents complex federal claims regarding the availability of reasonable accommodations to persons recognized as having disabilities under the ADA, Section 504, and the FHAA, in the context of requesting amelioration of mold and excessive moisture conditions in their apartments. Further litigation of these claims on behalf of thousands of public housing residents likely would involve protracted discovery and pretrial motions, as well as potential trial of the issues.

38. Second, as to the reaction of the class members to the proposed settlement, there has been very little reaction that could reasonably be construed as opposing the proposed settlement. As stated above, there have been several comments regarding the need to seek compensatory damages as a form of relief against NYCHA. The reaction otherwise received from class members overall, as well as from informed advocates, has been very favorable.

39. Third, as to the state of the proceedings, while no formal discovery has been conducted, the parties have engaged in significant pre-filing exchanges of information and data pertaining to public health conditions of a public housing authority containing hundreds of thousands of tenants, and the efficacy of remediation methods to address mold and excessive moisture present throughout many of the apartments of that housing authority. The parties engaged in extensive, arm's-length negotiations, which resulted in a comprehensive agreement.

40. Fourth, with respect to the risks of establishing liability, plaintiffs are confident that their claims of disability, as defined by federal disability statutes and implementing regulations, fully support their right to meaningful access to safe public housing at NYCHA and the use of

reasonable accommodations to abate and remediate mold and excessive moisture conditions present in their apartments. The proposed Order removes the need for any continued litigation in this matter regarding plaintiffs' disability rights under federal law.

41. Fifth, with respect to risks of maintaining the class action through trial, given the scope and complexity of the NYCHA public housing program and the conditions alleged, the cost of continuing litigation would be high. While plaintiffs maintain their confidence, as stated above, in their stated claims of disability and the right to reasonable accommodations under federal law, the defendant could have disputed plaintiffs' causes of action through protracted litigation. The Order eliminates the costs associated with a potential trial and appeal. The Order provides the relief plaintiffs sought more quickly than would have been realized, had the litigation continued.

42. The Order enables members of the plaintiff class to obtain prompt and comprehensive relief through a settlement that establishes an affirmative, systematic program of operations designed to remediate mold and excessive moisture in NYCHA housing for thousands of individuals, in a methodical, accountable manner. The Court's jurisdiction is retained for at least thirty (30) months. Plaintiffs' right to return to Court in the event defendant fails to systematically comply with the Order provides the class and the Court with the appropriate means for ensuring that mold and moisture remediation measures undertaken by the defendant are effective. Further, the continuing obligation to provide defined, specific reporting to plaintiffs' counsel helps ensure that the efforts of NYCHA can be adequately monitored.

43. Finally, the parties have come to an agreement, in ¶ 22 of the Order, on the issue of reasonable attorneys' fees in accordance with Rule 23(h) of the Federal Rules of Civil Procedure. The defendant has agreed to pay the sum of $250,000 to plaintiffs' counsel for attorneys' fees, costs, and disbursements. This permits the Court to fully assess the fairness of the settlement.

44. The attorneys' fees in this case will not be awarded from a "common fund" created for the class as a whole. "Thus regardless of the size of the fee award . . . the fee award does not reduce the recovery to the class. Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished." *In re Sony SXRD Rear Projection TV Class Action Litig*, No. 06-Civ.-5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *43 (S.D.N.Y. May 1, 2008). Consequently, in such cases, "the Court's fiduciary role in overseeing the award is greatly reduced." *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006). Courts in this District have looked to the factors specified in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), in order to make this determination. *See Jermyn v. Best Buy Stores, L.P.*, No. 08-Civ.-214 (CM), 2012 U.S. Dist. LEXIS 90289, at *25 (S.D.N.Y. June 27, 2012); *Mentor*, 2010 U.S. Dist. LEXIS 132831, at *10. The *Goldberger* factors are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id*. at 50 (citation and interior quotation marks omitted).

45. The fees provision of the Order meets the *Goldberger* factors.

46. First, plaintiffs' counsel have devoted considerable time and resources regarding research and investigation of claims and relevant factual background prior to commencing this lawsuit, as well as intensive negotiations culminating in settlement. Counsel have interviewed class members, reviewed numerous documents and data compilations, and utilized the services of experts to inspect apartments and to review and interpret substantial issues and amounts of data regarding mold and moisture eradication.

47. Second, the magnitude and complexity of the litigation have been significant. This has been a complex undertaking, requiring assimilation of numerous reports of class members

regarding apartment conditions and consequent complaints to NYCHA, evaluation of NYCHA policies and operating protocols for removing mold and moisture, and assessment of effective means of remediation.

48. Third, the factor of litigation risk is not relevant in this context, since plaintiffs' counsel are nonprofit entities and are not charging fees to their clients.

49. Fourth, the quality of the representation by plaintiffs' counsel has been high. They are experienced in class action litigation, and have brought substantial resources to bear in achieving a global settlement that will substantially alter existing NYCHA practices and provide meaningful relief to members of the class.

50. Fifth, for the same reasons, the requested fee is reasonable, in relation to the settlement. The Order provides substantial benefits to disabled persons who had been unable to achieve reasonable accommodations resulting in mold and excessive moisture remediation in any meaningful manner. "In addition, the requested fee does not reduce or affect the relief provided to the class; rather, it is an amount [defendant] . . . has agreed to pay in addition to the terms of the injunctive relief. Where a fee is negotiated and does not reduce any recovery to the class, the danger of conflicts of interest between attorneys and class members is diminished." *Jermyn*, 2012 U.S. Dist. LEXIS 90289, at *31 (citation and interior quotation marks omitted). The quantum of the fee accorded here to plaintiffs' counsel is more than reasonable in view of the scope of the relief secured by the class.

51. Sixth, public policy considerations significantly militate in favor of the settlement, which provides effective, systematic, and accountable means of remediating mold and excess moisture in the public housing apartments of low-income residents with disabling conditions.

52. Additionally, "[t]he negotiation of fee agreements is generally encouraged." *In re*

*Sony SXRD Rear Projection TV Class Action Litig*, 2008 U.S. Dist. LEXIS 36093, at *43-44 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.")).

Wherefore, plaintiffs respectfully request that this Court enter an order approving the Order.

Dated: March 26, 2014                                                             *Marc Cohan*
       New York, New York                                                  Marc Cohan