| | | |
|---|---|---|
| **National Center for Law and Economic Justice** <br> 275 Seventh Avenue, Suite 1506 <br> New York, N.Y. 10001-6708 <br> (212) 633-6967 | **Natural Resources Defense Council** <br> 40 West 20th Street <br> New York, N.Y. 10011 <br> (212) 727-2700 | **Hogan Lovells US LLP** <br> 875 Third Avenue <br> New York, N.Y. 10022 <br> (212) 918-3506 |

March 6, 2015

Honorable William H. Pauley, III
United States District Court - Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 20B
New York, NY 10007-1312

Re:     *Baez, et al. v. NYCHA*, No. 13-cv-8916 (WHP)

Dear Judge Pauley:

Counsel for plaintiffs in the above-captioned matter write pursuant to paragraph III.A of the Court's individual practices to request a pre-motion conference in connection with a proposed Motion to Enforce the Stipulation and Order of Settlement in this case entered April 17, 2014 (the "Order"). Plaintiffs seek to file a Motion to Enforce because defendant New York City Housing Authority ("NYCHA") is not complying with the Order.

A core mandate of the Order requires NYCHA to abate conditions of mold and excessive moisture in tenants' apartments by completing "simple" repairs within seven days and "complex" repairs within fifteen days. (Order ¶ 4.) The Order also states that NYCHA will be deemed to be in compliance if, in each quarter, it "processes to completion" at least 95% of the work orders within seven or fifteen days on average. (Order ¶ 5.)

The Order further requires NYCHA to provide periodic reporting to plaintiffs. This includes quarterly reports concerning NYCHA's rates of compliance (Order ¶ 10(a)) and additional reporting concerning the number and percentage of residents who have complained that their problems were not effectively addressed (Order ¶ 6). NYCHA must further provide to plaintiffs a random sampling of mold and moisture complaints and a sampling of 100 closed work orders for re-inspection (Order ¶ 10(b) and (c)). In addition, NYCHA is required to provide reporting to plaintiffs, on a semi-annual basis, regarding reasonable accommodation requests under the Americans with Disabilities Act ("ADA") *e.g.*, requests for transfers to another apartment, including copies of the requests, information on the status of the requests, and copies of grievances submitted to NYCHA under the ADA (Order ¶¶ 8, 11).

NYCHA is in systemic non-compliance with the Order in several respects. These are summarized below.

1. <u>Disregard of Deadlines for Performance</u>

NYCHA has taken the position that both simple (seven-day) repairs and complex (fifteen-day) repairs can require multiple work orders and that each work order is subject to a separate completion deadline of, respectively, seven or fifteen days. Each time a complaint is received, NYCHA establishes a "parent" work order, and then it creates a separate "child" work order for each class of skilled trade involved in the mold and excessive moisture remediation (e.g., maintenance workers, plumbers and painters), each of which has a seven or fifteen-day deadline. Thus, if a repair is deemed complex and

Honorable William H. Pauley, III — 2 — March 6, 2015

requires three classes of trade to remediate, the total time to complete the job could be 60 days or more.

There is no basis for NYCHA's position that there can be unlimited child work orders attached to each parent work order, each of which sets the clock running another seven or fifteen days. Paragraph 6 of the Order makes clear that a single "work order" will be created whenever there is a complaint of mold or excessive moisture. NYCHA's Operations and Maintenance Policy, which is attached to the Order as Exhibit A, also states that simple repairs are to be completed within seven days and complex repairs are to be completed within fifteen days. (Order Ex. A at 6-7.) When the parties described the settlement to the Court, they stated that mold and excessive moisture abatement would be completed within seven or fifteen days. (3/27/14 Hearing Tr. 5, 50.) NYCHA's self-serving interpretation of the Order is without merit.

Furthermore, NYCHA's first quarterly report demonstrates that NYCHA's interpretation of the Order has had a significant adverse effect on NYCHA's performance. When parent-child relationships are taken into account, the time to complete seven-day repairs was as high as 97 days and averaged 8.8 days in the first quarter. Furthermore, for more than 61% of the seven-day work orders, no work was performed or work was not performed to completion. The goal of the Order—prompt and effective abatement of mold and excessive moisture—is being frustrated.

