UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARIBEL BAEZ; FELIPA CRUZ; R.D., ON BEHALF
OF HER MINOR CHILD, A.S.; on their own behalf
and on behalf of all others similarly situated;
UPPER MANHATTAN TOGETHER, INC.; and   Civ. No. 13-8916 (WHP)
SOUTH BRONX CHURCHES SPONSORING
COMMITTEE, INC.,

                              Plaintiffs,

v.

NEW YORK CITY HOUSING AUTHORITY,

                              Defendant.
------------------------------------------------------------------x

DECLARATION OF DONNA MURPHY IN OPPOSITION TO PLAINTIFFS' MOTION TO HOLD NYCHA IN CONTEMPT FOR VIOLATION OF THE STIPULATION AND ORDER

      DONNA MURPHY, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

      1.     I am an attorney with the Law Department of the New York City Housing Authority (NYCHA). I am of counsel to David Farber, General Counsel of NYCHA. I make this declaration in opposition to plaintiffs' motion for an order holding NYCHA in contempt for violation of the Stipulation and Order in the above-captioned matter based on personal knowledge and the books and records of NYCHA.

      2.     NYCHA was previously represented by Steven J. Rappaport in this matter. Mr. Rappaport retired from NYCHA and I became counsel for NYCHA in this matter in September 2014.

      3.     Plaintiffs' interpretation of the service levels became apparent to NYCHA in the latter half of 2014 and the parties met on November 24, 2014 to discuss this issue. Brian Clarke, Luis Ponce and I were present from NYCHA. Greg Bass, Marc Cohan, Petra Tasheff, Al Huang,

Nancy Marks, and Sara Imperiale from the National Center for Economic Justice and the Natural Resources Defense Council were scheduled to be present for plaintiffs.

4. At the November 24, 2014 meeting, one of the counsel for plaintiffs, either Mr. Bass or Mr. Cohan, interrupted other counsel and stopped them from responding to my inquiry regarding plaintiffs support for their position on the dispute, stating that NYCHA would find out in plaintiffs' motion. Also at that meeting, plaintiffs' counsel indicated that one basis of compromise might be an exclusion of cosmetic work orders such as plastering and painting from the service level requirements, but emphasized that the suggestion was not an offer.

5. After further consideration, by letter dated February 19, 2015, NYCHA proposed a compromise resolution consistent with the November discussion: as to complex repairs, a service level of processing 95% of the mold and excessive moisture-related work orders in an average of no more than seven (7) days would apply to the parent work order, and a service level of processing 95% of all of the child work orders related to that parent work order (exclusive of cosmetic repairs) in an average of no more than fifteen (15) days will apply. In other words, a service level of processing 95% of work orders related to complex repairs in an average of up to 22 days, exclusive of cosmetic work orders such as painting and plastering. Attached as Exhibit A is a true copy of the letter dated February 19, 2015.

6. Plaintiffs failed to respond at all to NYCHA's offer, let alone engage in good faith discussions with NYCHA about it. Instead, on March 5, 2015, Steven M. Edwards, Esq. of Hogan Lovells US LLP filed a notice of appearance with the Court; on March 6, 2015, plaintiffs emailed a letter rejecting NYCHA's offer without making any counterproposal for discussion and -- nineteen (19) minutes later – filed their letter request for a pre-motion conference via ecf. Plaintiffs did not provide copies of the non-NYCHA documents or data on which they now rely

2

or identify some of the NYCHA documents on which they rely, such as the email of Steven Rappaport. NYCHA engaged in good faith discussions with plaintiffs' representatives -- counsel from the National Center for Economic Justice ("NCEJ") and the Natural Resources Defense Council ("NRDC") -- to resolve the dispute. However, plaintiff's motion reflects that by November 13, 2014 plaintiffs had new lead counsel who was conducting apartment visits and apparently preparing plaintiffs' motion.

7. Attached as Exhibit B is a true copy of NYCHA's letter to the Court, dated March 13, 2015, in response to plaintiffs' request for a promotion conference.

