UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARIBEL BAEZ; FELIPA CRUZ; R.D., ON BEHALF
OF HER MINOR CHILD, A.S.; on their own behalf
and on behalf of all others similarly situated;
UPPER MANHATTAN TOGETHER, INC.; and                    Civ. No. 13-8916 (WHP)
SOUTH BRONX CHURCHES SPONSORING
COMMITTEE, INC.,

                                                                     DECLARATION OF LUIS PONCE
                            Plaintiffs,                              IN OPPOSITION TO PLAINTIFFS'
                                                                  MOTION TO HOLD NYCHA IN
                           v.                                     CONTEMPT FOR VIOLATION OF
                                                                    THE STIPULATION AND ORDER

NEW YORK CITY HOUSING AUTHORITY,

                                Defendant.
------------------------------------------------------------------x

       LUIS PONCE, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

       1.     I have been employed by defendant New York City Housing Authority ("NYCHA") since 1982. I hold the position of Senior Vice President of Operations Support Services. Prior to January 2015, I held the position of Vice President of Operations Support Services. I make this declaration in opposition to plaintiffs' motion for an order holding NYCHA in contempt for violation of the Stipulation and Order in the above-captioned matter based on personal knowledge and the books and records of NYCHA.

**Training**

       2.     NYCHA has properly trained staff on mold remediation, NYCHA's Standard Procedure, *Mold/Mildew and Moisture Control in NYCHA Buildings* (the "Mold SP") and NYCHA's Standard Procedure, *Reasonable Accommodations in Housing for Applicants, Section 8 Voucher Holders, and NYCHA Residents* (the "Reasonable Accommodations SP").

1

3. NYCHA and the Rutgers School of Public Health jointly developed a *Mold Awareness and Inspection* training program covering the topics of mold basics, health concerns of mold, moisture issues related to mold, mold identification, root-cause analysis, managing the problem, and NYCHA's Mold SP and Reasonable Accommodation SP. In developing this training and the Mold SP, NYCHA consulted with the New York City Department of Health and Mental Health ("DOHMH"). Attached as Exhibit A is the *Mold Awareness and Inspection* powerpoint presentation utilized by faculty at the training. Both the *Mold Awareness and Inspection* powerpoint presentation and the "Key Concepts for Mold Roll-Out" were distributed at the training sessions. Attached as Exhibit B is the "Key Concepts for Mold Roll-Out" distributed at the training.

4. The training on the assessment and addressing of mold and excessive moisture was jointly delivered by faculty from Rutgers School of Public Health and Hunter College and NYCHA staff during ten half-day sessions from April 25, 2014 through June 6, 2014. Four hundred and one (401) employees attended the training sessions, including borough staff, internal trainers, and three employees from each consolidated development.

5. On May 19, 2014, the Mold SP, the "Key Concepts for Mold Roll-Out", and the Reasonable Accommodations SP were distributed to Operations Department personnel, including all development Property Managers and Property Maintenance Supervisors. Attached as Exhibit C, is the May 19, 2014 email from NYCHA's then-Executive Vice-President for Operations.

6. In March 2013, NYCHA implemented training through its Professional Development and Training Department on "Mildew and Mold Surface Cleaning – Level 1 Remediation." Attached as Exhibit D is a copy of the training manual for the "Mildew and Mold

Surface Cleaning – Level 1 Remediation" class. To date, 2,673 employees have attended this half-day training class.

**Scope of NYCHA's Maintenance and Repair Program**

7. By 2013, as a result of NYCHA's systemic underfunding, NYCHA had a backlog of over 420,000 open work orders. At the beginning of 2013, to reduce the backlog and improve residents' quality of life, NYCHA commenced a "Maintenance & Repair Action Plan" which succeeded in reducing the number of open work orders to approximately 124,000 in March 2015, reducing average response times for basic maintenance from 134 days to 13 days, and reducing the average response time for skilled trades' repairs from 262 days to 55 days.

8. Contrary to plaintiffs' contention, the change in parent work order status designation was entirely unrelated to this litigation. Previously, parent work orders were deemed completed but were not closed while a child work order was open. However, this status resulted in an open work order count that did not properly reflect outstanding work needed, as both the completed parent work order and open child work order were separately counted. Therefore, beginning in or about late 2013, parent work orders were deemed closed rather than completed to more accurately reflect outstanding work. This change had no impact on the service level requirements of the Stipulation as the service level requirements were never measured by parent work order.

