```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARIBEL BAEZ; FELIPA CRUZ; RD., ON BEHALF OF    :
HER MINOR CHILD, A.S.; on their own behalf and   :
on behalf of all others similarly situated;      :
UPPER MANHATTAN TOGETHER, INC.; and              :
SOUTH BRONX CHURCHES SPONSORING                  :
COMMITTEE, INC.,                                 :
                                                 :
                        Plaintiffs,              :
                                                 :    13 Civ. 8916 (WHP)
        vs.                                      :
                                                 :
NEW YORK CITY HOUSING AUTHORITY,                 :
                                                 :
                        Defendant.               :
                                                 :
------------------------------------------------------------------x
```

## SUPPLEMENTAL DECLARATION OF MICHAEL STANLEY IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE STIPULATION AND ORDER

I, MICHAEL STANLEY, declare under penalty of perjury that the following is true and correct:

1.  I am the lead organizer for Upper Manhattan Together, Inc. and the South Bronx Churches Sponsoring Committee, Inc., non-profit organizations that have, among other things, helped tenants of New York City Housing Authority ("NYCHA") advocate for their rights. I submit this Supplemental Declaration in further support of the Plaintiffs' Motion to Enforce the Stipulation and Order entered on April 17, 2014 ("Order"). In particular, I respond to the Supplemental Declaration of Luis Ponce, dated September 23, 2015 (Doc. 83).

1

**Reoccurrence of Excessive Moisture in Apartment of Plaintiff Maribel Baez**

2.     At the hearing held in this case on July 10, 2015, I reported on behalf of Plaintiff Maribel Baez, in response to the Court's question, that there was excessive moisture in her apartment. Ms. Baez, who was in attendance with me at the hearing, had told me prior to the hearing that small moisture bubbles had reappeared on her bathroom wall. Mr. Ponce apparently takes issue with that, stating that NYCHA inspected her apartment on July 21, 2015, and found no reoccurrence. On August 13, 2015, I told Mr. Ponce and Brian Clarke by e-mail that Ms. Baez had stated that there were small moisture bubbles in her apartment, not that there was visible mold. Mr. Ponce is apparently making a distinction between excessive moisture and mold and bases his remarks on the fact that there is no reoccurrence of mold. However, the Order requires NYCHA to remediate excessive moisture as well as mold. Bubbles on the walls of an apartment generally indicate that there is excessive moisture within the wall, often caused by a leak. Such excessive moisture generally leads to mold. Ms. Baez has not formally complained to NYCHA about the moisture problem in her bathroom because her neighbors have far worse problems to which NYCHA should attend first, but the condition indicated that previous efforts to repair her apartment may have been ineffectual.

3.     Exhibit A to Mr. Ponce's supplemental declaration is an e-mail I wrote to NYCHA expressing concern about a threatening letter that NYCHA had sent to Ms. Baez. Because Mr. Ponce did not attach that letter to his supplemental declaration, I attach it as Exhibit 1. As of October 5, 2015, NYCHA still has not taken any action to determine what caused the moisture bubbles in Ms. Baez's apartment or to fix the bubbling, but fortunately the problem has not worsened since July.

**Mold and Excessive Moisture Problems in Apartments of Other NYCHA Tenants Identified in Exhibits 1 and 2 to My Prior Declaration**

4.  In his supplemental declaration, Mr. Ponce takes issue with the spreadsheets that were attached as Exhibits 1 and 2 to my declaration, dated April 22, 2015 (Doc. 40). Before responding to Mr. Ponce's criticisms, a number of points should be clarified. First, and contrary to Mr. Ponce's assertion, NYCHA received un-redacted versions of these spreadsheets in the regular course of business prior to August 11, 2015. As demonstrated by the e-mails attached as Exhibits 5-9 to the Second Supplemental Declaration of Steven M. Edwards, dated July 24, 2015 (Docs. 69-11 through 69-15), my colleagues and I sent un-redacted copies of these spreadsheets to various NYCHA officials, including Mr. Ponce and Mr. Clarke, in the regular course of business on July 9, 2014, December 11, 2014, February 17, 2014, February 18, 2014, and March 10, 2015. Second, Exhibits 1 and 2 to my prior declaration are not separate and distinct reports; they are cumulative. In my prior declaration, I relied on Exhibits 1 and 2 to identify certain situations about which I informed NYCHA between July 9, 2014 and March 10, 2015, and then I discussed in my declaration the efforts—or lack thereof—on the part of NYCHA to deal with those situations. Third, as I made clear in paragraphs 7 and 16 of my declaration, the spreadsheets addressed a variety of problems in tenants' apartments, not just mold and excessive moisture problems. In paragraph 28 of my prior declaration, I made clear that only 128 apartments, which were listed among other apartments in Exhibit 2 to my declaration, involved mold or excessive moisture. Since Exhibits 1 and 2 to my declaration are cumulative, for purposes of responding to Mr. Ponce, it makes sense to focus on Exhibit 2, which—as I stated in paragraph 28 of my prior declaration—identified 128 instances of mold or excessive moisture.

