```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :
MARIBEL BAEZ, et al.,             :
                                  :     13cv8916
              Plaintiffs,         :
                                  :     MEMORANDUM & ORDER
     -against-                    :
                                  :
NEW YORK CITY HOUSING AUTHORITY,  :
                                  :
              Defendant.          :
                                  :
----------------------------------X

WILLIAM H. PAULEY III, District Judge:

       Plaintiffs Maribel Baez, Felipa Cruz, R.D. on behalf of her minor child, A.S., Upper Manhattan Together, Inc., and South Bronx Churches Sponsoring Committee, Inc. (collectively, "Plaintiffs") move to enforce the Consent Decree, appoint a Special Master, and impose sanctions on Defendant New York City Housing Authority ("NYCHA"). For the following reasons, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

       In December 2013, New York City public housing tenants filed a class action complaint seeking injunctive relief against NYCHA asserting claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., for failure to abate mold and excessive moisture in their apartments. Instead of contesting the allegations, NYCHA elected to settle and entered into the April 17, 2014 Stipulation and Order of Settlement (the "Consent Decree").

       In February 2014, with the parties' consent, this Court certified a settlement class of "[c]urrent and future residents of NYCHA who have asthma that substantially limits a major life activity and who have mold and/or excessive moisture in their NYCHA housing." In March

2014, this Court conducted a Federal Rule of Civil Procedure 23(e) settlement fairness hearing, and heard from counsel and thirty-one New York City public housing tenants.

On April 17, 2014, this Court approved the Consent Decree, which established a new mold and moisture abatement program for NYCHA. Under the Consent Decree, NYCHA is required to abate mold and excessive moisture by completing "simple" repairs within seven days, and "complex" repairs within fifteen days. The Consent Decree established the acceptable level of compliance as "process[ing] to completion" at least 95% of the work orders for "simple" or "complex" repairs within seven or fifteen days, on average, respectively. (Consent Decree at ¶¶ 4–5.) The Consent Decree also requires NYCHA to follow up with tenants to determine whether their mold or excessive moisture problems were remediated, and produce quarterly reports to Plaintiffs' counsel setting forth the number of tenants contacted and the percentage of complaints left unresolved. (Consent Decree at ¶ 6.)[1]

Since entry of the Consent Decree, Plaintiffs contend that NYCHA has failed to comply with the time requirements in the Consent Decree. They seek an order from this Court reiterating NYCHA's obligation to complete "simple" mold remediation repairs in no more than seven days, and "complex" repairs in no more than fifteen days, on average. Plaintiffs also ask this Court to appoint a Special Master to monitor NYCHA's compliance with the Consent Decree. Finally, Plaintiffs seek an order imposing sanctions for any of NYCHA's future violations.

---

[1] NYCHA is obligated to provide additional reports to Plaintiffs' counsel, including, inter alia, a quarterly detailed report on all work orders (Consent Decree at ¶ 10(a)). Plaintiffs argue that NYCHA has failed to provide these quarterly reports in a timely fashion. At oral argument, this Court ordered NYCHA to provide these reports to Plaintiff within 15 days of the close of each quarter. (See July 10, 2015 Oral Arg. Tr. at 37–38.)

## DISCUSSION

This Court has a duty to supervise and enforce the terms of its orders where "one party threatens to frustrate the purpose of the decree." Berger v. Heckler, 771 F.2d 1556, 1568 (2d Cir. 1985) ("A court has an affirmative duty to protect the integrity of its decree.") (internal quotations and citations omitted). "Ensuring compliance with a prior order is an equitable goal which a court is empowered to pursue even absent a finding of contempt." Berger, 771 F.2d at 1569. The terms of the Consent Decree are straightforward. NYCHA must remediate mold and excessive moisture by completing "simple" repairs within seven days, and "complex" repairs within fifteen days, on average. (Consent Decree at ¶ 5.) The purpose of the Consent Decree is indisputable. NYCHA must apply "remediation techniques designed to eliminate or control mold and/or excessive moisture at their source." (Consent Decree at ¶ 6 (emphasis added).)

