UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
MARIBEL BAEZ; FELIPA CRUZ; R.D., ON BEHALF OF  :
HER MINOR CHILD, A.S.; on their own behalf and  :
on behalf of all others similarly situated;  :
UPPER MANHATTAN TOGETHER, INC.; and  :
SOUTH BRONX CHURCHES SPONSORING  :
COMMITTEE, INC.,  :
                                            Plaintiffs,  :
                                                    :  13 Civ. 8916 (WHP)
  vs.  :
NEW YORK CITY HOUSING AUTHORITY,  :
                                            Defendant.  :
-------------------------------------------------------------------------x

**CORRECTED DECLARATION OF DAVID DUNN IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

      DAVID DUNN, an attorney admitted to practice in the Southern District of New York, declares under penalty of perjury as follows:

      1.    I am a member of the bar of this Court and a member of the law firm Hogan Lovells US LLP ("Hogan Lovells" or the "Firm"), which, along with the National Center for Law and Economic Justice ("NCLEJ") and National Resources Defense Council ("NRDC," together "Plaintiffs' Counsel"), represents plaintiffs Maribel Baez; Felipa Cruz; and R.D., on behalf of her minor child, A.S., and organizational plaintiffs Upper Manhattan Together, Inc., and South Bronx Churches Sponsoring Committee, Inc. (together, "Plaintiffs"), in connection with the above-captioned litigation.

      2.    I respectfully submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs pursuant to 42 U.S.C. § 12205 and Paragraph 22 of the Stipulation

1

and Order of Settlement ("Stipulation and Order," attached to the Bass Decl. in Support of Plaintiffs' Motion to Enforce as Exhibit 4 (Dkt. 37–4)). The facts set forth herein are based on my personal knowledge and my review of records regularly created, maintained, and utilized by Hogan Lovells that are relevant to this application. Such records were made at or near the time of the recorded event or activity, and are referred to and relied upon in the ordinary course of the Firm's business. I have also consulted with colleagues at the Firm who have participated in representing Plaintiffs.

**Total Hours Requested**

3. Plaintiffs seek attorneys' fees for Hogan Lovells based upon 1,840.20 hours of work by attorneys and staff at Hogan Lovells. Attached hereto as Exhibit 1 are contemporaneous time records setting forth the time billed and work performed by Hogan Lovells attorneys and staff in representing Plaintiffs during the course of this litigation. As outlined in greater detail below, before submitting this application, Hogan Lovells made significant downward adjustments to the hours incurred to reduce the time included in this application from the amounts actually worked and recorded.

4. In preparing this application, Hogan Lovells attorneys and staff reviewed the narrative portion of each billing entry. They edited certain client-identifying information when appropriate to preserve confidentiality per the parties' confidentiality order. In addition, Hogan Lovells attorneys have, where necessary, added detail to particular billing entries to clarify for the Court why the amount of time expended on a task was appropriate.

5. Hogan Lovells attorneys have also reviewed the amount of time recorded for each entry. The objective has been to take a conservative approach to the total attorney and staff hours for which Plaintiffs request compensation in this application. To that end, Plaintiffs are

not requesting any fee award with respect to 1,162 hours of Hogan Lovells attorney and staff time that was actually expended on this matter, which amounts to nearly 39% of the total hours billed.

6. Hogan Lovells removed attorney and staff time according to the principles outlined below.

7. *First*, where meetings were attended by multiple attorneys, only entries of those attorneys required to achieve the purpose of that meeting were included.

8. *Second*, time for purely internal meetings, even where necessary to discuss issues in the case, was largely eliminated.

9. *Third*, tasks undertaken by attorneys that were principally administrative were eliminated.

10. *Fourth*, all time billed by Hogan Lovells summer law clerks was written off, as was any time spent by Hogan Lovells associates as they coached or worked with summer associates on their assignments. The contributions of these summer associates were important to the case and the outcome obtained, but given that they had not yet obtained their juris doctor, their time was eliminated. In addition, the firm has omitted billers—including attorneys and staff—from this application who had minor time contributions during the requested period.

11. *Finally*, most tasks performed by Hogan Lovells attorneys for which only one or two tenths of an hour was billed were generally deleted.

