UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
MARIBEL BAEZ; FELIPA CRUZ; R.D., ON BEHALF
OF HER MINOR CHILD, A.S.; on their own behalf
and on behalf of all others similarly situated;
UPPER MANHATTAN TOGETHER, INC.; and               Civ. No. 13-8916 (WHP)
SOUTH BRONX CHURCHES SPONSORING
COMMITTEE, INC.,

                                                   DECLARATION OF
                        Plaintiffs,                DONNA M. MURPHY IN
                                                   OPPOSITION TO
                  v.                               PLAINTIFFS'
                                                   APPLICATION FOR AN
NEW YORK CITY HOUSING AUTHORITY,                   AWARD OF ATTORNEYS'
                                                   FEES AND COSTS
                        Defendant.

------------------------------------------------------------------------x

        DONNA M. MURPHY, pursuant to 28 U.S.C. § 1746, declares under

penalty of perjury that the following is true and correct:

        1.      I am an attorney with the Law Department of the New York City Housing

Authority ("NYCHA"). I am of counsel to David Farber, General Counsel of NYCHA,

and I represent the defendant in the above-captioned matter. I submit this declaration in

opposition to plaintiffs' application for an award of attorneys' fees and costs totaling

$1,040,045.19 relating to the motion to hold NYCHA in contempt for allegedly violating

the Stipulation and Order of Settlement ("Stipulation") or for modification of the

Stipulation, decided by this Court on December 15, 2015.

        2.      Plaintiffs are not entitled to any attorneys' fees or costs because, in

exchange for the extraordinary payment of $250,000 in fees up front in connection with a

non-litigated class action settlement, they waived all future costs and disbursements and

waived all fees except for very limited circumstances not present here.

1

3.      Even if the Court finds that plaintiffs have not waived fees and costs under the Stipulation, plaintiffs have not met their burden of demonstrating entitlement to $1,021,487.50 in fees in connection with the enforcement motion. Plaintiffs seek an award of attorneys' fees for the work of twelve individuals across three legal organizations (Natural Resources Defense Council ("NRDC"), National Center for Law and Economic Justice ("NCLEJ"), and Hogan Lovells US LLP ("Hogan")) in connection with activities far exceeding the enforcement motion. Hogan alone seeks hourly rates of up to $600, including $325 for new law school graduates, and seek compensation for 1,840.20 hours. Although Hogan was brought in specifically to litigate the enforcement motion, NRDC and NCLEJ also seek $64,175.00 and $241,530.00, respectively, as compensation for their work.

## Factual Background

4.      This action was commenced with the filing of a putative class action complaint on December 17, 2013 alleging that NYCHA violated the Americans With Disabilities Act, Section 504 of the Rehabilitation Act, and the Fair Housing Amendments Act by failing to effectively abate mold and excessive moisture in the apartments of public housing residents with asthma. Plaintiffs moved for certification of the class the following day and filed the Stipulation executed by counsel on December 20, 2013.

5.      The Court granted the unopposed motion for class certification on February 11, 2014. After a fairness hearing on March 27, 2014, the Court approved the Stipulation on April 8, 2014.

6.    In paragraph 22 of the Stipulation, NYCHA agreed to pay NRDC and NCLEJ a total of $250,000 in attorneys' fees and costs notwithstanding the absence of any discovery, motions or trial. In exchange plaintiffs waived all future attorneys' fees, costs and disbursements, including those for monitoring activities during the stipulation period. The only exception is for plaintiffs' attorneys' fees in making a motion for enforcement only if the resulting order finds NYCHA in contempt, mandates additional obligations, or approves an agreement between the parties resolving the motion in a way that requires NYCHA to take, or refrain from taking, a particular action.

7.    The parties differing interpretations of the service level requirements of the Stipulation became apparent to NYCHA in the second half of 2014 and the parties met on November 24, 2014 to discuss the issue. By letter dated February 19, 2015, NYCHA proposed a compromise resolution. On March 5, 2015, the first Hogan attorney, Steven M. Edwards, filed a notice of appearance. On March 6, 2015, plaintiffs emailed NYCHA a letter rejecting the proposal and, minutes later, filed via ecf a letter requesting a pre-motion conference. By letter dated March 13, 2015, NYCHA responded to the letter. The Court held a pre-motion conference on April 2, 2015.

