UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIBEL BAEZ; FELIPA CRUZ; R.D., ON BEHALF OF HER MINOR CHILD, A.S.; on their own behalf and on behalf of all others similarly situated; UPPER MANHATTAN TOGETHER, INC.; and SOUTH BRONX CHURCHES SPONSORING COMMITTEE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NEW YORK CITY HOUSING AUTHORITY, <br><br> Defendant. | 13 Civ. 8916 (WHP) |

**REPLY DECLARATION OF STEVEN M. EDWARDS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**

STEVEN M. EDWARDS, an attorney duly admitted to practice in this Court, hereby declares under penalty of perjury as follows:

1.  I am of counsel to Quinn Emanuel Urquhart & Sullivan, LLP, and prior to January 1, 2016, I was a partner at Hogan Lovells US LLP ("Hogan Lovells"), co-counsel for Plaintiffs in this action. I make this reply declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs in connection with their motion to enforce the Stipulation and Order dated April 17, 2014 ("S&O"), between Plaintiffs and the New York City Housing Authority ("NYCHA"). The purpose of this declaration is to respond to NYCHA's contention that Plaintiffs are not entitled to fees and costs because their motion to enforce did not result in relief that mandates additional obligations by NYCHA.

2.	Paragraph 22 of the S&O provides that Plaintiffs may move for fees and costs in connection with any enforcement motion that results in "the entry of an order that either finds defendant in contempt, mandates additional obligations by defendant or approves an agreement between the parties resolving the motion in a way that requires NYCHA to take, or refrain from taking, a particular action." In the normal course, "an enforcement motion" includes a request for relief, and such a motion is either resolved by agreement of the parties or by order of the Court. In both cases, the objective is to obtain relief sought by the motion, so it does not make sense to view resolution by order and resolution by agreement as two separate and unrelated things. Rather, the words "additional obligations" should be read to include relief that "requires NYCHA to take, or refrain from taking, a particular action."

3.	In this case, there can be no doubt that the relief ordered by the Court in its order of December 15, 2015 (ECF 88, the "Order"), requires NYCHA to take, or refrain from taking, a particular action. The Court "granted" the motion in part and found that "NYCHA has been out of compliance with the Consent Decree from the day it was entered by this Court." Order at 1, 3. The Court rejected NYCHA's interpretation of the S&O and ordered NYCHA to "complete 'simple' repairs in no more than seven days from 'complex' repairs in no more than fifteen days, on average." Order at 7.

4.	This not only changed the way NYCHA prepared its quarterly reports, but – at least according to NYCHA – it had a significant impact on the time NYCHA took to complete repairs. As I explained to the Court in my affirmation submitted in support of Plaintiff's motion, prior to entry of the Order, NYCHA reported that it was completing seven day repairs in approximately 6.2 or 6.3 days. But, our investigations showed that the true average was closer to 10 days. See Edwards Decl. dated April 22, 2015 (ECF 36), ¶11; Edwards Second

Supplemental Decl. dated July 24, 2015 (ECF 69), ¶8.  The Order required NYCHA to change the way it accounted for repairs.  As a direct result, the average time to complete all seven day repairs went from 6.3 in October 2015 to 12.6 days in November 2015, which was consistent with Plaintiffs' analysis.  Sixth Quarterly Report Summary, annexed as Exhibit 1; Seventh Quarterly Report Summary, annexed as Exhibit 2.  By April 2016, however, the average number of days to complete seven day repairs, excluding 5% of the work orders which had the longest time to complete, was down to 3.6.  Eighth Quarterly Report Summary, annexed as Exhibit 3.  If this information is correct, then Plaintiffs' motion to enforce had a significant impact on NYCHA's conduct and resulted in significant benefit to the class.  In discussions with me, NYCHA has admitted that this dramatic improvement in performance is due to the Court's Order.

5. In addition to mandating changes in NYCHA's quarterly reporting practices, the Court found that Plaintiffs had submitted "unrebutted and compelling" evidence of high reoccurrence rates for mold in NYCHA apartments.  As a direct result, the Court appointed a Special Master to address NYCHA's "failure to remediate mold and excessive moisture," which the Court found "jeopardizes the health and public welfare of hundreds of thousands of New Yorkers."  Order at 6.  In a subsequent order, the Court stated that it intended to appoint Professor Francis McGovern as a Special Master to determine, among other things, "(1) why NYCHA has failed to comply with the Consent Decree; and (2) what steps can be taken to bring NYCHA into compliance."  Order dated January 22, 2016 (ECF 93).  The Special Master is expected to issue a report and recommendation in September, and it is anticipated that – as directed by the Court – the Special Master will recommend additional steps (*i.e.* obligations) that NYCHA must take to achieve compliance with the S&O.

6. The quarterly reoccurrence reports for the Seventh and Eighth Quarters, copies of which are annexed as Exhibits 4 and 5, indicate that the reoccurrence rate from November through April 2016 continues to be very high – ranging from 23% to 27%. While the Special Master's work is not complete, there can be no doubt that NYCHA will be required "to take, or refrain from taking, a particular action" as a result. *See* S&O ¶ 22. In addition, as noted in the Memorandum in support of Plaintiffs' fee application, during oral argument on the motion to enforce, the Court ordered NYCHA to provide more timely reports. *See* Hearing Tr. 37-38, July 10, 2015 (ECF 52).

7. At bottom, NYCHA's position is that Plaintiffs are not entitled to fees because the Court did not find NYCHA in contempt or impose additional obligations; it simply required NYCHA to comply with its existing obligations. The obligation to cooperate with the Special Master and to provide him, and at times Plaintiffs, access to NYCHA buildings and computer systems are additional obligations. Furthermore, changes in conduct required by an order issued in response to a motion to enforce should be considered an "additional obligation" as that term is used in the S&O.

8. Throughout this litigation, NYCHA has taken the position that the Court lacks authority to impose additional obligations on it over and above those required by the S&O. If NYCHA's interpretation of the S&O is correct, then the provision permitting recovery of fees and expenses in the event of a successful motion to enforce is illusory. The phrase "additional obligations" should be read to include any change in conduct. Moreover, any change in conduct that benefits the class also provides a basis to seek the recovery of fees under Rule 23 and the Americans with Disabilities Act, 42 U.S.C. §1231(1).

Dated: August 19, 2016
New York, New York

/s/ Steven M. Edwards