UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARIBEL BAEZ, *et al*,

             Plaintiffs,

             -against-

NEW YORK CITY HOUSING
AUTHORITY,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

13cv8916

OPINION & ORDER

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs' counsel Hogan Lovells US LLP ("Hogan Lovells"), Natural Resources Defense Counsel ("NRDC"), and the National Center for Law and Economic Justice ("NCLEJ") move for an award of reasonable attorneys' fees and costs pursuant to a Stipulation and Order between Plaintiffs and Defendant New York City Housing Authority ("NYCHA"). The motion is granted in part and denied in part.

BACKGROUND

        In December 2013, New York City public housing tenants filed a class action complaint asserting claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), for failure to abate mold and excessive moisture in their apartments. They sought injunctive relief against NYCHA. Instead of contesting the allegations, NYCHA settled and entered into a Stipulation and Order of Settlement ("Consent Decree"), approved by this Court on April 17, 2014.

        Soon after entry of the Consent Decree, it became clear that NYCHA was unable to comply with several requirements of the Consent Decree. In April 2015, Plaintiffs moved to

enforce the Consent Decree, appoint a Special Master, and hold NYCHA in contempt. (ECF No. 44.) In December 2015, this Court granted Plaintiffs' motion to enforce the Consent Decree and appointed a Special Master, but denied the contempt application. (ECF No. 88 (the "Order").)

DISCUSSION

Plaintiffs' counsel collectively seek a total of $1,040,045.19 attorneys' fees and costs for their professional services in connection with their work on the motion to enforce the Consent Decree. Pursuant to the Consent Decree, Plaintiffs' counsel are entitled to attorneys' fees if the motion to enforce compliance results in "additional obligations" for NYCHA. (Consent Decree, ¶ 22.) There is no question that this Court's December 15, 2015 Memorandum and Order imposed "additional obligations" on NYCHA. As this Court observed:

> The appointment of a Special Master appears warranted. The failure to remediate mold and excessive moisture jeopardizes the health and public welfare of hundreds of thousands of New Yorkers.

(Order at 6.) Therefore, an award of reasonable attorneys' fees and costs is appropriate. See Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987).

I.   Reasonable Attorneys' Fees

In determining reasonable attorneys' fees, courts employ the "presumptively reasonable fee" standard, which "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y.C. Trans. Auth., 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted). To calculate the presumptively reasonable fee, "courts typically start with a determination of the lodestar amount, which is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Exp. Dev. Canada v. Bonilla, No. 13-cv-4952 (KBF), 2014 WL 713470, at *4 (S.D.N.Y. Feb. 19, 2014) (quoting Healey v. Leavitt, 458 F.3d 63, 71 (2d Cir. 2007)); Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011)

("Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." (internal quotation marks omitted)).  And "[i]t is well-established that civil rights attorneys not working for profit are entitled to fees that are comparable to those awarded to private attorneys with fee-paying clients." Heng Chan v. Sung Yue Tung Corp., No. 03-CV-6048 (GEL), 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007) (citing Blum v. Stenson, 465 U.S. 886, 892–94 (1984)).

But "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. . . . [O]ther considerations . . . may lead the district court to adjust the fee upward or downward." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  For instance, courts consider a number of factors in adjusting the lodestar amount:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley, 461 U.S. at 430.

### A. Reasonable Hourly Rate

Courts "assess[] the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits." Anthony v. Franklin First Fin., Ltd., 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).  "To determine the prevailing market rate, '[t]he rates used by the court should be current rather than historic hourly rates.'" Anthony, 844 F. Supp. 2d at 507 (quoting Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006)).  The Second Circuit also instructs judges to consider:

3

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 184 (2d Cir. 2008).

Plaintiffs' counsel request hourly rates ranging from $600 for partners or principals to $325 for junior associates and $150 for paralegals. For Hogan Lovells, those rates are discounted, reflecting the pro bono nature of their engagement and the fact that the firm touted its representation in this case on its website.[1] Nevertheless, NYCHA contends these hourly rates are unreasonable and proposes substantial reductions.

