IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARIBEL BAEZ; FELIPA CRUZ; R.D., ON BEHALF OF HER MINOR CHILD, A.S.; on their own behalf and on behalf of all others similarly situated; UPPER MANHATTAN TOGETHER, INC.; and SOUTH BRONX CHURCHES SPONSORING COMMITTEE, INC.,

Plaintiff,

v.

NEW YORK HOUSING AUTHORITY,

Defendant.

No. 13 Civ. 8916 (WHP)

**DECLARATION OF MICHAEL STANLEY IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER APPROVING MODIFIED AMENDED STIPULATION AND ORDER OF SETTLEMENT**

I, MICHAEL STANLEY, declare under penalty of perjury that the following is true and correct:

1. I am the lead organizer for Upper Manhattan Together, Inc. ("Manhattan Together") and the South Bronx Churches Sponsoring Committee, Inc. ("SBC"), non-profit organizations that have, among other things, helped tenants of New York City Housing Authority ("NYCHA") to advocate for their rights to safe and healthy housing. Manhattan Together and SBC are comprised of 30 not-for-profit organizations and congregations (including Immaculate Conception RC Church, St. Cecilia's RC Church, Our Lady of Sorrows RC Church, Most Holy

Redeemer RC Church, Monte Sión Christian Church, and Little Sisters of the Assumption Family Health Services) whose members include approximately 13,000 NYCHA tenants. Our sister organization, East Brooklyn Congregations also represents many thousands of NYCHA residents. All three organizations are also part of Metro IAF, which is a nationwide organization with 21 local affiliates representing hundreds of congregations and other not for profits.

2. During my time with Manhattan Together and SBC, I have learned that in or around 2011 the organizations reached out to the Natural Resources Defense Council ("NRDC") for help in advocating for improving the conditions of NYCHA housing, specifically with regard to mold and excessive moisture in the residences. NRDC reached out to the National Center for Law and Economic Justice ("NCLEJ") for help on this case. When I joined Manhattan Together and SBC, NCLEJ and NRDC were already in the process of negotiating the initial Consent Decree, along with leaders from Manhattan Together and SBC, and it was filed along with the original *Baez* complaint, in December 2013.

3. I have held my current position with Manhattan Together and SBC since July 1, 2013. In this role, I routinely communicate with numerous NYCHA tenants about the mold and excessive moisture problems in their apartments and I help lead our organizations' direct advocacy to various NYCHA representatives to resolve the tenants' complaints.

4. I submit this Declaration in support of the Plaintiffs' motion for an order approving the Modified Amended Stipulation and Order of Settlement (the "Revised Consent Decree").

5. I have previously submitted two affidavits in this lawsuit. In my first affidavit, (Dkt. #40), filed on April 22, 2015 in support of Plaintiffs' motion to enforce the Stipulation and

Order of Settlement entered by this Court in April 2014 ("the Original Consent Decree"), I described the advocacy efforts of Manhattan Together and SBC on behalf of tenants' rights and I highlighted several mold and/or excessive moisture problems of which I had gained personal knowledge through direct communications with NYCHA representatives and the complaining tenants, and/or through personal observation of the conditions in these tenants' apartments. I also described and referred to spreadsheets that I maintain with the help of Manhattan Together and SBC leaders in the normal course of business to track our communications with tenants and NYCHA.

6. I filed a second affidavit with this Court on October 7, 2015 (Dkt. #84), in response to the Supplemental Declaration of Luis Ponce (Dkt. #83), in which Mr. Ponce took issue with some of the statements in my first affidavit.

7. As detailed more fully in my previous affidavits, I have worked with Manhattan Together and SBC in organizing NYCHA tenants since July 1, 2013 – prior to the filing of this lawsuit. In my role with Manhattan Together and SBC, I have spoken with hundreds of NYCHA tenants, and have visited the apartments of and maintained regular contact with many of them. I have also had frequent correspondence with NYCHA managers and executives, including by way of sending them regular reports in the form of spreadsheets tracking problems in NYCHA apartments that NYCHA has failed to properly address. Often times these problems relate to mold and excessive moisture, and often times they have previously been reported to NYCHA. Since June 2016, the employees and volunteers of Manhattan Together and SBC (and in approximately 20 instances, other organizations with which Manhattan Together and SBC have relationships)

have documented mold and/or excessive moisture problems in 370 individual NYCHA apartments. Manhattan Together and SBC have communicated each of these problems to NYCHA in hopes that NYCHA would remediate the mold and excessive moisture in a timely and effective manner. I continue to monitor many such problems now – both to advocate on behalf of NYCHA tenants and to assist counsel in prosecuting this lawsuit.

