UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

MARIBEL BAEZ, *et al.*,

                Plaintiffs,

                -against-

NEW YORK CITY HOUSING AUTHORITY,

                Defendant.

---------------------------------

13cv8916

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiffs move for approval of a revised settlement in this class action against the New York City Housing Authority ("NYCHA"). For the reasons that follow, Plaintiffs' motion for approval is granted.

## BACKGROUND

        In 2013, New York City public housing tenants suffering from asthma brought a class action against NYCHA for its failure to abate mold and excessive moisture in their apartments. NYCHA did not litigate the claims but opted instead to settle the action only months after it was filed. Following a March 27, 2014 fairness hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, this Court approved a Stipulation and Order of Settlement (the "Consent Decree") and so-ordered the Consent Decree on April 17, 2014. (See ECF Nos. 21, 22.) Under the Consent Decree, NYCHA promised in broad strokes to abate mold and excessive moisture by completing 95% of simple and complex work orders within 7 and 15 days, respectively. (Consent Decree ¶¶ 3-6.) The Consent Decree also imposed certain periodic reporting requirements on NYCHA. (Consent Decree ¶ 10.)

As this Court has noted, NYCHA failed to comply with its obligations almost immediately after it executed the Consent Decree. See Baez v. N.Y.C. Hous. Auth., 2015 WL 9809872, at *2 (S.D.N.Y. Dec. 15, 2015). Plaintiffs subsequently moved to enforce the Consent Decree, and in December 2015, this Court granted Plaintiffs' motion and appointed a Special Master. See Baez, 2015 WL 9809872, at *4. Over the next two years, NYCHA labored under the auspices of the Special Master to create new procedures and protocols for remediating mold and excessive moisture and to reduce mold reoccurrence rates.[1] In February 2018, NYCHA informed Plaintiffs that it could not fully implement its new "Mold Busters" program until 2020—long after the Consent Decree's scheduled expiration on April 17, 2018. (Edwards Decl. ¶ 19; Meyer Decl. ¶ 15.) Faced with NYCHA's continuing breaches and the prospect that NYCHA would simply wait until the Consent Decree expired without taking remedial action, Plaintiffs notified NYCHA in February 2018 of their intent to move for injunctive relief unless NYCHA agreed to a revised consent decree. (Edwards Decl. ¶ 20; Meyer ¶ 18.)

Two months of intensive negotiations ensued, culminating in the Special Master's filing of a proposed revised consent decree on April 6, 2018. (ECF No. 166.) This Court declined to approve the proposed decree at that time based on concerns with (1) the parties' use of the same 7- and 15-day remediation deadlines that NYCHA had previously failed to meet; (2) the parties' failure to develop workable remediation deadlines over the past two years; and (3) the parties' addition of structural mechanisms without any indication that such a framework would be effective. (ECF No. 167.) This Court scheduled a status conference for July 10, 2018

---

[1] See Declaration of Steven M. Edwards in Support of Plaintiffs' Motion for an Order Approving Modified Amended Stipulation and Order of Settlement, ECF No. 201 ("Edwards Decl.") ¶¶ 5-15; Declaration of Erin M. Meyer in Support of Plaintiffs' Motion for an Order Approving Modified Amended Stipulation and Order of Settlement, ECF No. 203 ("Meyer Decl.") ¶¶ 3-14.

to discuss Plaintiffs' anticipated motion to approve the proposed revised consent decree. In advance of the conference, the parties submitted a status report (the "Joint Status Report") that revealed: (1) NYCHA's performance was not improving, and in some respects, was worsening; (2) NYCHA consistently failed to complete complex repairs within the specified 15-day period; and (3) NYCHA inaccurately reported its compliance with mold remediation timeframes. (ECF No. 173.)

Following the July 10 status conference, the parties submitted a modified version of their proposed revised consent decree (the "Revised Consent Decree") in response to some of this Court's concerns. (ECF No. 193.) Plaintiffs now move for approval of the Revised Consent Decree under Rule 23(e). NYCHA does not oppose that motion.

## DISCUSSION

As a threshold matter, this Court must identify the precise nature of Plaintiffs' motion because each of the different "ways in which the performance of a class action settlement might be called into question" before a district court "carries its own procedures [and] its own standards for granting relief by the district court." Martens v. Thomann, 273 F.3d 159, 172 (2d Cir. 2001). Indeed, as the Second Circuit has explained, the avenues to challenge a party's failure to perform a class action settlement include "in a contempt proceeding (if the claim is that the district court's orders are not being complied with); in a new action for breach of contract (if the claim is that one or more parties are not living up to their obligations under the settlement stipulation); or in a motion for relief from judgment under Fed. R. Civ. P. 60(b) (if an amendment of the original judgment is being requested)." Thomann, 273 F.3d at 172.

