## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARIBEL BAEZ; FELIPA CRUZ; R.D., ON BEHALF OF
HER MINOR CHILD, A.S.; on their own behalf and
on behalf of all others similarly situated;
UPPER MANHATTAN TOGETHER, INC.; and
SOUTH BRONX CHURCHES SPONSORING COMMITTEE,
INC.,

        Plaintiffs,

        v.

NEW YORK CITY HOUSING AUTHORITY,

        Defendant.

No. 13-CV-8916

## MODIFIED AMENDED STIPULATION AND ORDER OF SETTLEMENT

WHEREAS, individual public housing residents who allege that they suffer from asthma

and who brought this action on behalf of themselves and all others similarly situated, and two

nonprofit community-based organizations — Upper Manhattan Together, Inc. and South Bronx

Churches Sponsoring Committee, Inc. — that advocate for the rights of New York City public

housing residents, including those with asthma who have mold and excessive moisture in their

apartments ("Plaintiffs"), allege that defendant New York City Housing Authority ("NYCHA")

fails to make reasonable accommodations and modifications in its policies, practices, and

procedures to effectively abate mold and excessive moisture in their apartments, which they

allege exacerbates their asthma symptoms;

WHEREAS, on December 17, 2013, Plaintiffs brought a lawsuit alleging that NYCHA's

failure to make reasonable accommodations and modifications in policies, practices, and

procedures to effectively abate mold and moisture in Plaintiffs' apartments denies them an equal

and meaningful opportunity to use, benefit from, and enjoy public housing, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 701 *et seq*.; and the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3604 (Dkt. #1);

WHEREAS, NYCHA stated that it is its policy to combat the problems of mold growth and excessive moisture in apartments and other areas by taking proactive measures to eliminate mold at its source;

WHEREAS, NYCHA stated that it is its policy that, where mold and excessive moisture problems are detected, NYCHA shall promptly and methodically assess the situation and apply remediation techniques designed to eliminate mold and/or excessive moisture problems at their source, while protecting the health of residents and staff.  NYCHA's stated policy includes, but is not limited to, removing visible mold, remediating excessive moisture, and identifying and eliminating the sources that support the mold growth and/or excessive moisture;

WHEREAS, this Court certified a class consisting of the following:  Current and future residents of NYCHA who have asthma that substantially limits a major life activity and who have mold and/or excessive moisture in their NYCHA housing;

WHEREAS, this Court approved a Stipulation and Order of Settlement, dated April 17, 2014 ("Stipulation and Order") (Dkt. #22), that established a new mold and moisture abatement program for NYCHA and attached as Exhibit A a document entitled "Operations & Maintenance Policy for Mold & Moisture Control in Residential Buildings" (the "Standard Procedure");

WHEREAS, Plaintiffs contended that NYCHA had failed to comply with the Stipulation and Order of Settlement and moved to enforce it on April 22, 2015 (Dkt. #35);

WHEREAS, on December 15, 2015, this Court found that NYCHA had been out of compliance with the Stipulation and Order of Settlement from the day it was entered and, in granting in part and denying in part Plaintiffs' motion to enforce, ruled that a Special Master would be appointed to enforce NYCHA's compliance (Dkt. #88, Dkt. #96);

WHEREAS on February 1, 2016, the Court appointed Professor Francis McGovern as Special Master to investigate NYCHA's failure to comply with the Stipulation and Order and to make recommendations to the Court concerning steps that should be taken to bring NYCHA into compliance;

WHEREAS, Plaintiffs' counsel and the Special Master have met extensively with NYCHA for two years to discuss the root causes of and reasons for the reoccurrence of mold and excessive moisture and the procedures and protocols that could improve NYCHA's performance;

WHEREAS, in May 2017 NYCHA launched a one-year "Mold Busters" pilot program at ten management locations which was designed to test the root cause analysis and technological tools for remediating mold;

WHEREAS, NYCHA has proposed a schedule for an agency-wide roll-out of the "Mold Busters" program and for modification of NYCHA's Standard Procedure; and

WHEREAS, the parties have agreed to certain modifications of the Amended Stipulation and Order of Settlement that was filed with the Court on April 6, 2018 (Dkt. # 166-1); it is hereby

**ORDERED:**

**I.    DEFINITIONS**

1.      The following definitions apply in this Amended Stipulation and Order of Settlement ("Order"):

(a)      A time period described in "days" refers to consecutive calendar days.