2. Untimely and Inaccurate Provision of Mandated Periodic Reporting and Random Sampling

NYCHA did not provide the basic work order report for the first quarter, which ended on July 31, 2014, until September 30, 2014. It did not provide the report for the second quarter, which ended on October 31, 2014, until February 20, 2015. The third quarterly report is now due, and NYCHA has failed to provide a satisfactory explanation for why these reports—which are generated from computer records—cannot be provided on a more timely basis.

In further violation of the Order, NYCHA only provided on February 20, 2015, for the first time, quarterly random sampling data of 100 closed work orders selected for re-inspection. Moreover, even this data does not provide the level of detail required by paragraphs 10(a) and 10(c) of the Order. NYCHA has also failed to provide the random sampling report required by paragraph 10(b) of the Order, and the ADA information required by paragraph 11 of the Order was more than 100 days late and largely unintelligible. NYCHA has refused to give assurances of more timely compliance in the future.

Furthermore, after plaintiffs complained about NYCHA's application of the seven- and fifteen-day deadlines to each parent and child work order, NYCHA deleted those categories, as well as the apartment numbers, from the second quarter report. As a result, plaintiffs are no longer able to calculate the actual level of NYCHA's performance or follow up with inspections of apartments. A page from the first quarterly report is annexed as Exhibit A, and a page from the second quarter report is annexed as Exhibit B.

The reports also use codes such as "Verified," "Null" and "Resolved Through Trial" that are not defined in the Order and are not self-explanatory. Plaintiffs have requested an explanation of the various codes and abbreviations used in the reports, but NYCHA has refused to provide one. Plaintiffs believe there may be other deficiencies in the reports but at this point they cannot even understand them.

### 3. Poor Quality of Mold and Excessive Moisture Remediation Work

NYCHA has also failed to live up to the qualitative requirements of the Order. NYCHA's own reports indicate that there has been a recurrence of mold in 34% of the cases that were supposedly closed in the first quarter and a recurrence of mold in 41% of supposedly closed cases in the second quarter. Interviews of tenants have revealed a pervasive failure on the part of NYCHA to live up to the requirements of the Order. NYCHA maintenance workers often attempt to remove mold with a cloth and bleaching agent, which results in its recurrence, because NYCHA has failed to address the excessive moisture causation of the mold or otherwise implement effective repairs. Tenants are erroneously told by NYCHA staff that the mold in their apartments is not mold at all and only needs to be superficially cleaned. Tenants are also told they must shower with the door open or not take showers at all, which is irrelevant to the obligation of NYCHA to abate mold and excessive moisture conditions.

Plaintiffs have attempted to resolve these issues without intervention of the Court, but it is clear that NYCHA has no intention to live up to the letter and spirit of the Order unless it is forced to do so. Many tenants have reported that their problems have existed for years, and in some cases decades. Moreover, NYCHA's unilateral decision to remove highly relevant information from the quarterly reports raises serious questions about NYCHA's good faith.

Plaintiffs' proposed Motion to Enforce will seek the following relief: (1) an order confirming that simple repairs must be _completed_ within seven days and complex repairs must be _completed_ within fifteen days; (2) an order requiring NYCHA to provide adequate and timely reports to plaintiffs; (3) appointment of an independent person or entity to monitor and supervise compliance; and (4) a schedule of penalties to be paid by NYCHA for failure to comply in the future.

The problems presented by NYCHA's failure to comply with the Order are serious. The members of the class are residents of NYCHA housing who have asthma. These class members, as well as thousands of NYCHA tenants generally, face serious health issues that are compounded by the presence of severe mold and excessive moisture infestation in their apartments. They are entitled to effective and prompt remediation of these conditions.

Respectfully submitted,

Greg Bass (MC 1954)
National Center for Law and
Economic Justice
T: (212) 633-6967
F: (212) 633-6371
bass@nclej.org

Nancy S. Marks (NM 3348)
Natural Resources Defense
Council
T: (212) 272-2700
F: (212) 727-1733
nmarks@nrdc.org

Steven M. Edwards (SE2773)
Hogan Lovells US LLP
T: (212) 918-3506
F: (212) 918-3100
steven.edwards@hoganlovells.com

cc: Donna M. Murphy, Esq.
Chief, General Litigation
Law Department/ Civil Litigation
New York City Housing Authority
250 Broadway
New York, NY 10007
Donna.Murphy@nycha.nyc.gov