8. At the November 2014 meeting, plaintiffs requested that further productions of the work order reports be made in an Excel format rather than in pdf format. NYCHA agreed and, commencing with the second quarter reports, has made subsequent productions in an Excel format.

9. Contrary to plaintiff's allegations, NYCHA has not refused to define terms used in its reports. At the November 2014 meeting NYCHA requested that plaintiffs identify the terms they wished NYCHA to define and reiterated this request in its March 13, 2015 letter. Plaintiffs never provided those terms. NYCHA remains willing to define those terms if plaintiffs identify them.

Dated: New York, New York
June 12, 2015

_____
Donna Murphy

**EXHIBIT A**



**NEW YORK CITY HOUSING AUTHORITY**
**LAW DEPARTMENT**
250 BROADWAY• NEW YORK, NY 10007

http://nyc.gov/nycha

**SHOLA OLATOYE**
CHAIR
**DAVID FARBER**
General Counsel

WRITER'S DIRECT LINE
(212) 776-5244

February 19, 2014

**VIA EMAIL & REGULAR MAIL**
Greg Bass, Esq.
National Center for Law and Economic Justice
275 Seventh Avenue, Suite 1506
New York, NY 10001-6860

    Re:    Baez, et al. v. NYCHA
           Civ. No. 13-8916 (WHP)

Dear Mr. Bass:

    This is in response to your letter dated January 14, 2015 regarding monitoring during the stipulation period in *Baez* and the issues discussed at our prior meeting.

    As you know, it is NYCHA's position that the average service levels specified in the stipulation – that NYCHA process 95% of the mold and excessive moisture-related work orders in an average of no more than seven (7) days for simple repairs that can be done by a maintenance worker in a single visit or fifteen (15) days for relatively complex repairs that need skilled trades or other specialized staff to address and may require multiple visits, excluding conditions related to capital improvements or where the tenant does not provide access – apply to each work order. NYCHA explained during negotiations that NYCHA work orders are generated for each trade or craft and the plain language of the stipulation supports NYCHA's position. We understand plaintiffs' position is that the 15-day timeframe is applicable to all work related to a particular apartment regardless of the number of work orders.

    Notwithstanding our contrary interpretations of the stipulation, our common goal is to improve mold and excessive moisture remediation for NYCHA residents and we do not believe the residents' interests are best served by further adversarial proceedings. Accordingly, NYCHA proposes that, on a prospective basis beginning with the third quarter reporting, the average service levels be measured as follows:

    (1) as to simple repairs, the service level of processing 95% of the mold and excessive moisture-related work orders in an average of no more than seven (7) days remains unchanged;

    (2) as to complex repairs, a service level of processing 95% of the mold and excessive moisture-related work orders in an average of no more than seven (7) days will apply to the parent work order, and a service level of processing 95% of all of the child work orders related to that parent work order in an average of no more than fifteen (15) days will apply.

Conditions related to capital improvements or where the tenant does not provide access will continue to be excluded from the average service levels. In addition, work orders for cosmetic repairs, including plastering and painting, will be excluded from the average service levels. Please advise if plaintiffs are agreeable to this proposal in resolution of our dispute without court intervention.

In your January 14th letter, you also object to the inclusion of work orders subsequently determined to be unfounded in the average service levels. A work order which is generated based on a report later determined to be unfounded still requires that NYCHA respond and process the work order and, therefore, is properly included in the average. NYCHA will note in its quarterly report the number of unfounded work orders.