**NYCHA's Mold/Excessive Moisture Work Orders During the Stipulation Period**

9. By overnight mail on September 30, 2014, NYCHA produced to plaintiffs the reports required for the period concluding July 2014. Attached as Exhibit E is a true copy of the letter dated September 30, 2014, the summary chart on average days to complete the 7- and 15-

day work orders, and the summary chart on follow-up calls to all Level 2 and 3 work orders. This production was on the 61st day after the close of the reporting period.

10. By overnight mail on February 20, 2015, NYCHA produced to plaintiffs the reports required for the period concluding October 2014. Attached as Exhibit F is a true copy of the letter dated February 20, 2014, the summary chart on average days to complete the 7- and 15-day work orders, and the summary chart on follow-up calls to all Level 2 and 3 work orders. This production was on the 112th day after the close of the reporting period. In addition to the quarterly reports, this production also included semi-annual reports on quality assurance inspections of 100 closed Level 2 and 3 work orders and reasonable accommodation requests related to mold or excessive moisture on behalf of residents with asthma. The quality assurance reports required that, following the close of the period, NYCHA identify a sufficient number of closed Level 2 and 3 work orders to permit 100 inspections, generate inspection work orders for those units, complete those inspections, and generate a report on the results. The reporting on reasonable accommodation necessitated the coordination of information and documents from NYCHA's Equal Opportunity and Operations departments.

11. By overnight mail on March 31, 2015, NYCHA produced to plaintiffs the reports required for the period concluding January 2015. Attached as Exhibit G is a true copy of the letter dated March 31, 2015, the summary chart on average days to complete the 7- and 15-day work orders, and the summary chart on follow-up calls to all Level 2 and 3 work orders. This production was on the 59th day after the close of the reporting period. Generating the report on follow-up calls to all Level 2 and 3 work orders requires that NYCHA's Customer Contact Center ("CCC") be provided with contact information regarding the closed Level 2 and 3 work

day work orders, and the summary chart on follow-up calls to all Level 2 and 3 work orders. This production was on the 61st day after the close of the reporting period.

10. By overnight mail on February 20, 2015, NYCHA produced to plaintiffs the reports required for the period concluding October 2014. Attached as Exhibit F is a true copy of the letter dated February 20, 2014, the summary chart on average days to complete the 7- and 15-day work orders, and the summary chart on follow-up calls to all Level 2 and 3 work orders. This production was on the 112th day after the close of the reporting period. In addition to the quarterly reports, this production also included semi-annual reports on quality assurance inspections of 100 closed Level 2 and 3 work orders and reasonable accommodation requests related to mold or excessive moisture on behalf of residents with asthma. The quality assurance reports required that, following the close of the period, NYCHA identify a sufficient number of closed Level 2 and 3 work orders to permit 100 inspections, generate inspection work orders for those units, complete those inspections, and generate a report on the results. The reporting on reasonable accommodation necessitated the coordination of information and documents from NYCHA's Equal Opportunity and Operations departments.

11. By overnight mail on March 31, 2015, NYCHA produced to plaintiffs the reports required for the period concluding January 2015. Attached as Exhibit G is a true copy of the letter dated March 31, 2015, the summary chart on average days to complete the 7- and 15-day work orders, and the summary chart on follow-up calls to all Level 2 and 3 work orders. This production was on the 59th day after the close of the reporting period. Generating the report on follow-up calls to all Level 2 and 3 work orders requires that NYCHA's Customer Contact Center ("CCC") be provided with contact information regarding the closed Level 2 and 3 work

orders and that CCC staff make multiple attempts to contact each resident (with the calls numbering in the thousands each quarter) and document the response.

12. As reflected in the reports, NYCHA responded to 34,493 mold or excessive moisture complaints during the three quarters covered by the reports.

13. The Stipulation does not set forth any recurrence rate as a measure of compliance. Moreover, the closed Level 2 and 3 work orders for which NYCHA is contacting residents include Level 2 and 3 work orders for which capital improvements are required and, therefore, some recurrence will occur until the necessary capital improvement work can be completed. Despite the inclusion of those work orders, there has been improvement in the tenant-reported recurrence rate for Level 2 and 3 work orders even during these early stages of the Stipulation Period. For the second quarter, NYCHA successfully contacted 1,517 residents and 41% reported that the mold or excessive moisture condition had recurred. For the third quarter, NYCHA successfully contacted 1,451 residents and 27% reported a recurrence – a decrease of 14%.

Dated: New York, New York  
June 12, 2015

_____  
Luis Ponce