5.      In his supplemental declaration, Mr. Ponce states that the un-redacted spreadsheets contained entries regarding 205 accounts, 201 of which related to apartments and 72 of which did not concern mold or excessive moisture.  That means that Mr. Ponce identified 129 instances of mold or excessive moisture, which is actually one more than I reported in my declaration.  Our totals are consistent.

6.      Mr. Ponce's subsequent analyses are all based on the total 201 apartments in the un-redacted spreadsheets, as opposed to the selected 128 apartments with mold or excessive moisture identified in Exhibit 2 to my prior declaration.  Therefore, his results are always going to be inflated by 73 apartments that I never claimed had mold or excessive moisture.  Mr. Ponce then states that NYCHA successfully contacted 149 of the 201 residents and bases various findings on those 149 apartments, but we do not know (a) how many of those 149 apartments include apartments that I never claimed had mold or excessive moisture, or (b) how many of the 128 apartments that had mold or excessive moisture, which were included in Exhibit 2 to my declaration, were among the 52 apartments not contacted.  For this reason, the comparisons that Mr. Ponce attempts to make between my data and his data are comparisons of apples to oranges.

7.      We do know some things for certain, though.  In his supplemental declaration, Mr. Ponce reports that 54 of the 149 residents recently contacted by NYCHA had mold.  In paragraph 28 of my prior declaration, I reported that NYCHA had fully resolved the problems in only 22 of the 128 apartments that had mold and excessive moisture, meaning that 106 had not yet been fully resolved (although it should be noted that for those that were partially resolved, in some cases the mold or excessive moisture was remediated but other serious problems remained).  If all of the 52 apartments that NYCHA was not able to contact have mold or

excessive moisture, that would mean that a total of 106 apartments still have mold or excessive moisture (52 plus 54), which is identical to my previously reported total of 106 apartments in which the problems were not fully resolved.

8.      Mr. Ponce states that NYCHA also reviewed the mold-related work orders for each of the 201 apartments on the spreadsheets, including the 72 apartments that I never claimed had any mold or excessive moisture.  According to Mr. Ponce's calculation, the work orders show that 127 apartments had mold during the relevant time period (68 accounts with mold in a location once after April 2014 plus 59 accounts with mold more than once after April 2014), which is very close to my previously reported total of 128.  Furthermore, Mr. Ponce reports that NYCHA's work order analysis revealed that 59 of the 127 apartments with mold had a reoccurrence of mold, which is a reoccurrence rate of almost 50%.

9.      Mr. Ponce purports to list the 78 apartments that did not have mold during the relevant time period in Exhibit B to his supplemental declaration, but there are a number of problems with that list.  First, it includes the four public spaces that should not be included in the list of 201 apartments.  Second, NYCHA has included in this list tenants who did in fact have mold during the relevant time period.  For some of these tenants, NYCHA's own records indicate that the tenant had mold.  For example, NYCHA claims that there were no mold-related work orders for the tenant located at "502.11.011.F09.09D" who had complained of mold and a leak, but NYCHA's comments state that it completed work in response to "two-(2) work order[s] [that] were created for mildew after the latest response on 3/9/15."  Third, some of NYCHA's comments in Exhibit B indicate that the apartments had excessive moisture, even if they did not have mold.  For example, NYCHA claims that there were no mold-related work orders existing

5

for the tenant located at "502.13.013.F01.01E" who had reported mold, but NYCHA's comments state that NYCHA performed a plumbing work order for a "leak from above" in this tenant's apartment.  In all, 34 of the tenants in Exhibit B complained of mold and many others complained of excessive moisture.

10.     The examples above highlight another problem my colleagues and I have had with NYCHA.  We are concerned that NYCHA has been categorizing problems as unrelated to mold and moisture when in fact they are.  Exhibit B to Mr. Ponce's supplemental declaration suggests that NYCHA has been doing precisely that.  In many instances, the tenant complains of mold or moisture, and NYCHA reports to have fixed what it characterizes as a water leak without recognizing that this is an excessive moisture problem.

<strong><u>NYCHA's Recent Apartment Inspection Reports</u></strong>

11.     As I understand it, NYCHA recently visited some of the apartments identified in the spreadsheets that were attached as Exhibits 1 and 2 to my declaration.  NYCHA then created Inspection Reports documenting these visits.  Mr. Ponce does not discuss those reports in his declaration, but I have reviewed a number of the Inspection Reports and have recently visited some of the tenants myself.  The Inspection Reports are consistent with what was reported in the spreadsheets attached to my prior declaration in that they show persistent and reoccurring mold and excessive moisture problems for which NYCHA does not effectively remediate the underlying source.