NYCHA has been out of compliance with the Consent Decree from the day it was entered by this Court. NYCHA's justifications for its failure to comply are inadequate, and the attitude of NYCHA officials appears to be one of indifference. Indeed, no member of NYCHA's management bothered to attend the hearing on Plaintiffs' motion, the outcome of which may have broad implications for the Agency.

I. NYCHA has Failed to Comply With the Time Requirements in the Consent Decree

NYCHA's claim that it is complying with the seven and fifteen-day time requirements in the Consent Decree (see Consent Decree at ¶ 5) rests on a cramped and superficial interpretation of the plain language of the Consent Decree. After entry of the Consent Decree, NYCHA altered its practices and began opening multiple "parent" and "child" work orders for each "repair" needed to address mold or excessive moisture in a tenant's apartment. Currently, NYCHA does not allow "mold and/or mildew Work Orders to be created for a

resident's entire apartment." (See July 13, 2015 Audit Report on the New York City Housing Authority's Maintenance and Repair Practices (hereinafter "Comptroller's Report"), Second Edwards Decl. Ex. 10 at 22.) Instead, NYCHA creates "separate Work Orders to inspect each room in the apartment—potentially up to 10 rooms." (Comptroller's Report at 22.)

In practice, NYCHA opens a "parent" work order when a complaint is received. That "parent" work order is closed after NYCHA staff identify the nature of the problem. Then, multiple "child" work orders are opened serially for each "repair" requiring a separate skilled trade. Each "child" work order restarts the clock on the original work order. When "parent" and "child" work orders are paired, NYCHA's average service level for "simple" repairs increases from 6.8 days to 8.7 days in the first quarter, and from 6.3 days to 9.5 days in the third quarter since the entry of the Consent Decree.[2] (Edwards Decl. ¶¶ 8–11.) Thus, the effect of NYCHA's policy is to extend the time it takes to address a condition of mold or excessive moisture in a tenant's apartment—to weeks or even months—while maintaining nominal compliance with the time requirements in Consent Decree.

However, the Consent Decree defines "work order" as "the process by which NYCHA schedules a repair or other work to be performed to address a condition in an apartment requiring remediation." (Consent Decree at ¶ 1(c).) And in turn, NYCHA must complete a work order within seven or fifteen days, on average. (Consent Decree at ¶ 5.) The Consent Decree does not contemplate multiple, independent work orders for each repair. (See Consent Decree at ¶ 6 ("When a mold and/or excessive moisture condition is detected by NYCHA or reported by an authorized occupant in the apartment, NYCHA will create a work order[.]") (emphasis added);

---

[2]   Plaintiffs concede that for "complex" fifteen-day repairs, which constitute less than 2% of the total repairs, NYCHA is in compliance when "parent" and "child" work orders are combined.

Operations & Maintenance Policy for Mold & Moisture Control in Residential Buildings Manual, Consent Decree Ex. A at 6–7 (providing that NYCHA shall complete simple/complex repairs related to mold or moisture by a maintenance worker in a single visit/multiple visits to the apartment on average in less than or equal to seven/fifteen days).)

And as NYCHA's counsel noted, "NYCHA staff will promptly address complaints concerning mold and moisture. . . . They will <u>remediate the problem</u>, including repairs to address the underlying causes, with an average of seven days, if technical services staff are not required . . . . In instances where technical services staff are required, they will <u>remediate the problem</u>, including the underlying causes, within an average of [fifteen] days[.]" (Marks Decl. Ex. 1 (emphasis added).) These time limits were the "cornerstone" of the parties' settlement. (Bass Decl. Ex. 3, March 27, 2014 Fairness Hearing Tr. at 5.)

Thus, this Court holds that the Consent Decree requires NYCHA to complete "simple" repairs in no more than seven days and "complex" repairs in no more than fifteen days, on average. The clock begins to run when a "parent" work order is opened in response to a tenant's complaint.