12. For the most part, Hogan Lovells attorneys and staff recorded their time using the "block billing" method. In other words, attorneys and staff generally recorded their time by listing all tasks performed in a particular day—with each task separated by a semicolon or comma—and recording the total number of hours spent on those tasks. In preparing Exhibit 1,

where possible, each biller noted the time spent on each individual task in a "block billed" entry in parentheses. In some cases, we eliminated one portion of a time entry, but left a different portion of that same entry in our billing records and adjusted the total time for that entry accordingly. We used our discretion to make such additional reductions on a case-by-case basis, as appeared appropriate.

13. The Firm seeks reimbursement for fees for time spent preparing and litigating the motion to enforce, from September 1, 2014 through December 15, 2015. The Firm is not seeking fees for time billed after December 15, 2015, but reserves the right to make further applications for fees and expenses incurred after December 15, 2015, as appropriate.

**Requested Hourly Rates**

14. Plaintiffs request that fees be awarded at a rate of $600.00 per hour for Steven Edwards (a partner previously with Hogan Lovells and now of counsel with Quinn Emanuel Urquhart & Sullivan, LLP); $400.00 per hour for senior associate Erin Meyer (formerly with Hogan Lovells and now with Proskauer Rose LLP) and associate Pooja Boisture; $325.00 per hour for associates Casey Downing, Dianne Milner, and Laura Sayler; and $150.00 per hour for senior paralegal Kelly Quigley.

15. These proposed hourly rates represent significant reductions from the standard rates Hogan Lovells ordinarily charges for each of the attorneys included in this fee application. Mr. Edwards fee-paying work averaged $1,022.00 per hour during the period covered. Ms. Meyer's and Ms. Boisture's regular rate for fee-paying clients averaged $569.00 and $522.00 per hour, respectively. The standard rates for Mr. Downing, Ms. Milner, and Ms. Sayler for fee-paying clients averaged $421.00 per hour. Finally, Ms. Quigley's regular billing rate for fee-paying clients averaged $264 per hour during the time period covered. The odd numbers are a

result of averaging the rates for the work covering two calendar years; Hogan Lovells adjusts its rates at January 1 of each year.

16. These rates are comparable to or less than rates charged by peer firms, engaged in sophisticated, complex legal matters, and are reasonable considering that Hogan Lovells is a large, international law firm and, because of its size and services, has substantial overhead costs.

17. Plaintiffs set forth the legal basis for these rates in their consolidated Memorandum of Law in Support of Their Motion for Attorneys' Fees and Costs, submitted herewith.

18. A chart summarizing the hours sought for each individual attorney, paralegal, or other staff member employed by the Firm, as well as those sought for attorneys for NCLEJ and NRDC is set out on Exhibit 2 to this declaration.

**Skill and Experience of the Attorneys Involved**

19. Hogan Lovells is one of the largest law firms in the world, with more than 2,500 attorneys in more than forty offices worldwide.

20. My practice focuses on commercial and corporate litigation. Specifically, I represent domestic and global companies in international commercial litigation, banking and financial matters, complex commercial matters, and employment-related litigation. I have counseled clients on complex financial transactions, lender liability claims, and unfair trade practice claims. I represent global companies litigating and arbitrating in the United States, and have collaborated with the representation of such companies in foreign tribunals. In addition, my practice also includes counseling companies and individuals on personal employment agreements for executives and highly-skilled employees. I received my B.S. from Cornell University in 1974 and graduated from Cornell University Law School, *magna cum laude*, in

1978.  I have more than thirty-seven years' experience as an attorney.  Since my work on this matter has occurred only in connection with Mr. Edwards's resignation as a partner of Hogan Lovells (on December 31, 2015), no reimbursement is being sought for any of my time expended on this matter.