8.    Plaintiffs filed their motion by April 23, 2015 seeking both enforcement of the service levels as they understood them and to hold NYCHA in contempt. NYCHA filed its opposition on June 12, 2015. Plaintiff filed their reply on June 26, 2015. The Court held oral argument on the motion on July 10, 2015. Plaintiffs made supplemental submissions on July 24, 2015, August 20, 2015 and October 7, 2015.

9.    By decision dated December 15, 2015, the Court held that plaintiffs' interpretation of the service levels was correct and NYCHA was not in compliance with

3

the Stipulation and appointed a special master to determine why NYCHA was not in compliance and what steps could be taken to bring NYCHA into compliance. The Court denied that part of plaintiffs' motion seeking to hold NYCHA in contempt and impose penalties of modification of the service levels so as to impose a hard cap of 14- and 21-days, respectively, on each simple or complex repair and a schedule of monetary penalties.

### Plaintiffs Fail To Establish Their Entitlement to Over $1,000,000 in Fees and Costs

10.     As set forth in the accompanying memorandum of law, the Stipulation does not permit recovery of attorneys' fees or costs under the facts present here. Even if the Court determines that the present facts fit within the waiver exception, recovery of fees under the Stipulation is limited to those "in connection with [the] enforcement motion." Hogan, counsel brought in to litigate the motion, seeks $715,782.50 in fees for 1,840.20 hours; NRDC and NCLEJ, advisory counsel, seek combined fees of $305,705.00 for 537.5 hours. Plaintiffs have not met their burden of demonstrating their entitlement to over a million dollars as reasonable attorneys' fees in connection with the enforcement motion.

11.     For the reasons set forth in the memorandum of law, both the hourly rates requested by plaintiffs and the number of hours for which they seek compensation are grossly unreasonable.

### Hours Not In Connection with the Enforcement Motion

12.     As an initial matter, plaintiffs seek compensation for a host of activities beyond the making of the enforcement motion. Plaintiffs improperly attempt to deem any time spent on the issues of mold, NYCHA, the Baez settlement generally, all

4

monitoring, community outreach, communications with elected officials, litigation holds apparently served upon plaintiffs themselves, and even internal communications with management as compensable. Indeed, counsel's declarations expressly state that they seek compensation for monitoring and other activities beyond the enforcement motion. *See* Corrected Declaration of Nancy S. Marks, "Marks Dec.", ¶¶ 5-11, 23; Corrected Declaration of Marc Cohan, "Cohan Dec.", ¶¶ 5-11, 25. Compensation for these activities must be denied as the plain language of the Stipulation limits recovery to fees in connection with the motion. NRDC and NCLEJ have already been paid $250,000 in fees under the Stipulation and this double-dipping for non-motion related activities should not be countenanced.

13.    The overexpansive timeframe of the entries further reflects the non-motion related activities included in the fee application. While the pre-motion letter was filed in March 2015, the motion was filed in April 2015 and argued in July 2015 and the last supplemental briefing was submitted on October 7, 2015, the time frame covered by plaintiffs' application runs from May 6, 2014 through December 15, 2015. NYCHA did not produce its first reports under the Stipulation until September 30, 2014, yet NRDC and NCLEJ purport to have been working on the enforcement motion almost five months *before* the first report. On the other side of this timeframe, plaintiffs purport to have continued working on the motion even *after* the last, third supplemental filing on October 7, 2015; for the period of from October 8, 2015 to December 15, 2015, counsel seeks fees for a total of 53.6 hours, with 47.3 hours requested by Hogan.

**Excessive, Duplicative and Unnecessary Hours**

14. Not only do the time records of counsel reflect these non-compensable activities, but the remaining hours are excessive, duplicative and unreasonable even as to the actual enforcement motion. They are replete with conference calls/emails/meetings of attorneys and staff *within* each of the three legal organizations; conference calls/emails/meetings of attorneys and staff *among* the three legal organizations; the attorneys' exchanges of emails to *schedule* those calls/emails/meetings; charges for ecf bounces; travel time (at full rates) and attendance of multiple attorneys at meetings, mock arguments, and multiple attorneys' attendance at the only two court appearances relating to the motion. They also include time for multiple attorneys from this third set of attorneys to educate themselves about this ongoing case. Counsel even includes time charges related to the retention of the third set of attorneys. No reasonable, paying client would tolerate these inefficiencies and overlawyering.