"Rates found reasonable by courts in this District for experienced civil rights attorneys appear to cluster in the $350–450 per hour range[, with] rates for junior associates . . . in the $150–200 per hour range." Salama v. City of New York, No. 13-CV-9006 (PKC), 2015 WL 4111873, at *2 (S.D.N.Y. July 8, 2015); see also Adorno v. Port Auth. of New York and New Jersey, 685 F. Supp. 2d 507, 513 (S.D.N.Y. 2010) ("A rate of $550 is [ ] consistent with rates awarded in this district for experienced civil rights lawyers."); Sidley Holding Corp. v. Ruderman, No. 08-CV-2513(WHP)(MHD), 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009), report and recommendation adopted, No. 08-CV-2513 (WHP), 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010) (finding that for commercial litigation "recent fee awards within the district reflect hourly rates in the range of $450 to $600 for experienced partners, $350 for senior

---

[1] See https://www.hoganlovells.com/en/news/hogan-lovells-pro-bono-team-achieves-pro-bono-victory-in-nyc-public-housing-case

associates, $250 for junior associates, and $125 to $170 for paralegals").

This Court notes that NYCHA is a New York state public benefit corporation that depends, in large measure, on public funds. And this Court declined to impose contempt sanctions finding that while the record demonstrated a lack of diligence, it did not rise to the level of willful misconduct or bad faith. (Order at 7.) Thus, an award of attorneys' fees should be tempered by the fact that Plaintiffs did not obtain all the relief they sought and whatever sum is awarded derives from the public fisc.

In addition, much of the billed time involved analysis of inaccurate and incomplete NYCHA quarterly reports and attempts to "normalize the data." (Edwards Decl., ECF No. 108, ¶¶ 10, 12(c).) Associate attorneys also billed for learning how to inspect for mold and then to visit various tenants' apartments. (Edwards Decl., ¶ 12(c).) This is not the type of work that warrants billing rates near the top of the customary range. Accordingly, a modest reduction in the proposed rates is warranted.

B.  Reasonable Hours

In addition to determining the reasonableness of the hourly rates, courts must also ensure the reasonableness of the hours billed. Courts consider the "contemporaneous time records . . . that specify, for each attorney, the date, hours expended, and nature of the work done, and its own familiarity with the case . . . and its experience generally." Mugavero v. Arms Acres, Inc., No. 03-CV-5724 (PGG), 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (citation and internal quotation marks omitted). "Courts base the hours inquiry not on what appears necessary in hindsight, but on whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Mugavero, 2010 WL 451045, at *6 (citation and internal quotation marks omitted).

Further, a fee applicant "should exercise 'billing judgment' with respect to hours

5

worked . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley, 461 U.S. at 437. Courts "should exclude from this initial fee calculation hours that were not reasonably expended." Hensley, 461 U.S. at 434 (internal quotation marks omitted). "To that end, '[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" Ognibene v. Parkes, No. 08-CV-1335 (LTS), 2014 WL 3610947, at *3 (S.D.N.Y. July 22, 2014) (quoting Hensley, 461 U.S. at 434).

Hogan Lovells submits contemporaneous time records for 1,840 hours of work. (See Dunn Decl. (ECF No. 109), ¶ 3.) To its credit, in preparation for this motion for attorneys' fees, Hogan Lovells reduced the hours it actually expended on this matter by 1,162 hours, or 39%. (Dunn Decl., ¶ 5.) In doing so, it removed time for multiple, superfluous attendees at meetings; eliminated time for "principally administrative" tasks; wrote off time billed by summer law clerks; and deleted most 0.1 hour charges. (Dunn Decl., ¶¶ 6–11.)

NCLEJ submits time records showing more than 402 hours of time. (See Cohen Decl. (ECF No. 111), Ex. 1.) In contrast to Hogan Lovell, NCLEJ did not discount any time. Indeed, it appears that NCLEJ manufactured time. For example, on June 15, 2015, between 9:02 a.m. and 9:10 a.m., an NCLEJ principal billed eight separate time entries for eight emails exchanged concerning the scheduling of a conference call. For those eight actual minutes, that attorney billed 48 minutes, or $480. (Cohen Decl., Ex. 1.) Using such dubious practices, one could squeeze a lot more than 24 hours out of any given day. Other examples abound and include a plethora of 0.1 and 0.2 hour entries totaling more than $90,000. Further, NCLEJ made no effort to disaggregate its block-billing time entries. Accordingly, the hours NCLEJ seeks to recover are excessive and warrant substantial reduction. (Cohen Decl., Ex. 1.)