8. On December 15, 2015, the Court entered an order (Dkt. #88), finding that NYCHA had been out of compliance with the Original Consent Decree "from the day it was entered" and appointing a Special Master to assist with bringing NYCHA into compliance. Since that time, I and other leaders of Manhattan Together and SBC have attended more than twenty meetings with the Special Master and various NYCHA employees to develop solutions to the persistent mold and excessive moisture problems in NYCHA housing. My colleagues and I also participated in the intense process of drafting and negotiating that resulted in the parties' joint proposal of the Revised Consent Decree.

9. The leaders of Manhattan Together and SBC are deeply troubled by NYCHA's failure, even after the appointment of the Special Master, to remediate mold and excessive moisture and their root causes in an effective and urgent manner and to reduce the reoccurrence of these problems. Notwithstanding productive interactions I have had with certain NYCHA managers and executives over the years, my overall interactions with NYCHA and with NYCHA's tenants leaves me with no doubt that the lives of NYCHA's tenants, as a whole, have not improved under the Original Consent Decree. Whatever effort NYCHA has made to comply with the Original Consent Decree has been insufficient to meaningfully improve its response to

claims of mold and excessive moisture, or to address the underlying problems that give rise to so many of the complaints. As a result, NYCHA's tenants continue to suffer from the effects of these problems just as they did before the Original Consent Decree was entered.

10. I highlight below several illustrative and recent examples of NYCHA's continued failure to comply with the Original Consent Decree.

### The Continuing Problems of Leaks in Class Representative Felipa Cruz's Bronx Apartment

11. On July 18, 2018, Oscar Cruz, the husband of Class Representative Felipa Cruz, contacted me regarding a water leak in their apartment. He informed me that they had previously reported the leak to NYCHA, but that as of the time they reached out to me, NYCHA had not corrected the issue.

12. I subsequently informed NYCHA of the conditions in the Cruzes' apartment on more than one occasion, but NYCHA failed to correct the problems. In one such communication, on July 31, 2018, I even noted for NYCHA that Ms. Cruz is a named plaintiff in this litigation. But NYCHA still did not correct the issues reported.

13. On July 25 and August 15, 2018, I personally visited the Cruzes' apartment and observed the conditions for myself. I observed conditions that were largely unchanged both between my two visits and from what the Cruzes had reported to me nearly a month before. Specifically, I observed that their ceiling was stained yellow and had signs of mold. The paint and plaster on their walls was bubbling and chipping. And their bathroom vent was inoperable.

14. Further, I observed wood panels in the Cruzes' ceiling, which I was told were put up by NYCHA to cover a hole NYCHA had cut into the Cruzes' ceiling. Soon after the Cruzes had reported the conditions in their apartment to NYCHA, someone from NYCHA had come to their apartment, opened their ceiling and temporarily patched the leaking pipe. However, that same repairman told the Cruzes that the fix was not permanent – instead, a plumber would have to come out to make a complete fix, and none had been scheduled to come. The repairman also left without repairing any of the water damage that had been caused by the leak in the ceiling. **(See generally Exhibit 1**.)

15. I again informed NYCHA of the conditions in the Cruz's apartment after both my visits.

16. On August 20, 2018, NYCHA staff visited the Cruzes' apartment to make repairs. They did begin making repairs, but were unable to complete them and promised to return the following day.

17. The next day, on August 21, 2018, NYCHA staff returned, and the Cruzes have reported that NYCHA appears to have completed all repairs, except painting. However, NYCHA took more than a month after the issues were reported to do so, even though Ms. Cruz is a named plaintiff in this litigation, and NYCHA was contacted about the conditions in the Cruzes' apartment multiple times by myself and others with Manhattan Together and SBC. Moreover, the actual repairs NYCHA performed were seemingly simple, as they were completed in only two days.