Here, Plaintiffs style their motion as one seeking judicial approval of a proposed

3

class action settlement under Rule 23(e), which in relevant part provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). At the September 26, 2018 approval hearing, however, this Court solicited supplemental letter memoranda addressing the applicability of Rule 60(b). Having considered the motion papers and the supplemental letter memoranda, (see ECF Nos. 212, 214), this Court determines that Rule 60(b)(5) furnishes the appropriate standard for analyzing Plaintiffs' motion, which at bottom seeks to amend the class action settlement that this Court approved under Rule 23(e) four years ago. In relevant part, Rule 60 allows a court "[o]n motion and just terms . . . [to] relieve a party or its legal representative from a final judgment, order, or proceeding" if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5) (emphasis added).

As an initial matter, the Consent Decree's failure to expressly invoke the terms "final judgment" or "final order" does not foreclose the applicability of Rule 60(b). As the advisory committee notes explain, the "qualifying word 'final' emphasizes the character of the judgments, orders, or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule." Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment (emphasis added). In 2014, this Court granted final approval of the Consent Decree, which settled the underlying claims in this litigation and obviated the need for continued litigation. (ECF Nos. 21, 23.) And although the Consent Decree contains a sunset provision, the specified duration of the Consent Decree does not undermine its finality. Cf. EEOC v. Local 40, 76 F.3d 76, 80 (2d Cir. 1996) (observing that judges often use the word "permanent" to distinguish post-settlement injunctions "from the preliminary or

temporary injunctions sometimes issued before full resolution of the merits," even though those "permanent" injunctions may be temporally limited).

Plaintiffs suggest that Rule 60(b) does not apply because the Consent Decree contains no self-executing mechanism for dismissal of the action. But the Second Circuit has explained that the fact that a formal stipulation of dismissal has yet to be filed "[does] not destroy the finality" of a consent injunction that "dispose[s] of the merits of the litigation." See Drywall Tapers & Pointers of Greater N.Y. v. Nastasi & Assocs. Inc., 488 F.3d 88, 95 (2d Cir. 2007). To further bolster their position that the Consent Decree is not "final" for purposes of Rule 60(b), Plaintiffs also argue that additional steps would be required to enter a final judgment even if the Consent Decree had expired on its own terms. This circuit recognizes, however, that actions terminated by agreement may be dismissed by stipulation without culminating in a formal judgment—although "[w]ith some stipulated dismissals, such as class actions, court approval is required, and the judge must determine whether the settlement is fair, adequate, and reasonable." Janus Films, Inc. v. Miller, 801 F.2d 578, 581-82 (2d Cir. 1986). Thus, even if no judgment is entered, actions that terminate "after the filing of a stipulation of dismissal predicated on a settlement constitute final judgments for the purposes of Rule 60(b)." Davis v. Home Depot U.S.A., Inc., 2018 WL 638998, at *2 n.2 (D. Conn. Jan. 31, 2018) (citation omitted); accord Laurenzano v. Crossland Sav. Bank, FSB, 837 F. Supp. 514, 515 (E.D.N.Y. 1993) ("A stipulation of dismissal is a final judgment subject to a Rule 60(b) motion.").

Finally, NYCHA's contention that Rule 60(b) relief is "particularly inappropriate where the relevant challenge is brought to a class action settlement" is unpersuasive. (ECF No. 212 (citing Presidential Life Ins. Co. v. Milken, 946 F. Supp. 267, 278 (S.D.N.Y. 1996).) For

one thing, Milken involved objections to the settlement notice and adequacy of representation—issues which are squarely governed by Rule 23. See Milken, 946 F. Supp. at 278. Moreover, such a broad proposition is undercut by the Second Circuit's endorsement of Rule 60(b) as one of several vehicles to challenge a party's default under a class action settlement. See Thomann, 273 F.3d at 172 ("There are, for example, many ways in which the performance of a class action settlement might be called into question before the district court," including "a motion for relief from judgment under [Rule 60(b)] . . . .").

Indeed, the Supreme Court has long recognized Rule 60(b) as providing the standard to consider modifications of institutional reform consent decrees. Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 383 (1992); see also Horne v. Flores, 557 U.S. 433, 447 (2009) (explaining that "Rule 60(b)(5) serves a particularly important function in what we have termed 'institutional reform litigation'" in part because those injunctions "often remain in force for many years, and the passage of time frequently brings out changed circumstances . . . that warrant reexamination of the original judgment"). The Supreme Court explained as follows:

> There is no suggestion . . . that a consent decree is not subject to Rule 60(b). A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.