(b)      Asthma – a chronic respiratory illness characterized by inflammation and narrowing of the airways to the lungs, difficulty breathing, and shortness of breath.

(c)      Capital Improvement – An improvement requiring a total system upgrade, including an improvement that replaces a system, major component, or structural part of the property and that increases the value of the asset and extends its useful life.  Repairs that do not constitute Capital Improvements include, but are not limited to: replacing or repairing portions of roofs; insulating or replacing pipes; replacing sheetrock; and replacing or repairing roof fans.

(d)      Disability – a physical, medical, mental, or psychological impairment, including asthma.

(e)      Effective Date – the date on which the Court enters this Order.

(f)      Effectively remediate mold and excessive moisture – the completion of repairs necessary to remove mold and abate excessive moisture, prevent their reoccurrence, and eliminate the causes of mold and excessive moisture at their source.

(g)      Excessive Moisture – uncontrolled dampness, wetness, or the presence of water due to leaks in or seepage from building infrastructure or systems.

(h)      Excessive Moisture Work Order – any work order with a failure code listed in the document entitled "List of Excessive Moisture Failure Codes," attached hereto as Exhibit 1.

(i)      Independent Data Analyst – an individual or advisory firm who is selected by the Special Master with the input of the parties and retained by the Special Master, and is qualified in forensic data analysis.

(j)      Independent Mold Analyst – an individual who is selected by the Special Master with the input of the parties and retained by the Special Master, and has a Mold Assessors

4

License from the New York State Department of Labor and is either (1) certified as an industrial hygienist by the American Industrial Hygiene Association; or (2) certified by the American Council for Accredited Certification (ACAC) as an Indoor Environmental Consultant, an Indoor Environmentalist, a Microbial Consultant, a Microbial Investigator, a Moisture Control Consultant, or a Moisture Control Investigator.

      (k)    Mold – one or more of various types of fungi that grow in filaments and reproduce by forming spores.  The term "mildew" is sometimes used to refer to some kinds of mold, particularly mold in the household with a white or grayish color or mold growing in shower stalls and bathrooms.

      (l)    Mold Work Order – a work order with a failure code of "Mildew Condition."

      (m)    Ombudsperson – an independent, Special Master-appointed individual, as described in Section VI, who has the power to investigate mold and excessive moisture complaints and to order appropriate relief.

      (n)    Periodic Reports – the reporting required under this Order and under Paragraphs 10 and 11 of the Stipulation and Order.

      (o)    NYCHA public housing developments – public housing developments that receive Section 9 subsidies and are operated by NYCHA.

      (p)    Repair – the completion of all Parent and related Child Work Orders necessary to effectively remediate mold and excessive moisture at its source.

      (q)    Work Order – the process by which NYCHA schedules and carries out work to be performed to address a condition in an apartment requiring remediation.

(i)      Parent Work Order – the initial work order created for a mold or excessive moisture condition.

(ii)      Child Work Order – secondary work orders created subsequent to and in furtherance of a Parent Work Order.

## II.      NYCHA'S PERFORMANCE REQUIREMENTS

2.      NYCHA shall effectively remediate mold and excessive moisture in accordance with the terms and conditions of this Order.

3.      NYCHA shall effectively remediate mold and excessive moisture in accordance with the time parameters enumerated below (the "Performance Parameters").  The time to complete a repair is measured from the opening of the Parent Work Order to the time at which every Work Order in the family has been closed.