You reference several times the purported untimeliness of NYCHA's production of the reports required under the stipulation. You appear to contend that paragraph 10(a) requires production of the reports immediately after the end of the respective reporting period. That is a misreading of paragraph 10. With the exception of the 60-day period specified in paragraph 10(b)(1)(a) regarding the semi-annual sampling, the stipulation does not specify a deadline for production of reports. Paragraph 10 provides, in relevant part: "On a quarterly basis (commencing with data for the first full calendar month after the effective date of this Stipulation and Order as defined in Paragraph 16 of this Stipulation and Order) NYCHA shall provide plaintiffs' counsel with a report . . ." The reference to "first full calendar month" merely determined that the first reporting period was May – July 2014 following Judge Pauley's so-ordering of the stipulation in April 2014. It does not impose a subsequent deadline, whether of one day or one month, for production of all reports. We anticipate that going forward the reports will be produced approximately 60 days after the conclusion of the reporting period. Further, as you requested at the meeting, NYCHA will produce the work order data in an Excel spreadsheet, rather than a pdf document. The reports for the second quarter will be produced within the next week.

I look forward to hearing plaintiffs' response.

Very truly yours,

*Donna M. Murphy*
Donna M. Murphy

**EXHIBIT B**



**NEW YORK CITY HOUSING AUTHORITY**
**LAW DEPARTMENT**
250 BROADWAY• NEW YORK, NY 10007

http:/nyc.gov/nycha

**SHOLA OLATOYE**
CHAIR

**DAVID FARBER**
General Counsel

WRITER'S DIRECT LINE
(212) 776-5244

March 13, 2015

**VIA ECF & REGULAR MAIL**
Honorable William H. Pauley III
United States District Judge
Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

    Re:    Baez v. NYCHA
              Civ. No. 13-8916 (WHP)

Dear Judge Pauley:

    Defendant New York City Housing Authority ("NYCHA") submits this letter in response to plaintiffs' March 6, 2015 letter request for a conference regarding their proposed motion to enforce the Stipulation and Order of Settlement in the above matter.

### Service Level Requirements Under the Stipulation and Order

    NYCHA is not in systemic noncompliance with the service level requirements of the Stipulation and Order. Plaintiffs' contention to the contrary is based upon misinterpretation of the service level requirements.

    The Stipulation and Order provides that NYCHA will process 95% of the mold and excessive moisture-related work orders in an average of no more than seven (7) days for simple repairs that can be done by a maintenance worker in a single visit or fifteen (15) days for relatively complex repairs that need skilled trades or other specialized staff to address and may require multiple visits, excluding conditions related to capital improvements or where the tenant does not provide access.

    Section I.1 of the Stipulation and Order defines the 7- and 15-day completions as tied to work orders. The following definitions apply:

> c. Work Order - the process by which NYCHA schedules a repair or other work to be performed to address a condition in an apartment requiring remediation.
> d. Work Order to be Completed within Seven (7) days - Work orders for which the time between the Creation Date and the Actual Finish Date should, on average, be less " than or equal to seven days. They involve simple repairs that can be done by a maintenance worker in a single visit to the apartment.

Page 2

> e. Work Order to be Completed within Fifteen (15) days - Work orders for which the time between the Creation Date and the Actual Finish Date should, on average, be less than or equal to fifteen days. These involve relatively complex repairs that need skilled trades or other specialized staff to address and may require multiple visits to the apartment.

As defined in Section I.1(d), a work order schedules "a repair" for "a condition." Multiple repairs for multiple conditions require multiple work orders. Thus, as NYCHA made clear during the parties' negotiation of the Stipulation and Order, individual NYCHA work orders are generated for each trade or craft. The repair to be completed within 15 days is the repair that a particular trade can make. The trades people performing those repairs may make multiple visits, but they are all from the same trade. If another repair by a different trade is needed after one trade finishes its work, another work order is generated to make that repair, which may also require multiple visits. During negotiations, plaintiffs' counsel had the opportunity to view work orders as well as a demonstration of the Maximo system which tracks them.

Section III.5(a) expressly measures NYCHA's compliance in terms of each work order, consistent with NYCHA's processes and the parties' negotiations:

> For purposes of this Stipulation and Order, NYCHA shall be deemed to be in compliance with paragraph 4 of this Stipulation and Order with respect to work orders that are to be completed within seven days during a quarterly period defined in paragraph 10 so long as NYCHA processes to completion at least ninety-five (95%) of such work orders in an average of no more than seven (7) days during the period. For purposes of this Stipulation and Order, NYCHA shall be deemed to be in compliance with paragraph 4 of this Stipulation and Order with respect to work orders that are to be completed within fifteen days during a quarterly period defined in paragraph 10 so long as NYCHA processes to completion at least ninety-five (95%) of such work orders in an average of no more than fifteen (15) days during the period.