12.     For example, I.R., in whose apartment a number of the tenants have asthma, first reported to my colleagues and me in November 2014 that there was mold in her apartment.  My colleagues and I in turn reported her complaint to NYCHA in December 2014.  The mold and

6

excessive moisture problems in I.R.'s apartment are further described in the February 2014 and March 2014 spreadsheets attached as Exhibit 2 to my prior declaration.  *See* Doc. 40-3 at 36; Doc. 40-4 at 33.  NYCHA repair workers visited I.R.'s apartment several times during the spring of 2015 to clean the mold and paint the bathroom, but each time the mold reoccurred in a matter of weeks.  In September 2015, NYCHA visited I.R.'s apartment and documented its visits and work orders pertaining to I.R.'s apartment in Inspection Reports dated September 1, 2015, September 8, 2015, and September 17, 2015.  These three Inspection Reports are attached to this supplemental declaration as Exhibit 2.  The September 1 report documents that an appointment was scheduled due to I.R.'s complaint of a "mildew condition."  *See* Ex. 2 at 1.  In the September 8 report, NYCHA checked a box indicating that "[s]taff needs to clean mold" and noted that the mold covered 10 square feet.  *See* Ex. 2 at 6.  I spoke with J.P., I.R.'s adult daughter who lives with her, by telephone on September 8, and she confirmed that a NYCHA worker inspected her bathroom and observed mold growing there.  I spoke with I.R.'s daughter again on September 16, and she reported that a NYCHA worker had scraped the mold off of the walls, but did not remediate the source of the mold.  This NYCHA worker admitted to her that, to fix the source of the mold, the walls had to be knocked down and the pipes replaced, but that NYCHA would not make these repairs because if it did, then it would also have to do the same for every other tenant awaiting repairs for mold and moisture.  In the September 17 report, NYCHA documented that it cleaned the mold and "caulked [the] tub."  *See* Ex. 2 at 9-10.  Attached as Exhibit 3 to this supplemental declaration are photographs of the mold and moisture damage on I.R.'s bathroom ceiling as of September 4, 2015, before NYCHA scraped the mold off.  *See* Ex. 3 at 1-6.  These photographs were taken by my colleague, Maria Peguero, a leader of the South Bronx Churches

7

Sponsoring Committee, Inc.  Also included in Exhibit 3 are photographs I took on October 1, 2015, after NYCHA had scraped the mold.  *See* Ex. 3 at 7-11.  These photographs show that I.R.'s bathroom wall is already swelling and bubbling again from excessive moisture and the mold has started to return on the bathroom ceiling.  *See* Ex. 3 at 7-10.  There is also mold growing on I.R.'s kitchen ceiling, which NYCHA did not address at all.  *See* Ex. 3 at 11.  In other words, it has been almost 10 months since I.R. complained and the problem is still not solved.

          13.     Another tenant, B.S., who has been diagnosed with asthma, first reported to my colleagues that there was mold in her apartment in April 2012.  We in turn reported her complaint to NYCHA in May 2012.  The mold problem in her apartment is further described in the December 2014 spreadsheet that was attached as Exhibit 2 to my prior declaration.  *See* Doc. 40-2 at 43.  B.S. has dealt with mold, excessive moisture, and crumbling paint in her apartment for many years.  NYCHA visited B.S.'s apartment in late August and early September 2015.  NYCHA's Inspection Reports regarding B.S.'s apartment are attached to this supplemental declaration as Exhibit 4.  In the Inspection Report dated August 31, 2015, NYCHA indicated that the "res[ident] has mold in her whole ap[artmen]t," the mold covered 20 square feet, and "staff needs to clean mold."  *See* Ex. 4 at 1-2.  On September 3, I visited B.S.'s apartment and saw that there was mold and peeling and bubbling paint on her bathroom walls.  I also saw water that smelled like sewage pooling on the floor of her closet and mold and bubbling paint on the closet walls.  Attached to this supplemental declaration as Exhibit 5 are photographs that I took on September 3, 2015, of the extensive mold and moisture damage in B.S.'s bathroom and closet.  *See* Ex. 5 at 1-4.  On September 4, NYCHA returned to B.S.'s apartment and documented in an

8

Inspection Report that they had "[c]leaned" the mold. *See* Ex. 4 at 5. When I spoke with B.S. on September 4, she reported that the NYCHA workers had told her in August that they would need to break down her bathroom wall to clean the mold, but all they actually did when they returned on September 4 was plaster and paint over the mold on the wall—they did not do anything to remediate the leak in the wall that was causing the mold. B.S. also told me that the workers put bleach on the mold that was in the closet, but did nothing else to address it. B.S. took photographs of her bathroom ceiling and wall while the NYCHA workers plastered and painted over the mold. *See* Ex. 5 at 5-6. On September 16, B.S. told me that NYCHA returned and put a plate in the shower that stopped one of the leaks, but did not address the other leaks in her apartment. On October 5, B.S. sent me photographs showing that the mold in the bathroom over which NYCHA had painted and plastered on September 4 had become visible again. *See* Ex. 5 at 7-9.