II. <u>Appointment of a Special Master is Necessary to Enforce the Consent Decree</u>

Plaintiffs submit unrebutted declarations from tenants that, despite repeated complaints, NYCHA fails to take effective action to address the underlying causes of the mold and moisture. (See, e.g., Wanda R. Decl. ¶ 21, Maria O. Decl., ¶¶ 12–13.) While these declarations are anecdotal, it is apparent to this Court that NYCHA has not altered its behavior as it promised to do when it proposed the Consent Decree to this Court. (See, e.g., Valerie M. Decl. ¶ 10, Cruz Decl. ¶¶ 9, 13, Judy A. Decl. ¶¶ 9–10, Wanda R. Decl. ¶¶ 12–15 (reporting that during scheduled NYCHA appointments, NYCHA workers said that there was no mold in the apartment

and the mold stains were only dirt; that NYCHA washed down and painted over the mold but failed to remediate it; and that NYCHA failed to address the underlying sources of the mold).)

Plaintiffs' statistics are unrebutted and compelling. After repairs have been completed, mold and excessive moisture <u>reoccurrence</u> rates for the five quarters through July 2015 remain high: 34% reoccurrence in the first quarter, 41% reoccurrence in the second quarter, 27% reoccurrence in the third quarter, 22% reoccurrence in the fourth quarter, and 27% reoccurrence in the fifth quarter. (Second Supp. Edwards Decl. ¶ 16.) And a close analysis reveals that the number of reported reoccurrences has increased substantially from quarter to quarter. (Second Supp. Edwards Decl. ¶ 16.) While the Consent Decree does not establish a maximum acceptable level of reoccurrence, the reoccurrences reported by NYCHA suggest that tenants' asthma and respiratory problems are being exacerbated by the continued presence of mold and excessive moisture in New York City public housing.

The appointment of a Special Master appears warranted. The failure to remediate mold and excessive moisture jeopardizes the health and public welfare of hundreds of thousands of New Yorkers. <u>See</u> Fed. R. Civ. P. 53(b). A "federal court's interest in orderly, expeditious proceedings justifies any reasonable action taken by the court to secure compliance with its orders." <u>Berger</u>, 771 F.2d at 1568 (internal citations and quotations omitted). Indeed, there is considerable room for appointing Special Masters when the purpose of the master is to enforce a judicial decree. <u>See</u> <u>United States Ass'n for Retarded Children v. Carey</u>, 706 F.2d 956, 962–65 (2d Cir. 1983) (upholding decision by the district court appointing a Special Master to monitor the State government's compliance with a consent decree designed to protect the constitutional right of residents at an institution for the mentally disabled).

III. Plaintiffs' Other Requested Relief

Plaintiffs ask this Court to modify the Consent Decree to place a "cap" on the maximum number of days NYCHA can expend in completing mold and moisture-related repairs—fourteen days for "simple" repairs and twenty one days for "complex" repairs. This Court declines to grant such relief in the absence of an evidentiary hearing addressing the ability of NYCHA to comply with such a requirement. (See Clarke Decl. ¶ 18.)

Finally, Plaintiffs suggest that this Court impose contempt sanctions of $10,000 for each apartment where mold reoccurs as a result of NYCHA's failure to remediate the source of the mold or excessive moisture. While this Court has the "inherent power to find a party in contempt for bad faith conduct violating the court's order," the record before this Court, while demonstrating a lack of diligence, does not rise to the level of willful misconduct or bad faith. See S. New England Tel. Co. v. Global NAPs Inc., 624 F.2d 123, 144 (2d Cir. 2010) (holding that the district court's finding of contempt was not an abuse of discretion).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to enforce the Consent Decree approved by this Court and for appointment of a Special Master is granted. Plaintiffs' motion for sanctions against Defendant New York City Housing Authority is denied.

In accord with the Consent Decree, NYCHA must complete "simple" repairs in no more than seven days, and "complex" repairs in no more than fifteen days, on average. These time requirements begin to run when a "parent" work order is opened in response to a tenant's complaint.

Under Fed. R. Civ. P. 53(b), this Court hereby gives the parties notice and an opportunity to be heard regarding the appointment of a Special Master. The parties may submit any proposals concerning a Special Master by January 12, 2016.

Finally, because the health and general welfare of hundreds of thousands of New York City public housing tenants is a matter of great public importance, this Court directs that a senior policy-making NYCHA official attend any proceeding before this Court, and be prepared to respond to this Court's inquiries.

The Clerk of Court is directed to terminate the motion pending at ECF No. 35.

Dated: December 15, 2015
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record.*