21.   Erin Meyer is a former senior associate in the New York office.  While at the Firm, Ms. Meyer focused her work on complex commercial litigation.  In addition, from January 2014 through June 2015, Ms. Meyer served as the Firm's Pro Bono Associate, in which capacity she managed the pro bono practice in the Firm's New York Office and developed relationships with a wide range of nonprofit organizations and pro bono clearinghouses. Ms. Meyer has gained significant experience in public interest litigation as the Pro Bono Associate, and also in her prior roles as an Affiliated Attorney at Lambda Legal and a legal intern at the Columbia Sexuality and Gender Law Clinic.  In 2014, Legal Services New York City recognized her as one of the "Top 30 Pro Bono Attorneys" of the year.  As a participant in the Accelerated Interdisciplinary Legal Education Program, Ms. Meyer received a dual B.A/J.D. from Columbia College and Columbia University School of Law in 2011.  She is currently the Pro Bono Manager at Proskauer Rose LLP, where she manages the firm's global pro bono practice and handles her own pro bono cases on a full-time basis.

22.   Pooja Boisture is a litigation associate in the New York office.  Her practice focuses on commercial litigation and government investigations.  Ms. Boisture frequently represents accounting firms in federal court and before U.S. regulatory agencies.  In addition to her accountants' liability work, Ms. Boisture advises international corporations in contract disputes and represents reinsurers in federal and state court.  She also has experience representing clients in securities litigation.  Ms. Boisture is actively involved in firm activities

and pro bono matters.  Ms. Boisture is chair of the Asian Attorney Affinity Group and a member of the firm's Diversity Committee.  She is also a member of the Federal Bar Council American Inn of Court.  Ms. Boisture graduated from Columbia Law School in 2012 as a Harlan Fiske Stone scholar, and she received a B.S. in biology and philosophy from Boston College in 2007.  While in law school, she served as Articles Editor for the Columbia Journal of Gender and Law and worked in the Columbia Law School Child Advocacy Clinic.  Prior to entering law school, Ms. Boisture worked for a non-profit organization advocating for women's health rights.

23. Casey Downing is a litigation associate in the New York office.  His practice focuses on commercial litigation, with an emphasis on internal investigations and white collar matters.  Prior to joining the Firm, Mr. Downing dedicated significant time to human rights work, particularly combating human trafficking both in the United States and abroad.  He received his B.A. from Colorado State University in 2006 and his J.D. from New York University School of Law in 2014.

24. Dianne Milner is an associate in the litigation and employment groups in the New York office.  Specifically, Ms. Milner focuses her practice on employment-related matters and counsels clients in both the litigation and transactional context.  While in law school, Ms. Milner represented low-income clients through Cornell's Labor Law Clinic.  She received her B.S. from Cornell University in 2011 and her J.D. from Cornell Law School in 2014.

25. Laura Sayler is a litigation associate in the New York office.  Her practice focuses on complex commercial litigation and international arbitration.  Prior to joining the firm, Ms. Sayler dedicated significant time to public interest legal work, including interning at the Legal Aid Society's Special Housing Project as an undergraduate, representing customers in arbitration at FINRA through her law school's Securities Arbitration Clinic, and volunteering at a non-

profit's legal clinic in Hell's Kitchen.  In addition, Ms. Sayler interned for the Honorable Loretta A. Preska in the Southern District of New York and the Honorable Esther Salas in the District of New Jersey while in law school.  Ms. Sayler received here A.B. from Dartmouth College in 2009 and her J.D. from Cardozo Law School, *cum laude*, in 2014.

26.     In addition to Steve Edwards, the above-referenced lawyers were the most active attorneys on the litigation, in terms of numbers of hours billed.  *See* Ex. 1; *see also* Corrected Declaration of Steven Edwards in Support of Motion for Attorneys' Fees and Costs dated March 22, 2016.  The work performed by each of these attorneys was invaluable and necessary to the successful presentation of the case, and the result obtained on behalf of the Plaintiffs.

27.     In addition to these attorneys, Ms. Kelly Quigley provided paralegal services in connection with the Firm's work on this matter.  Ms. Quigley has nearly ten years of experience as a paralegal and joined the Firm in 2012.

**Costs**

28.     Hogan Lovells is requesting $18,557.69 in costs and disbursements as part of its application for reimbursement of fees and costs.  This figure represents less than half of the Firm's actual expenditures for costs in this litigation.  Hogan Lovells reviewed its invoices for costs and disbursements in meticulous detail in preparing this application.