15. Even as to those entries related to the actual motion, plaintiffs make no attempt to segregate the time spent on the unsuccessful motion to hold NYCHA in contempt. An additional across-the-board reduction should be made for that reason.

16. An additional across-the-board reduction should be made for block billing and vagueness of task descriptions. In Mr. Dunn's declaration, he acknowledges that Hogan used block billing in its contemporaneous records and has attempted to allocate time among the block billed time for purposes of this fee application. (*See* Dunn Dec., ¶¶ 4, 12) NRDC also used block billing and in many instances did not allocate time among the tasks. Many of Mr. Cohan's entries, as well as NRDC's, are so cursory and vague so as to not permit any real analysis.

17.    A very deep across the board percentage reduction is required due to the

incredible inefficiencies and duplication remain for which no reasonable client would

pay. Notwithstanding the credentials and experience of the lawyers involved (and the

billing judgment stated to have already been applied), the time record submitted reflect

the following:

• **18** hours for drafting of the 3-page letter requesting a pre-motion conference (which was prepared after counsel had already been preparing the actual motion for *five months*) (12.8 hours for Hogan personnel; 5.2 hours for Mr. Bass). In calculating these hours, only those entries specifically referencing the pre-motion letter were included.

• **27.5** hours for preparing for and attending the pre-motion conference held on April 2, 2014.

• **103** hours of legal research, by Hogan alone, prior to the filing of the motion brief filed on April 22, 2015. This number excludes time spent *outlining* the legal research to be done, as well as conferences *about* the legal research.

• **241.8** hours solely for drafting of the initial motion brief. This number excludes time spent on brief tables (for which a paralegal charged 2.1 hours), research, conferences *about* the brief or motion, supporting declarations, data analysis, or the notice of motion or certificate of service. Hogan seeks 215.9 hours for the drafting of the brief. NRDC and NCLEJ seek an additional 14.6 and 11.3 hours, respectively, on the brief alone.

• **199.2** hours drafting the declarations submitted with the initial motion, with 190.7 hours by Hogan, 4.3 from NRDC and 4.3 from NCLEJ (excluding Mr. Bass' entries of .2 or less). The 199.2 hours does not include any declarant interviews or conferences, any time relating to the exhibits, or any conferences or emails about the declarations

• **278** hours charged for the two-week period between receipt of NYCHA's opposition papers on the afternoon of 6/12/15 and the filing of reply papers on 6/26/15, including **13.8** hours for 9 attorneys to review NYCHA's opposition brief and declarations, excluding emails and conferences about their review of same.

• **75.85** hours preparing for and attending oral argument, including additional research, moot court and several entries totaling 1.5 on media coverage of oral argument (62.1 hours for Hogan; 8.8 for NRDC; and 7.95 for NCLEJ).

• **195.8** hours of conferences or teleconferences among counsel, conservatively calculated (130.5 hours for Hogan, 28.7 for NRDC, 36.6 for NCLEJ). This number does not include the innumerable emails among counsel; any conference with NYCHA counsel, a tenant, an expert or declarant (other than case strategy conferences), even if attended by multiple attorneys; attendance at the moot court; the scheduling of conferences; or conferences which are part of unallocated block billing.

18.    In fact, there is so much overlawyering that the time records reflect that counsel generated outlines for conference calls among counsel and even revised those outlines.

19.    Several entries appear to have been erroneously included as they relate to entirely different litigations, such as Mr. Cohan's 8/7/15 entry regarding a "Georgia client" and Mr. Bass' four entries on 2/18/15 regarding communications with a union representative.