The NRDC seeks payment for over 134 hours of work. (See Marks Decl. (ECF No. 110), Ex. 1.) Like the NCLEJ, the NRDC made no effort to disaggregate block-billed time.

In another vein, NYCHA argues that the timeframe for which Plaintiffs' counsel seek fees is over-expansive. The NCLEJ and NRDC both seek reimbursement for time expended beginning in May 2014, despite the fact that NYCHA did not even file a quarterly report until September 30, 2014. (Marks Decl., Ex. 1; Cohan Decl., Ex. 1.) At the other end of the timeline, Hogan Lovells billed for time after its final supplemental filing in October 2015. (Dunn Decl., Ex. 1.)

This Court finds that a number of these hours cannot be fairly characterized as "in connection with" the enforcement action. For instance, while Plaintiffs needed to establish noncompliance with the Consent Decree prior to bringing their motion, not all community outreach is compensable. (See Cohan Decl., ¶¶ 8–9 ("Outreach . . . to spread the word on the [Consent Decree's] requirements," ensuring "that members of the Plaintiff Class fully understood their rights . . . and the process pursuant to which they could seek remediation for mold or excessive moisture.").)

NYCHA further argues, convincingly, that much of the time billed is excessive, duplicative, and otherwise unreasonable. There may not be anything "unreasonable about having multiple team meetings over the course of several months." Chen v. TYT E. Corp., No. 10-CV-5288 (PAC), 2013 WL 1903735, at *4 (S.D.N.Y. May 8, 2013). However, "across-the-board reduction[s are] appropriate where the records demonstrate excessive communication with co-counsel." De La Paz v. Rubin & Rothman, LLC, No. 11-CV-9625 (ER), 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013). Here, Plaintiffs' counsel billed 195.8 hours for conferences among counsel (excluding time billed to emails among counsel, moot court, scheduling of

conferences, and conferences included as part of unallocated block-billing). Although Plaintiffs' counsel undoubtedly needed to communicate in order to coordinate efforts on the enforcement motion, this Court views nearly 200 hours of conferencing as excessive.

NYCHA also argues that Plaintiffs should have utilized non-attorneys to make field visits and gather the facts. This argument has traction. NCLEJ and NRDC representatives trained Hogan Lovell associates to inspect apartments for mold and excessive moisture. (Edwards Cecl. ¶ 12(c).) Hogan Lovell associates billed for that education and then went around the city inspecting apartments. While on-site inspections may have been necessary, they did not need to be performed by associates from an elite law firm who had no previous training. And because so much of the data NYCHA provided was essentially useless, Plaintiffs' counsel spent an inordinate amount of effort trying to make it understandable. But statistical analysis of NYCHA reports is not legal work, and Plaintiffs' counsel engaged experts to do that work at a lower hourly rate. Thus, some reduction is appropriate.

   C. <u>Aggregate Fee Reduction</u>

This Court finds that an aggregate reduction in the fee application is warranted. "It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." <u>Capitol Records</u>, 2015 WL 7271565, at *5 (citation omitted). In view of the inefficiencies, and excessive, vague, and block-billed entries, this Court reduces the total award of attorneys' fees to $400,000 and leaves the allocation to counsel.

II. <u>Reasonable Costs and Disbursements</u>

Plaintiffs' counsel seek $18,557.69 in costs and disbursements. NYCHA takes issue with many of the line items: $3,387.45 for duplication costs of approximately 33,000 pages; $535.64 in transportation expenses; $497.04 in shipping; and $452.10 in PACER costs.

8

But these costs were reasonably expended in the course of pursuing a motion to enforce the Consent Decree. In bringing the motion, inspections of NYCHA housing not easily accessible by public transportation were required. To assess compliance with the Consent Decree, Plaintiffs had to review the voluminous records, which explains the duplication costs. Plaintiffs were also required to provide courtesy copies of filings to this Court, NYCHA, and co-counsel, which accounts for the shipping costs. And it is not unreasonable for Plaintiffs to incur fees checking the docket and new court filings on PACER. Accordingly, Plaintiffs are awarded their requested costs and disbursements in full.

## CONCLUSION

The motion for attorneys' fees is granted in part and denied in part. Plaintiffs' counsel are awarded $418,557.69 in attorneys' fees and disbursements. The Clerk of the Court is directed to terminate the motion pending at ECF No. 106.

Dated: March 20, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.