## The Recurring Problems of Mold and Moisture in J.D.'s Bronx Apartment

18. On December 4 and 5, 2017, I sent two emails to NYCHA transmitting the then most recent Manhattan Together and SBC report on mold, leaks and other problems we were then tracking in NYCHA apartments, and at the same time highlighting for NYCHA a few of the worst cases of mold and moisture we were then aware of. Included with the descriptions of these worst cases were links to then recent photos and videos of the conditions that were taken by myself or my colleagues with Manhattan Together and/or SBC. One of these was the case of J.D., whose apartment is in the Bronx.

19. As of November 30, 2017, when we met with J.D. and took photographs of the condition of her apartment, she stated that she had submitted several reports to NYCHA over the previous two years, and that NYCHA had done nothing about them. Whether or not NYCHA had actually attempted to resolve any of J.D.'s complaints, the conditions of her apartment at that time speak volumes about NYCHA's inability to adequately address mold and moisture issues.

20. After we had identified J.D.'s complaints as a worst case to NYCHA on December 4, 2017, J.D. subsequently reported to us that NYCHA workers arrived at her apartment on December 11, 2017, and removed and cleaned where there was mold. However, they also informed J.D. that they had not been able to resolve the underlying problem and that in order to do so they would likely have to knock down a wall. To the best of my knowledge, this has not yet been done.

21.     On April 2, 2018, J.D. reported that her bathroom vent was once again broken, that mold was once again growing in her bathroom, and that she had once again submitted a maintenance request to NYCHA to fix the mold in her apartment.

22.     As of June 8, 2018, J.D. reported that NYCHA had done nothing to fix her broken bathroom vent and that mold was present in her bathroom.

23.     On July 3, 2018 – three months after submitting the most recent maintenance request to NYCHA about the broken bathroom vent fan in her apartment – J.D. reported that NYCHA had still done nothing to fix it. J.D. reported being very upset by NYCHA's lack of response.

24.     As of my most recent contact with J.D., on August 13, 2018, these conditions remain unresolved. (**See generally Exhibit 2**.)

**The Ongoing Problems of Mold and Moisture in Y.S.'s Apartment**

25.     On December 4, 2017, I also highlighted the case of Y.S. for NYCHA. Y.S.'s apartment is in the Bronx.

26.     As of December 4, 2017, I had recently twice visited Y.S.'s apartment and photographed the conditions in which she was living. (**See Exhibit 3**.) At that time, Y.S. had previously submitted two complaints about mold in her bathroom.

27.     As of April 10, 2018, Y.S. reported to us that the mold was still an issue.

28.     By April 30, 2018, Y.S. reported that the mold had gotten worse. (**See Exhibit 4**.)

29. As of July 5, 2018, Y.S. reported that the mold had still not been addressed by NYCHA, and in fact, had continued to get worse.

30. As of my most recent contact with Y.S., on August 14, 2018, she reports that she is out of town visiting family, but as of when she left town, NYCHA had not corrected the conditions in her apartment.

**The Revised Consent Decree is Needed to Rectify NYCHA's Failure to Promptly and Properly Address Mold and Moisture Issues**

31. As the few illustrative examples above suggest, NYCHA has far to go to achieve compliance with the Original Consent Decree. Having observed NYCHA's foot-dragging and resistance both before and after the Special Master was appointed, it is my belief that the Revised Consent Decree is a significant step forward in bringing NYCHA into compliance with its obligations to expeditiously and effectively remediate mold and excessive moisture and abate their root causes. The Revised Consent Decree requires NYCHA to commit to new procedures and protocols, developed with the input of experts at Microecologies, to ensure that NYCHA is remediating mold and excessive moisture in accordance with best practices, including the use of moisture meters, fungicidal paint, and mold-resistant construction materials. The Revised Consent Decree also calls for the appointment of mold remediation and data analysis experts who can confirm whether NYCHA is following the new protocols properly and whether NYCHA's periodic reports contain accurate and reliable metrics to measure NYCHA's repair completion times and mold reoccurrence rates.

32. Most importantly, the Revised Consent Decree provides for the appointment of an independent Ombudsperson who can intervene on behalf of individual tenants when NYCHA has not addressed a mold or moisture problem in an effective and timely way. Currently, more than four years after the Original Consent Decree was entered, very few NYCHA tenants dealing with mold and excessive moisture have seen any improvement in their quality of life. The leaders of Manhattan Together and SBC believe that having an Ombudsperson is crucial to ensuring that the Court's order is enforced and that mold and excess moisture are dealt with properly.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

New York, New York

Dated this 31 day of August, 2018.

By: _____
Michael Stanley