Rufo, 502 U.S. at 378. Under the Rufo standard, "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." Rufo, 502 U.S. at 383. If the movant meets this standard, "the court should consider whether the proposed modification is suitably tailored to the changed circumstance." Rufo, 502 U.S. at 383.

Rufo has spawned some disagreement among lower courts as to whether its rule also applies to requests to modify a consent decree to impose more stringent obligations on an enjoined party, as opposed to relieving a defendant of its obligations under a consent decree. Some circuits hold that Rufo applies in circumstances where a defendant seeks to be relieved, but that when a plaintiff seeks to impose additional obligations on a defendant, a district court may modify the consent decree if the plaintiff demonstrates that the decree has not achieved its principal objectives. See, e.g., FTC v. Trudeau, 662 F.3d 947, 952 (7th Cir. 2011) (citing United States v. United Shoe Mach. Corp., 391 U.S. 244, 252 (1968) (explaining that the district court "may modify the decree to as to achieve the required result with all appropriate expedition")). Other circuits have suggested that the Rufo standard applies to modifications that impose additional duties on an enjoined party as well as those that relieve a defendant of its obligations under a consent decree. E.g., Johnson v. Robinson, 987 F.2d 1043, 1050 (4th Cir. 1993). Still other courts take an intermediate position, adopting the United Shoe standard where a plaintiff seeks to impose more stringent requirements on a defendant but holding that Rufo governs modification of all consent decrees arising out of institutional reform litigation. See, e.g., Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd., 2015 WL 8113965, at *4-5 (M.D. Fla. Oct. 30, 2015).

As an initial matter, settled Second Circuit precedent recognizes that Rufo applies at minimum to modifications of institutional reform consent decrees. See Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity, 13 F.3d 33, 37-38 (2d Cir. 1993). But the question of whether Rufo—as opposed to United Shoe—also governs modifications of institutional reform consent decrees that impose additional obligations on an enjoined defendant

7

does not appear to have been squarely examined by the Second Circuit. Nonetheless, useful guidance may be gleaned from existing authority. Specifically, the Second Circuit has rejected the proposition that Rufo only applies when a party "requests to be relieved of some obligation imposed upon it by the terms of the consent decree." Crumpton v. Bridgeport Educ. Ass'n, 993 F.2d 1023, 1030 (2d Cir. 1993) ("Clearly one party to a consent decree cannot unilaterally rewrite the agreement over another party's objections, in order to pursue a course of action favored by it but detrimental to the opposing party, where the course of action is not authorized by the consent decree."). Moreover, in the institutional reform context, the Second Circuit has applied Rufo—albeit without citing United Shoe—to modifications of a consent decree to address a defendant's recalcitrance that frustrates the achievement of a consent decree's goals. See United States v. Sec'y of Hous. & Urban Dev., 239 F.3d 211, 217-18 (2d Cir. 2001).

Ultimately, the applicable standards may functionally dovetail irrespective of whether United Shoe or Rufo formally governs. The Second Circuit has acknowledged that an enjoined institution's "continued failure" to perform pursuant to a consent decree such that the objectives of the consent decree would not be achieved may constitute changed factual conditions under Rufo. Sec'y of Hous. & Urban Dev., 239 F.3d at 218. As Plaintiffs argue in their papers, the Consent Decree has not achieved its objectives of addressing mold occurrence and reoccurrence in NYCHA apartments based on NYCHA's ongoing—and worsening—breaches of its obligations under the Consent Decree. Plaintiffs' submissions reveal that NYCHA's periodic reports consistently misreported the average time it took to complete 15-day repairs. (Joint Status Report, at 12-13; see generally Declaration of Neil Steinkamp in Support of Plaintiffs' Motion for an Order Approving Modified Amended Stipulation and Order of

Settlement, ECF No. 199 ("Steinkamp Decl.").) In reality, the average time to complete 15-day repairs has fluctuated quarterly between February 2017 and April 2018 from a low of 15.1 days to a high of 35.5 days, as calculated by Plaintiffs' independent forensic data analyst. (Joint Status Report, at 13-14; Steinkamp Decl. ¶¶ 12-18.) And even where repairs are completed, the Joint Status Report indicates that the weighted yearly averages of NYCHA's mold reoccurrence rates have trended <u>upward</u> to 43.6% in the May 2017-April 2018 period, with a mold reoccurrence rate of almost 48% in the quarter ending April 2018. (Joint Status Report, at 10; <u>see also</u> Steinkamp Decl. ¶ 7.)