(a)      NYCHA shall abate flooding conditions when feasible within twenty-four (24) hours, and all standing water relating to the flood shall be mopped up, and water-soaked areas, with the exception of residents' personal property, shall be dried within forty-eight (48) hours.

(b)      For mold and excessive moisture repairs that can be performed by a Maintenance Worker or Caretaker, NYCHA shall complete the repairs in no more than seven (7) days after a mold or excessive moisture condition is detected or reported.  NYCHA shall be deemed in compliance with this provision so long as NYCHA processes to completion at least ninety-five percent (95%) of such repairs in an average of no more than seven (7) days.  If NYCHA has exceeded seven (7) days in completing a mold or excessive moisture repair under this paragraph, NYCHA shall use its best efforts to complete the repairs as quickly as possible.

(c)      For mold and excessive moisture repairs that must be performed by skilled trades workers or other specialized staff in one or more visits, NYCHA shall complete the repairs

in no more than fifteen (15) days after a mold or excessive moisture condition is detected or reported.  NYCHA shall be deemed in compliance with this provision so long as NYCHA processes to completion at least ninety-five percent (95%) of such repairs in an average of no more than fifteen (15) days.  If NYCHA has exceeded fifteen (15) days in completing a mold or excessive moisture repair under this paragraph, NYCHA shall use its best efforts to complete the repairs as quickly as possible.

(d)     For mold and excessive moisture repairs that require Capital Improvements, NYCHA shall use its best efforts to perform all Capital Improvements necessary to remediate the root cause of mold or excessive moisture in the subject apartment or building consistent with NYCHA's Capital Plan.  If NYCHA seeks to exclude a Mold or Excessive Moisture Work Order from its calculation of the time to complete a repair on the basis that the work order requires a Capital Improvement, then NYCHA must provide documentation with the relevant Periodic Report explaining its rationale for excluding a repair as a Capital Improvement within that quarter.  Plaintiffs retain the right to challenge NYCHA's determination that a repair is a Capital Improvement.  When a Capital Improvement is necessary to remediate the root cause of mold or excessive moisture in a resident's apartment, NYCHA shall approve the tenant's request to be transferred to another apartment and assign the transfer the highest transfer priority under NYCHA's Tenant Selection and Assignment Plan ("TSAP").

## III.     PROCEDURES AND PROTOCOLS

4.     On April 6, 2018, NYCHA agreed to revise the Standard Procedure so that it includes procedures and protocols that effectively remediate mold and excessive moisture. NYCHA agreed that its revised Standard Procedure would include, at a minimum:  (a) the reasonable use of a moisture meter, hygrometer, anemometer, and borescope, or comparably effective instruments, to detect the presence of excessive moisture and to diagnose the likely root

cause of the mold or excessive moisture condition; (b) the use of fungicidal paint on walls and

ceilings in any apartment where mold or excessive moisture has occurred in accordance with the

remediation methods used in the Mold Busters pilot program as of April 4, 2018, developed in

partnership with Microecologies, Inc.; (c) the replacement of contaminated sheetrock with mold-

resistant gypsum board and cement board when mold or excessive moisture is detected in an

apartment with sheetrock in accordance with the remediation methods used in the Mold Busters

pilot program as of April 4, 2018, developed in partnership with Microecologies, Inc.; and (d)

enlarging the opening in any wall to inspect all pipes in the wall cavity whenever a wall break

reveals missing or deficient pipe insulation in the wall cavity, and ensuring that an employee

trained in proper pipe insulation methods reinsulates all missing or deficient pipe insulation.

5.      On May 17, 2018, NYCHA provided a draft of the revised Standard Procedure to

the Special Master and to Plaintiffs' counsel.  Plaintiffs' counsel provided comments and

proposed revisions to that draft on June 18, 2018.  The parties agreed to the revised Standard

Procedure on July 9, 2018, and filed it with the Court on July 10, 2018 (Dkt. # 184).  That

revised Standard Procedure is deemed a part of this Amended Stipulation and Order of

Settlement and is incorporated by reference as if fully set forth herein.