Contrary to Plaintiffs' assertion, paragraph 6 of the Stipulation and Order does not make clear that only a single work order will be created in response to a mold complaint. Rather, paragraph 6 summarizes how NYCHA will respond to a complaint including initiating a work order, providing written material to an adult authorized occupant and, under certain circumstances, contacting the resident post-remediation and having a supervisor inspect the apartment.

Plaintiffs' interpretation of the service levels became apparent to NYCHA in the latter half of 2014 and the parties met in late November to discuss this issue. In light of the parties' common goal of improving mold and excessive moisture remediation for NYCHA residents, by letter dated February 19, 2015, NYCHA proposed a compromise resolution consistent with the November discussion. Plaintiffs made no counterproposal for discussion. Instead, on March 6, 2015, plaintiffs emailed NYCHA a letter rejecting the proposal and - 19 minutes later – filed their letter request for a pre-motion conference via ecf.

### **NYCHA Has Met or Exceeded Stipulated Service Level Requirements.**

NYCHA remains committed to the service level requirements it agreed to in the Stipulation and Order and it has met those service levels for the first two quarters of the

stipulation period. For the first quarter of May-July 2014, even including 100% of the work orders, the 7-day work orders were completed in an average of 6.8 days and 15-day work orders were completed in an average of 5.5 days. For the second quarter of August-October 2014, even including 100% of the work orders, the 7-day work orders were completed in an average of 6.3 days and 15-day work orders were completed in an average of 5.8 days.

### Reporting Requirements Under the Stipulation and Order

Plaintiffs' contention that NYCHA's reports are untimely under the Stipulation and Order and that NYCHA "has refused to give assurances of more timely compliance in the future" is similarly misplaced. With the exception of the 60-day period specified in paragraph 10(b)(1)(a) regarding semi-annual sampling, the Stipulation and Order does not specify a deadline for production of reports. In order to meet the reporting requirements, NYCHA did need to create new reports which in some cases took longer than anticipated. However, NYCHA produced reports for the first two quarters and advised plaintiffs in its February 19, 2015 letter that it anticipated that going forward the reports will be produced approximately 60 days after the conclusion of the reporting period. The 60-day period is entirely reasonable given that the reports require that NYCHA make follow-up calls to residents with completed Level 2/3 remediation work, re-inspect apartments and coordinate information from different departments.

Plaintiffs' objections to the form of NYCHA's reports stem primarily from the parties' divergent interpretations of the required service levels. Resolution of the parties' dispute concerning the service level should enable the parties to resolve related reporting issues. With respect to the semi-annual sampling of work orders, NYCHA produced detailed reports on all work orders during this period in response to the quarterly reporting required by paragraph 10(a); therefore, production of a report for a sampling of work orders for one month pursuant to paragraph 10(b) would be duplicative. In its first quarterly production, NYCHA produced the work order reports in a pdf format. NYCHA produced the reports for the second quarter in Excel format, as plaintiffs requested at the November meeting.

Finally, plaintiffs' contention that NYCHA has refused to define for them certain codes used in the reports is simply untrue. If plaintiffs send NYCHA a list of such codes, NYCHA will define them for plaintiffs.

As set forth above, NYCHA is not in systemic noncompliance with either the service level or reporting requirements of the Stipulation and Order and plaintiffs' proposed motion should be denied. The undersigned is available for a pre-motion conference any date other than March 20th and 23rd and April 17th through May 11th.

Respectfully,

*Donna Murphy*
Donna M. Murphy

cc:   Greg Bass, Esq. (via ecf)
      Nancy S. Marks, Esq. (via ecf)
      Steven M. Edwards, Esq. (via ecf)