      14.    L.T. first reported an excessive moisture complaint to my colleagues and me in March 2015. We in turn reported her complaint to NYCHA that same month. The excessive moisture issues in L.T.'s apartment are further described in the March 2015 spreadsheet that was attached as Exhibit 2 to my prior declaration. *See* Doc. 40-4 at 40. Then, in May 2015, L.T. reported to us that a lot of black mold had developed in her apartment and, despite her granddaughter's efforts to clean it, it returned. We in turn reported this mold problem to NYCHA in May 2015. On June 17, 2015, L.T. sent me a photograph she took earlier that month of the mold and peeling and cracking paint in her apartment. This and other photographs of L.T.'s apartment are attached to this supplemental declaration as Exhibit 6. I personally visited L.T.'s apartment on June 24, 2015, and took additional photographs of the mold and moisture

damage. *See* Ex. 6 at 2-3. In September 2015, NYCHA workers visited L.T.'s apartment and documented their visits in two Inspection Reports, one dated September 6, 2015, and the other dated September 10, 2015. These Inspection Reports are attached to this supplemental declaration as Exhibit 7. In both of the Inspection Reports, NYCHA concluded that L.T.'s mold complaint was "unfounded," *see* Ex. 7 at 1 and 6, and attached the same photograph to each report purportedly substantiating that conclusion, *see* Ex. 7 at 5 and 10. However, despite NYCHA's claim that L.T.'s mold problem was "unfounded," NYCHA's photograph clearly shows visible mold and moisture damage on the walls of L.T.'s bathroom. *See* Ex. 7 at 5 and 10. NYCHA was plainly wrong in deeming L.T.'s mold complaint to be "unfounded," as evidenced not only by my observations and photographs of L.T.'s apartment, but by NYCHA's own photograph as well. Furthermore, on September 10, the same day that NYCHA went to L.T.'s apartment and claimed that the mold was "unfounded," L.T. sent me additional photographs of the mold and moisture damage in her apartment as of that day. *See* Ex. 6 at 4-11.

15. On October 1, 2015, I visited the apartment of Wanda R. Wanda R. submitted a declaration in April 2015 in support of the Plaintiffs' Motion to Enforce the Stipulation and Order, in which she described the ongoing mold and excessive moisture in her apartment and NYCHA's failure to properly remediate these issues. While I was at her apartment on October 1, Wanda R. told me that a NYCHA employee had come to her apartment in or around June 2015 and had looked at the mold covering the bathroom walls and ceiling and the malfunctioning vent. He had then opened the vent, removed the grate covering the vent, cleaned the black substance that was inside of the vent, and cleared the holes in the grate. After this, the vent began to function properly again. Several weeks then passed during which NYCHA did not return to

clean the mold and paint the bathroom, so Wanda R. herself scraped and scrubbed the mold off and repainted the bathroom walls in or around July 2015.  On August 31, 2015, a NYCHA worker visited Wanda R.'s apartment.  NYCHA's Inspection Report documenting this visit is attached to this supplemental declaration as Exhibit 8.  In this Inspection Report, which identifies the apartment in the name of Wanda R.'s mother, W.M., the NYCHA worker indicated that the mold condition "[n]eeds [c]leaning," checked the box labeled "[r]epaired," wrote "caulked tub," and documented the length of the visit as 10 minutes.  *See* Ex. 8 at 1.  However, Wanda R.'s mother informed me on September 21, 2015 that the NYCHA worker who came to the apartment on August 31 had not in fact caulked the bathtub or repaired anything in her apartment.  Aside from the NYCHA employee who cleaned the vent in or around June 2015, NYCHA has taken no further action to remediate the mold and moisture in the apartment, despite NYCHA's documentation to the contrary in its Inspection Report.  On October 1, 2015, I personally visited Wanda R.'s apartment and photographed the mold that appears on her bathroom wall.  This photograph, along with additional photographs that show that the caulking around the bathtub still needs to be replaced, is attached to this supplemental declaration as Exhibit 9.

Dated this 7th day of October, 2015.

By: _____
Michael Stanley