29.     Hogan Lovells seeks the following costs and disbursements as part of their fee award: (1) photocopying, printing, and duplication costs; (2) shipping costs; (3) research charges; (4) transportation costs (for visits with tenants and traveling to court); (5) costs of obtaining hearing transcripts; and (6) and consultant fees and expenses for the services of HuronLegal + Consilio, formerly known as HuronLegal ("Huron").  As described in detail below, each of these

categories of expense is of a type normally charged to and collected from the Firm's clients, and is calculated at rates at or below those that are customary.

30. A summary of the costs requested, organized by the type of cost, is set forth in the table found on page 1 of Exhibit 1 to this declaration.

### A. Copying Costs

31. Hogan Lovells requests a total of $3,387.45 for copying costs. These costs relate to copying and printing by Hogan Lovells' in-house duplication services. Reimbursement is sought at a rate of ten cents per page, which is one half of the amount the Firm customarily charges. The cost of each copying request was calculated based on the total number of pages requested. Upon information and belief, the Firm's actual cost to provide copies of materials equals or exceeds ten cents per page.

32. The Firm normally charges fee-paying clients for both internal and external duplication expenses.

### B. Shipping Costs

33. Hogan Lovells requests a total of $497.04 in shipping costs for postage and courier services. The requested shipping costs include both courier services (such as Federal Express) and in-house charges.

34. As to outside couriers, the charges reflect the actual costs incurred and paid by the Firm. As to in-house charges, on information and belief, the amounts charged are equal to or less than costs actually incurred for such services. These shipping costs were necessarily incurred as part of the litigation, and included charges for serving documents, mailing letters to the Court, and corresponding with clients and co-counsel in other locations.

35. The Firm normally charges fee-paying clients for both internal and external shipping expenses.

### C. Research Charges

36. Hogan Lovells requests reimbursement of $452.10 for the cost of downloading court documents and other public records from PACER. Access to this computerized resource was reasonable and necessary to retrieve documents from the court docket.

37. This amount is for charges actually incurred by the Firm for research from court dockets.

38. The Firm normally charges fee-paying clients for research charges, including charges incurred by PACER.

39. Hogan Lovells has not requested any costs in connection with legal research performed on the Westlaw or Lexis databases. During the course of this litigation, associates working under Mr. Edwards' direction conducted many hours of legal research on Westlaw. However, the Firm has negotiated a billing arrangement with Thomson Reuters, owner of Westlaw, under which the Firm pays a flat monthly fee. As part of that negotiated arrangement, the Firm conducts research on pro bono matters free of charge, up to a monthly cap. Any additional time spent on pro bono research in excess of the monthly cap is billed to the Firm.

### D. Transcripts

40. Hogan Lovells requests $327.96 that it actually incurred and paid in obtaining transcripts of court proceedings in this matter.

**E. Consultant Fees**

41. Hogan Lovells requests $13,357.50 in out-of-pocket fees and expenses paid to consultant Huron. Attached hereto as Exhibit 3 are true and correct contemporaneous invoices documenting these costs.

42. These costs represent sixty-nine hours that analysts Morgan García-Lamarca and Kyle Moss spent on the case as consultants to Plaintiffs during the preparation of the motion to enforce and related filings. Huron was engaged by Hogan Lovells to assist in analysis of NYCHA's quarterly reports, and to verify analyses of those reports that were prepared by the Firm internally. Huron's services were necessary to our analysis of the complex data provided by NYCHA, and to our understanding and explanation to the Court of how that data documented NYCHA's failure to comply with its obligations under the stipulated settlement order.

43. Mr. García-Lamarca and Mr. Moss billed a reduced blended rate of $195.00 per hour for their work.

44. The charges for which reimbursement is sought were actually incurred and paid by the Firm.

**F. Travel**

45. Hogan Lovells seeks $535.64 in out-of-pocket expenses for local travel. These expenses were required to attend court appearances and to visit tenants to conduct interviews and apartment inspections.

46. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding. This declaration was executed by me at New York, New York this 22nd day of March 2016.

/s/     *David Dunn*
David Dunn