20.    The entries reflect attorneys performing work which should be done by a paralegal or other non-attorney, and inefficiencies in performing that work. Hogan acknowledges that it had attorneys (ranging from the 2014 law graduates to Mr. Edwards) conducting apartment inspections, including making multiple visits to the same tenant. *See* Plaintiffs' Memorandum of Law at 11; Edwards Dec., ¶12(c)). Conducting apartment inspections is non-legal work which should have been performed by non-lawyers. Those hours and the hours related to setting up a training program to show those attorneys how to perform apartment inspections should be denied.

21.    Other examples of tasks performed inefficiently by attorneys which should have been done by a paralegal or secretary include: Attorney Downing's 5.5 hours on 4/16/15 redacting tenant identifying information from a declaration exhibit; Attorneys Sayler and Boisture's total of 3 hours on 4/22/15 for the filing of the motion (despite actual filing apparently being done by Hogan's Managing Clerk's Office); from 4/23/14

8

to 4/27/15 (post-filing), five attorneys charged a total of 8.5 hours concerning courtesy copies (including a 5-attorney conference on courtesy copies); from 6/18-6/19, 3 attorneys charged 2.2 hours for a letter requesting enlargement of the reply brief page limits, to which NYCHA had consented; Attorney Boisture's 3 hours on 10/7/16 cite checking a 9-page brief citing 4 cases; Attorney Meyer's 1.7 hours on 10/7/16 drafting a cover letter for courtesy copies of third supplemental briefing; Attorney Downing's 2.7 hours on the cover letter for the reply papers (1.0 on 6/23/15 and 1.7 on 6/25/15); and Attorney Meyer's 1.6 hours for drafting on 7/24/15 the following email sent to the undersigned on 7/27/15: "Ms. Murphy, Please see attached Plaintiffs' cover letter to Judge Pauley that accompanied the courtesy copies of Plaintiffs' supplemental filing dated July 24, 2015. Best, Erin". Such inefficiencies exist throughout the time records.

## Gregory Bass' Application for Fees

22.     The hours sought by Hogan, the firm specifically brought in to litigate the enforcement motion notwithstanding plaintiffs' representation by two legal organizations, as well as NRDC and NCLEJ, are unreasonable. While the time records of Mr. Bass of NCLEJ reflect the inefficiencies and duplication discussed above, they stand out for such a lack of billing judgment that all 330 hours and 19 minutes for which he seeks compensation should be denied.

23.     Mr. Bass seeks compensation for activities other than the enforcement motion throughout his time records. In fact, nearly the first 13 pages of Mr. Bass' time records concern the time period before September 30, 2014 when NYCHA served its first report under the Stipulation. Many of these entries concern general outreach activities that NCLEJ would engage in apart from the enforcement action, as evidenced by their

commencement within weeks of the Court's approval of the Stipulation and long before any issue arose as to interpretation of the service levels or NYCHA's compliance. Examples of these activities include: communications with and speaking appearances at various organizations and schools (such as GOLES, Queens Legal Services, Housing Court Answers, Health Law Task Force, NYLAG, Cardozo Law School, Fordham School of Social Work); emails on a news article on outreach (6/26/14); a report to the NCLEJ's own Board; emails and meetings with elected officials; communications regarding personnel changes at NYCHA; and a FOIL request to NYCHA for mold policies which it was negotiating pursuant to the Stipulation. These activities would not even be compensable as fees for monitoring, had the Stipulation provided for fees for monitoring.

24.    Much of the 49 pages of time records consist of entries for ecf bounces or 6-minute entries for emails to which it is not even clear that Mr. Bass is an active participant; he has even included entries of 1 minute. Had Mr. Bass eliminated entries of the equivalent of .1 or .2 as Hogan did, his 49-page time record would be reduced to 191 entries on approximately 5 pages. He seeks $90,090.00 (150.35 hours at $600 an hour) for these entries of .2 or less.

25.    Additionally, because virtually every email or ecf bounce is assigned a minimum of 6 minutes, the time requested exceeds the actual time spent by counsel. For example, on 6/15/15, Mr. Bass separately lists 8 emails between 9:02 a.m. and 9:10 a.m. concerning the scheduling of a conference call among counsel; even if such activity was compensable, he seeks fees of $480 (48 minutes at $600 per hour) for 8 minutes time.