Having concluded that NYCHA's continuing failure to perform under the Consent Decree threatens the achievement of the decree's goals such that modification is warranted, this Court must now determine whether the modifications are "suitably tailored" to NYCHA's violations. <u>See</u> <u>Rufo</u>, 502 U.S. at 583; <u>see also</u> <u>Horne</u>, 557 U.S. at 447 (explaining that once a party carries its burden of "establishing that changed circumstances warrant relief," a court "abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes'" (citation omitted)). To better serve the purposes of the Consent Decree, the Revised Consent Decree includes the following modifications: (1) provides explicitly that NYCHA must prevent reoccurrence of mold, (Revised Consent Decree ¶ 1(f)); (2) adds a "best efforts" obligation for 7- and 15-day repairs, (Revised Consent Decree ¶¶ 3, 11); (3) sets a timeline for the implementation of NYCHA's mold protocols and procedures, including certification of compliance with milestones to ensure that procedures and protocols are timely implemented, (Revised Consent Decree ¶¶ 4-8); (4) imposes additional requirements for revised periodic reports and introduces an Independent Data Analyst, (Revised Consent Decree ¶¶ 14-18); (5)

introduces an Independent Mold Analyst, (Revised Consent Decree ¶¶ 19-21); (6) introduces an Ombudsperson as an independent party to assist in remediating mold, (Revised Consent Decree ¶¶ 22-27); and (7) extends this Court's supervisory jurisdiction until NYCHA has demonstrated its compliance, (Revised Consent Decree ¶ 28).

This Court concludes that requiring NYCHA to address mold reoccurrence explicitly and to implement revised protocols and procedures with the Special Master and Independent Mold Analyst's assistance is suitably tailored to NYCHA's worsening mold reoccurrence rate and NYCHA's excuse that the Consent Decree did not include any formal obligation to address mold reoccurrence. Moreover, the "best efforts" obligation is appropriately aimed toward preventing NYCHA from excusing its non-performance by claiming that a tenant's repair falls within the worst 5% of cases. This Court also finds that the addition of an Independent Data Analyst and a certification requirement for NYCHA's periodic reports is proper to address rampant inaccuracies in those reports. Further, an Ombudsperson tasked with addressing tenant concerns over mold remediation efforts and enforcing the Revised Consent Decree's "best efforts" obligation is satisfactorily directed toward NYCHA's inability to complete 15-day repairs in a timely fashion as well as NYCHA's rising mold reoccurrence rate. (See July 10, 2018 Hr'g at 17-18, 23.) Finally, the removal of the Consent Decree's sunset provision disincentivizes NYHCA from stalling until the Consent Decree expires. Ultimately, these modifications will better serve the underlying goals of the Consent Decree of ensuring that NYCHA effectively remediates mold in its apartments.

Finally, this Court is cognizant that the reasonable fees and expenses of the Ombudsperson, the Independent Data Analyst, and the Independent Mold Analyst will be borne

by NYCHA subject to the Special Master's approval of their monthly invoices. (Revised Consent Decree ¶¶ 17, 19, 23.) At the July 10, 2018 conference, Plaintiffs' counsel estimated the total cost of these independent parties to be less than $500,000 per year. (July 10, 2018 Hr'g Tr. at 18-19 (approximating the annual cost of the Ombudsperson, the Independent Data Analyst, and the Independent Mold Analyst to be $250,000, $120,000, and $100,000, respectively).) While the Revised Consent Decree does not cap the fees and expenses of these independent parties, these estimates give the Court some confidence that fees will be cabined. And in any event, the Independent Data Analyst and Independent Mold Analyst must propose budgets to the Special Master. (Revised Consent Decree ¶¶ 17, 19.) To ensure that the public fisc is protected, the Special Master shall, after approving the monthly invoices described in paragraphs 17, 19, and 23 of the Revised Consent Decree, file monthly reports on the public docket setting forth the fees and expenses of the Ombudsperson, the Independent Data Analyst, and the Independent Mold Analyst.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to approve the Revised Consent Decree is granted. A separate order approving the proposed settlement will be entered. The Clerk of Court is directed to terminate the motion pending at ECF No. 197.

Dated: November 29, 2018
    New York, New York

SO ORDERED:

_WILLIAM H. PAULEY III_
U.S.D.J.