6.      After the Court has approved this Amended Stipulation and Order of Settlement,

the parties shall meet with the Special Master to consider whether to modify the Performance

Parameters set forth above in Section II.  After considering the parties' positions, the Special

Master shall issue an order approving any changes to the Performance Parameters and that order

shall have the force and effect of an order issued by an arbitrator.  Thereafter, either party may

ask the Special Master to consider whether to modify the Performance Parameters, and the

Special Master may issue an order approving changes to the Performance Parameters which shall have the force and effect of an order issued by an arbitrator.

7.     NYCHA shall implement the revised Standard Procedure and related activities in accordance with the following timeline:

(a)     NYCHA shall complete the revised design of its Maximo system and its handheld devices to create and track Mold Work Orders by August 30, 2018.

(b)     NYCHA shall finalize the training program regarding the revised Standard Procedure for all staff involved in mold and excessive moisture remediation and shall arrange for a vendor to facilitate these trainings by December 31, 2018.

(c)     NYCHA shall begin the training program by January 7, 2019, and complete the training program by December 23, 2019.

(d)     NYCHA shall begin producing revised Periodic Reports by January 1, 2019.

(e)     NYCHA shall communicate the new Mold Busters program to all residents by January 30, 2019.

(f)     NYCHA shall fully implement the revised Standard Procedure and all other provisions of this Order across all of NYCHA's public housing developments by December 31, 2019.

8.     On or before each of the dates specified in Paragraph 7 above, a responsible person at NYCHA shall certify to the Special Master and to Plaintiffs' counsel either that the work is complete or, if it is not complete, explain why it is not complete, the estimated time for completion, and the impact on other aspects of the schedule.

9.     NYCHA shall improve and update the revised Standard Procedure as necessary and appropriate.  NYCHA shall give Plaintiffs' counsel prior written notice of any proposed revision.  Within ten (10) calendar days of the receipt of such notice, Plaintiffs' counsel shall inform NYCHA in writing whether or not they object to the proposed change.  If Plaintiffs' counsel do not object to the proposed change, NYCHA may then promptly implement it, and the parties may present any such change to the Court for incorporation into this Amended Stipulation and Order of Settlement.  If Plaintiffs' counsel do object, the parties will seek the assistance of the Special Master in reaching a resolution.  After considering the parties' positions, the Special Master shall issue an order approving any changes to the revised Standard Procedure and that order shall have the force and effect of an order issued by an arbitrator.

10.     NYCHA shall also modify its other written policies, standard operating procedures, forms, and informational materials for residents and staff (including maintenance staff, development staff, and maintenance supervisors), as necessary to effect the revised Standard Procedure.

11.     Effective immediately, NYCHA shall run all building roof fans in all NYCHA public housing developments for twenty-four (24) hours per day where possible.

(a)     NYCHA shall inspect the roof fans in all NYCHA public housing developments within forty-five (45) days of the Effective Date and shall use best efforts to repair or replace any malfunctioning roof fan identified during these inspections within twenty-one (21) days and shall repair every malfunctioning roof fan within six (6) months and NYCHA shall report on the inspections once completed.  Once a malfunctioning fan has been repaired, it shall be turned on and run for twenty-four (24) hours per day where possible.

10

(b)      NYCHA shall inspect the roof fans in all NYCHA public housing developments at least once per month thereafter and shall repair or replace any malfunctioning roof fans within twenty-one (21) days of the inspection.  Once a malfunctioning fan has been repaired, it shall be turned on and run for twenty-four (24) hours per day where possible.

## IV.      REASONABLE ACCOMMODATIONS

12.      NYCHA shall continue to comply with Paragraphs 8, 9, and 11 of the Stipulation and Order with regard to Reasonable Accommodations.