26.    These inappropriate charges for emails appear on every page of the time

records. Some examples include:

• Overlapping emails on 9/15/14 regarding Hogan's conflicts check

• 6 emails on 9/16/14 regarding the scheduling of a conference call

• 25 entries from 10/21/14 to 10/31/14 on scheduling and logistics of training Hogan associates

• 5 overlapping emails on 11/13/14

• 11 emails on 12/11/14, some overlapping, regarding the scheduling of a conference call

• 7 entries on 3/5/15 of 6 minutes for emails and an ecf bounce regarding Steven Edwards' notice of appearance (and even charged 6 minutes for ecf bounces on other Hogan attorneys' notices of appearance)

• 3 emails from Hogan attorneys on 6/12/15 forwarding NYCHA opposition papers he had already received and reviewed

• 6 emails received between 9:00 and 9:05 on 6/24/15, each charged at 6 minutes

• 5 emails on 7/10/15 regarding scheduling of a conference call.

• 10 emails on 12/15/15, each charged at 6 minutes ($600), some overlapping, regarding scheduling of a conference call.

• Mr. Bass even charged 6 minutes (or $60) on 5/14/14 for "Reply email to Ray acknowledging receipt of email of contact info for named plaintiffs."

27.    In many instances it is not possible to discern whether Mr. Bass was even a participant in the email exchange. For example, following the July 10, 2015 oral argument, the Court directed the parties to enter into a confidentiality agreement. The agreement was negotiated between Pooja Boisture on behalf of plaintiffs and the undersigned for NYCHA. Yet from 7/10/15 to 8/10/15, Mr. Bass has entries regarding 34 emails and 2 ecf bounces (for 6 minutes for a total of 3.6 hours, or $2,160) regarding the protective order, in addition to one charge of 24 minutes for actual edits to the

11

protective order. In some instances it is even explicit he was neither the sender nor the recipient of the email.

28.     Despite requesting an hourly rate of $600, many activities appear administrative in nature, including the scheduling of conference calls, inputting reports into a database, preparing outreach flyers, and ordering the fairness hearing transcript (10/1/14). Some entries lack descriptions such as "enforcement issues" on 8/1/14 at 4:14 pm (6 minutes), "work order timeline" on 8/12/14 for 36 minutes or "documents concerning NYCHA negotiations" on 3/23/15 (1 hour 6 minutes).

29.     A review if even those entries over .2 reveals a substantial number of charge related to ordinary outreach and monitoring activities, including but not limited to, a GOLES steering committee meeting and outreach workshop (5/28/14-5/29/14, 6/16/14 and 9/23/14, totaling 10.6 hours); unidentified mold workshops on 6/4/14 and 7/20/15, 7.9 hours); Queens Legal Services outreach meeting (6/11/14, 4 hours), CVH workshop (10/20/14, 3.1), preparing a PowerPoint presentation for Hogan (10/21/14-10/30/14, 9.6 hours), Cardozo Law School presentation (3/20/15, 4.5 hours), meeting with a staff member of a Council member (4/24/15, 2.8 hours), four Housing Court Answers presentations (4/30/15, 5/26/15, 5/28/15, 6/30/15, 13.8 total hours), meeting with NYLPI (8/19/15, 1.5 hours), a Fordham School of Social Work presentation (9/26/15, 1.4 hours) and other non-compensable activities including but not limited to, a FOIL request to NYCHA (beginning on 8/18/14, 15 entries, total of 4.35 hours) and a report to the NCLEJ's own Board (12/5/14, 0.5 hours).

30.     Because Mr. Bass has failed to exercise billing judgment, his fee application should be denied in its entirety.

12

31.     Accordingly, even if the Court determines that its December 15, 2015 order "mandates additional obligations by defendant" so as to fit within the waiver exception, plaintiffs have not met their burden of demonstrating their entitlement to over a million dollars as reasonable attorneys' fees in connection with the enforcement motion. Both the hourly rates requested for the eleven attorneys and one paralegal across three legal organizations and the number of hours for which compensation is sought are unreasonable and should be drastically reduced. This is particularly true in light of NYCHA's status as a governmental agency experiencing financial difficulties where taxpayers ultimately would be satisfying any award.

Dated: New York, New York
      July 6, 2016

                                        Donna M. Murphy