13.      The Reasonable Accommodation Report shall be deemed submitted to the Court, and shall include a written certification, signed under penalty of perjury by an authorized NYCHA manager familiar with its contents who has been designated by a NYCHA officer to sign the certification.  The certification shall verify that the Reasonable Accommodation Report is true, accurate, and complete and that the Reasonable Accommodation Report complies with the relevant terms of this Order to the best of that manager's knowledge, information, and belief.

## V.      MONITORING AND REPORTING

**Periodic Reports**

14.      Within thirty (30) days after the Court has so-ordered the modified Performance Parameters in accordance with Paragraph 6, the parties shall meet with the Special Master and the Independent Data Analyst, described below, to design new Periodic Reports that will measure NYCHA's compliance with this Order.  After considering the positions of the parties and the recommendations of the Independent Data Analyst, the Special Master shall issue a report and recommendation with regard to such Periodic Reports and the Court shall consider any objections in accordance with Rule 53(f).

15.      Until January 1, 2019, NYCHA shall continue to produce the Periodic Reports as required under Paragraphs 10 and 11 of the Stipulation and Order within fifteen (15) days of the

close of each quarter, except that the re-inspection report conducted pursuant to Paragraph 10(c) of the Stipulation and Order shall be produced within twenty-eight (28) days of the close of each quarter.

16.     Each Periodic Report shall be deemed submitted to the Court, and shall include a written certification, signed under penalty of perjury by an authorized NYCHA manager familiar with its contents who has been designated by a NYCHA officer to sign the certification.  The certification shall verify that the Periodic Report is true, accurate, and complete to the best of that manager's knowledge, information, and belief.

**Independent Data Analyst**

17.     Within thirty (30) days after the Effective Date, the parties may submit to the Special Master proposals for an Independent Data Analyst, including the candidates' qualifications, experience, and rates.  The Special Master shall consider such proposals and issue a report and recommendation selecting an Independent Data Analyst, which will be subject to the Court's approval under Rule 53(f).  The Special Master or the Court may select a candidate not proposed by the parties.  Upon receiving the Court's approval, the Special Master shall retain the Independent Data Analyst, who shall propose a budget to the Special Master.  NYCHA shall pay the reasonable fees and expenses of the Independent Data Analyst upon the Special Master's approval of the Independent Data Analyst's monthly invoices.

18.     The Independent Data Analyst shall assist the parties and the Special Master in designing new Periodic Reports and shall review and confirm the accuracy of the Periodic Reports and recommend improvements to those reports as needed thereafter.  For purposes of designing, reviewing, and confirming the accuracy of the Period Reports, the Independent Data Analyst shall be given view access to all data relating to mold and excessive moisture in

NYCHA's computer system, in meetings scheduled with NYCHA's IT Department, for such

periods of time and under such terms and conditions that the Special Master deems appropriate.

**Independent Mold Analyst**

19.     Within thirty (30) days after the Effective Date, the parties may submit to the

Special Master proposals for an Independent Mold Analyst, including the candidates'

qualifications, experience, and rates.  The Special Master shall consider the proposals by the

parties and issue a report and recommendation selecting an Independent Mold Analyst, which

will be subject to the Court's approval under Rule 53(f).  The Special Master may select a

candidate not proposed by the parties.  Upon receiving the Court's approval, the Special Master

shall retain the Independent Mold Analyst, who shall propose a budget to the Special Master.

NYCHA shall pay the reasonable fees and expenses of the Independent Mold Analyst upon the

Special Master's approval of the Independent Mold Analyst's monthly invoices.

20.     The Independent Mold Analyst will perform quality assurance inspections of

randomly selected apartments on a quarterly basis.  The Independent Mold Analyst will consult

with the parties on the appropriate methodology for selecting a statistically significant number of

apartments to inspect.  If the parties and the Independent Mold Analyst cannot agree upon an

appropriate methodology, the Special Master shall make that determination.  After conducting

the inspections, the Independent Mold Analyst shall issue a report describing the results and may

make recommendations for improved compliance with the revised Standard Procedure.

21.     Within thirty (30) days of receiving the Independent Mold Analyst's

recommendations for improved compliance with the Standard Procedure, the parties shall discuss

whether they will accept or reject the improvements.  In the event the parties do not reach a

resolution, the parties will present their positions to the Special Master who will make a

determination as to whether NYCHA must implement the Independent Mold Analyst's recommendation. NYCHA or Plaintiffs' counsel may then present such improvements to the Court, together with any unresolved objections, and the Court may issue an order determining whether NYCHA shall implement the improvements.

## VI.    OMBUDSPERSON

22.    Within thirty (30) days after the Effective Date, the parties may make proposals to the Special Master for the appointment of an independent Ombudsperson, unaffiliated with any party, to address residents' concerns about mold and excessive moisture repairs. After considering the parties' proposals, the Special Master shall issue a report and recommendation selecting the Ombudsperson, which will be subject to the Court's approval under Rule 53(f). The Ombudsperson shall serve for such a period of times and under such terms and conditions as the Special Master shall decide.

23.    NYCHA shall pay the reasonable fees and expenses of the Ombudsperson upon the Special Master's approval of the Ombudsperson's monthly invoices. If the Ombudsperson determines that the Ombudsperson needs the assistance of additional persons, the Ombudsperson may seek permission from the Special Master to hire such persons by providing a written explanation of the reasons for such hiring and such other information as the Special Master requests. The Special Master shall provide NYCHA with an opportunity to object to the hiring of additional persons if NYCHA deems it appropriate.

24.    In connection with every mold and excessive moisture repair, when the Parent Mold or Excessive Moisture Work Order is created, NYCHA shall provide the resident with a written statement indicating  whether the repairs will be completed in seven (7) or fifteen (15) days. That written statement shall include the name and contact information of the Ombudsperson and shall state that the resident may contact the Ombudsperson if the resident has

14

any concern about the mold or excessive moisture repair.  In addition, the name and contact information of the Ombudsperson will be posted in a clearly identified and easily accessible location on the NYCHA website.

25.     Upon receiving a complaint from a resident regarding inadequate or untimely mold abatement efforts by NYCHA, the Ombudsperson shall investigate the matter and make recommendations to NYCHA and the resident to resolve the issue.  NYCHA shall fully cooperate with the Ombudsperson's investigation.  If the issue cannot be resolved satisfactorily, the Ombudsperson may issue an order requiring NYCHA to take specific action and may provide for other relief, including but not limited to:  (i) requiring NYCHA to complete the repair within a specified number of days; (ii) requiring NYCHA to approve and assign the highest priority to a transfer of the tenant's household to another apartment in accordance with TSAP; (iii) ordering an independent contractor hired through the Special Master to complete the repairs promptly at NYCHA's expense; and (iv) requesting the Independent Mold Analyst to inspect the apartment and prepare a remediation plan at NYCHA's expense.  Any independent contractor hired by the Ombudsperson must be appropriately licensed and qualified to perform the work required and must meet the insurance requirements used by NYCHA in the regular course of business.  Any independent contractor hired by the Ombudsperson may not be hired to make Capital Improvements.

26.     If the Ombudsperson determines that NYCHA has acted in bad faith or has failed to use its best efforts to effectively remediate mold or excessive moisture in connection with resolving complaints under the Ombudsperson's investigation, the Ombudsperson may order other appropriate relief, provided such relief can be awarded without having an adverse effect on the resident including, without limitation, continued eligibility for housing assistance.  Such

relief may include a fine payable to the Court if the Ombudsperson concludes that NYCHA has systematically failed to comply with this Order.

27.     Orders of the Ombudsperson issued pursuant to paragraph 25 herein shall have the force and effect of an order issued by an arbitrator.  If either party wants to appeal an order of the Ombudsperson issued pursuant to paragraph 26, that party shall give notice of the intent to appeal that order to the Court within five (5) business days of the issuance of the order, and shall perfect the appeal within twenty-one (21) calendar days of the issuance of the order.  If no appeal is noticed within five (5) business days, the Ombudsperson's order shall be deemed a final order, the violation of which may be punishable by contempt.  Nothing herein shall preclude the Court from awarding such other and further relief as the Court deems appropriate.

## VII.   JURISDICTION

28.     This Order shall remain in effect until such time as it is vacated by the Court.  No earlier than December 31, 2020, NYCHA may move to vacate this Order upon a showing that it has complied with the Order as determined by the Court and the Order is no longer needed.  In determining whether NYCHA has complied with this Order, the Court shall consider whether NYCHA has effectively remediated mold and excessive moisture in accordance with Paragraph 2 and has completed repairs within the time periods set forth in Paragraph 3 herein or in accordance with the Performance Parameters as modified pursuant to Paragraph 6 above.  The parties shall schedule a conference with the Court at least once per year, with the first such conference to be held no later than November 30, 2020, to discuss NYCHA's compliance with the Order.

29.     The Court shall have jurisdiction over any motion by the parties to enforce or vacate any order deemed herein to have the force and effect of an order by an aribtrator.

16

30.     In the event that Plaintiffs believe that NYCHA is in systematic noncompliance with the terms of this Order, Plaintiffs may move for enforcement of this Order against NYCHA and for other appropriate relief, including contempt.  Plaintiffs shall provide NYCHA with written notice of the nature and specifics of the claimed violations at least thirty (30) days before any enforcement motion is made, and shall meet and discuss with NYCHA and the Special Master the claimed violations and possible solutions.  The Court may award appropriate relief even if it is determined that NYCHA used best efforts and acted in good faith, if the Court concludes that NYCHA has been unable to perform its obligations because of inadequate support from funders.  Nothing herein shall preclude NYCHA from opposing an award of such relief under such circumstances.

31.     Nothing herein shall preclude NYCHA from complying with its obligations in *United States v. New York City Housing Authority*, 18-cv-5213 (WHP).

32.     This Order does not create any right for individuals to obtain judicial or administrative relief.  No provision of this Order shall infringe upon an individual's right to challenge NYCHA's failure to provide an accommodation or to otherwise address conditions in his or her apartment in any appropriate administrative or court proceeding.

**VIII.   ATTORNEYS' FEES**

33.     Plaintiffs may move for reasonable attorneys' fees and costs in connection with monitoring NYCHA's compliance with this Order, and in connection with any enforcement motion resulting in an informal resolution, a settlement, or a court order in Plaintiffs' favor. Nothing herein shall preclude NYCHA from opposing such a motion.

**IX.   EXHIBIT**

Exhibit 1: List of Excessive Moisture Failure Codes

17

DATED:  July 24,  2018

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

11/29/18

Steven M. Edwards
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Ave, 22nd Floor
New York, New York 10010
Tel:   (212) 849-7000
Fax:   (212) 849-7100
stevenedwards@quinnemanuel.com

Nancy S. Marks
Natural Resources Defense Council
40 West 20th Street
New York, New York 10011
Tel:   (212) 727-2700
Fax:   (415) 795-4799
nmarks@nrdc.org

Marc Cohan, Of Counsel
Greg Bass, Of Counsel
National Center for Law & Economic Justice, Inc.
275 Seventh Avenue, Suite 1506
New York, New York 10001-6708
Tel:   (212) 633-6967
Fax:   (212) 633-6371
cohan@nclej.org
bass@nclej.org

Erin M. Meyer
Zachary W. Chalett
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
Tel:   (212) 969-3000
Fax:   (212) 969-2900
emeyer@proskauer.com
zchalett@proskauer.com

By: /s/ Steven M. Edwards
      STEVEN M. EDWARDS

Counsel for Individual and Class Plaintiffs

Kelly D. MacNeal
New York City Housing Authority
250 Broadway, 9th Floor
New York, New York 10007
Tel:  (212) 776-5184
Fax:  (212) 776-5401
kelly.macneal@nycha.nyc.gov

By: /s/ Kelly D. MacNeal
     KELLY D. MACNEAL

Executive Vice President of Legal Affairs and
General Counsel for Defendant NYCHA

# Exhibit 1

## LIST OF EXCESSIVE MOISTURE FAILURE CODES

1. A work order with failure code "EXCESSIVE MOISTURE."

2. A work order with failure code "BATHTUBSHOWER" and the following problem codes:

   - FAUCETLEAKINGOOO
   - FAUCETRUNNING
   - LEAKUNDER
   - NEEDSGROUTING
   - OVERFLOWDRAINCOVERDML
   - TUBENCLOSUREDL
   - WALLTILESDML

3. A work order with the failure code "BRICKWORK" and the following problem code:

   - SPALLINGCRACKS

4. A work order with the failure code "CANOPY" and the following problem codes:

   - DRAINPIPESDLM
   - FLASHINGDML
   - ROOFINGDML

5. A work order with the failure code "CEILING" and the following problem codes:

   - CEILINGLEAKFROMABOVE
   - CONDENSATION

6. A work order with the failure code "CHIMNEY" and the following problem codes:

   - BRICKSDML
   - CONCRETEDML

7. A work order with the failure code "COMPCHUTESTACK" and the following problem codes:

   - BRICKSDML
   - CONCRETEDML
   - COPSTONEDML

8. A work order with the failure code "DRAINS" and the following problem codes:

   - DRAINDML

1

- DRAINPIPEDML
- FLOODING

9. A work order with the failure code "DRAINSOUTAGE" and the following problem code:

- STACKSTOPPAGE

10. A work order with the failure code "ELVMR" and the following problem code:

- WATERLEAK

11. A work order with the failure code "FACADE" and the following problem codes:

- BRICKWORKDML
- CONRETEDLM
- DAMAGEDCRACKED

12. A work order with the failure code "HEAT" and the following problem codes:

- RADIATORLEAKING
- STEAMLEAKING

13. A work order with the failure code "HOTWATERGEN" and the following problem code:

- STEAMLEAKING

14. A work order with the failure code "LEAKFROMABOVE" and the following problem codes:

- ABOVETHESINK
- CONSTANTDRIPPING
- CONSTANTLEAKING
- FLOODING
- LEADBENDLEAKING
- LEAKOVERBATHTUB
- OVERTOILET
- OVERWINDOW
- SHOWERLEAKING
- WATERPENETRATION

15. A work order with the failure code "PARAPET" and the following problem codes:

- BRICKSDML
- COPSTONEDML

16. A work order with the failure code "PIPES" and the following problem codes:

- PIPENEEDSREPAIR
- PIPESLEAK

17. A work order with the failure code "ROOFTOP" and the following problem codes:

- DRAINPIPEDML
- FLASHINGDML
- GRAVESTOPDML
- NEEDSREPAIR

18. A work order with the failure code "SINK" and the following problem codes:

- FAUCETDLOOO
- FAUCETRUNNING
- LEAKUNDER
- SPEEDYCONNECTLEAKINGDML
- SPOUTDML
- STOPPAGEWITHFLOODING
- STRAINERDML
- WASHINGMACHCONNECTDML
- WATERSHUTOFFVALVEDML

19. A work order with the failure code "TERRACE" and the following problem codes:

- BRICKDML
- FLOODING

20. A work order with the failure code "TOILET" and the following problem codes:

- BOWLLEAKING
- OVERFLOWING
- SPEEDYCONNECTORDL
- TANKLEAKING
- WATERRUNNING
- WATERSHUTOFFVALVEDML

21. A work order with the failure code "VACUUMTANK" and the following problem codes:

- VACUMTANKDML
- VACUUMTANKOOO

22. A work order with the failure code "WALLS" and the following problem codes:

- BRICKSDML
- TILESDML
- WALLLEAK
- WATERDAMAGE

23. A work order with the failure code "WINDOWLINTEL" and the following problem code:

- WINDOWLINTELDML