**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARIBEL BAEZ, *et al.*,

                Plaintiffs,

      -against-

NEW YORK CITY HOUSING
AUTHORITY,

             Defendant.

Case No. 13 Civ. 8916 (WHP)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'**
**MOTION TO ENFORCE THE REVISED CONSENT DECREE**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 3

    I.    NYCHA May Not Circumvent its Obligations Under the Revised
    Consent Decree. ............................................................................................. 3

    II.    The PACT Program Does Not Excuse NYCHA's Failure to Comply with
    its Obligations Under the Revised Consent Decree. ...................................... 4

    III.    NYCHA's Unilateral Decision Not to Comply with its Obligations Over
    Plaintiffs' Repeated Objections Is Not a "Course of Conduct" that
    Entitles it to Ignore the Revised Consent Decree. ........................................ 5

    IV.    NYCHA's Interpretation of the Revised Consent Decree Contradicts
    Well-Settled Principles of Both Consent Decree Interpretation and
    Contract Construction. ................................................................................... 6

    V.    Plaintiffs Seek Modification Only in the Alternative but, to the Extent
    the Court Deems it Necessary, Such Modification Would Be Proper. ......... 10

CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Spandex House, Inc. v. Hartford Fire Ins. Co.*,
   816 F. App'x 611 (2d Cir. 2020) ..............................................................................................8

*Tesfay v. HanesBrands Inc.*,
   No. 19 Civ. 3889 (GHW), 2019 WL 6879179 (S.D.N.Y. Dec. 17, 2019) ................................8

OTHER AUTHORITIES

24 C.F.R. § 982.401 ..................................................................................................................4

## PRELIMINARY STATEMENT

When NYCHA agreed to enter into a consent decree and submit to this Court's jurisdiction, it agreed to effectively remediate mold and excessive moisture conditions in *all* NYCHA apartments and to do so within set performance parameters.  Nothing about NYCHA's Court-ordered commitment distinguished between NYCHA apartments based upon how they are funded or managed.  Nor did the class certified by the Court distinguish between class members based upon the NYCHA housing in which they reside.  In short, NYCHA assumed obligations to all of its tenants no matter who manages their buildings or which Section of the Housing Act pays for them.  And nothing about the Revised Consent Decree changed these obligations.

NYCHA's response brief largely skirts around Plaintiffs' arguments that (1) NYCHA's core obligations under the Revised Consent Decree remained unchanged from the Original Consent Decree and unaffected by the language NYCHA claims applies to Section 9 developments and (2) the manifest intent of the revised decree was to strengthen the Original Consent Decree, not to create a loophole that would enable NYCHA to escape this Court's jurisdiction without ever complying with its terms.  Instead, NYCHA advances the nonsensical claim that it may unilaterally declare itself free and clear of its obligations to certain NYCHA residents, and does so both by taking inconsistent positions and asserting a potpourri of irrelevant arguments.

Thus, while NYCHA initially argues that PACT-managed buildings fall outside the scope of the Revised Consent Decree because they receive funding under Section 8, NYCHA later argues that despite the fact that its proposed Blueprint for Change would also be funded under Section 8, NYCHA "expects" NYCHA buildings covered by the Blueprint (the remainder of all NYCHA buildings, if the Blueprint is approved as planned) to be covered by the Revised Consent Decree.  Similarly, while NYCHA argues that it does not manage NYCHA buildings funded through PACT and therefore has no responsibility to those buildings' tenants under *Baez*, it also claims that those

tenants receive mold protection as a result of contacting the *NYCHA* Leasing Office.

Nor do any alleged benefits of the PACT program allow NYCHA to unilaterally declare itself no longer subject to its Court-imposed obligations.  Plaintiffs certainly hope that the PACT program will be successful, but whether PACT managers invest in infrastructure and remediation has no bearing on whether NYCHA tenants in PACT-managed buildings remain entitled to the significant protections of the Revised Consent Decree (they do).  If NYCHA wanted relief from its obligations under the Revised Consent Decree, it should have sought such relief from the Court, not simply argued that its end run around the Court's order allegedly is a better solution.  In any event, evidence indicates serious compliance problems in multiple PACT-managed buildings.

NYCHA's discussion of the parties' negotiation history and alleged course of conduct are similarly irrelevant, as NYCHA itself argues the Revised Consent Decree should be construed without reference to extrinsic evidence.  *See* NYCHA Br. at 13.  Regardless, NYCHA's arguments are unavailing.  The press releases on which NYCHA attempts to rely in no way made it clear that NYCHA planned to transition one-third of its units to PACT management—an announcement NYCHA did not make until after the parties submitted the Revised Consent Decree to the Court. And NYCHA's argument that its unilateral non-compliance with Court-ordered obligations somehow creates a pattern and practice that shows the Revised Consent Decree was not intended to apply to NYCHA housing funded through Section 8 is both circular and nonsensical.

NYCHA's contract construction argument—to which it devotes only two pages of its twenty-five page brief—that the Revised Consent Decree should be limited to Section 9 housing based on certain language in the revised mold standard procedure and the single use of an undefined phrase likewise fails.  As explained in Plaintiffs' opening brief, each term in a contract needs to be given meaning, and NYCHA's attempt to expand isolated references to Section 9

housing to the entire decree renders meaningless both the defined term "NYCHA public housing developments" and the certified class definition.

Even if NYCHA's argument were countenanced, it would at most mean that two paragraphs in the Revised Consent Decree do not apply to NYCHA housing managed through PACT. For the reasons explained in Plaintiffs' opening brief, if the Court agrees with NYCHA, the Court should interpret those provisions to reflect the manifest intent of the parties and should modify the Revised Consent Decree to ensure that its protections are afforded to all NYCHA residents regardless of who handles the day-to-day management of their buildings.

## ARGUMENT

### I.    NYCHA May Not Circumvent its Obligations Under the Revised Consent Decree.

As detailed in Plaintiffs' opening brief, the purpose of both the Original and Revised Consent Decrees is to ensure the effective and timely remediation of mold and excessive moisture in *all* NYCHA apartments. Nothing about the Original Consent Decree limited its scope to NYCHA buildings funded through Section 9, and nothing about the Revised Consent Decree changed NYCHA's core obligations under the Original Consent Decree. Indeed, the primary difference between the two decrees is that after years of NYCHA's systemic non-compliance with the terms of the Original Consent Decree, the Revised Consent Decree implemented *greater* protections for class members by requiring NYCHA to take additional steps in furtherance of meeting its core obligations under both decrees. *See* Pls.' Br. at 12–13.

Neither Plaintiffs nor, we submit, did this Court believe that the revised decree was intended to (nor did) create a loophole for NYCHA to escape the Court's jurisdiction. Not only was the Revised Consent Decree adopted only after this Court granted Plaintiffs' motion to enforce the Original Consent Decree, but this Court rejected the original iteration of the Revised Consent Decree because its protections for class members were not strong enough. *See* Pls.' Br. at 13–15,

20–21.  NYCHA fails to provide any meaningful response to these key points.

**II.      The PACT Program Does Not Excuse NYCHA's Failure to Comply with its Obligations Under the Revised Consent Decree.**

NYCHA spends the bulk of its brief trying to justify its failure to comply with the terms of the Revised Consent Decree in NYCHA housing funded through Section 8 by arguing that (1) the PACT program enables it to obtain needed funds for infrastructure improvements to NYCHA buildings and (2) PACT managers have pledged to remediate mold complaints in those buildings. *See generally* NYCHA Br. at 3–4, 8–11, 22–24.  But predicting that PACT managers will do a good job remediating mold and excessive moisture—which Plaintiffs hope they will—does not and cannot excuse NYCHA's non-compliance with an order of this Court.  Hope is no substitute for the guaranteed rights afforded NYCHA tenants by the Revised Consent Decree.

Despite NYCHA's assertions that its residents in PACT-managed buildings are afforded "several protections," *see* NYCHA Br. at 23–24, those "protections" are a far cry from the Court-protected rights provided under the Revised Consent Decree.  None of NYCHA's claimed "protections" *require* the effective remediation of mold and excessive moisture within set time parameters.  None *require* that conditions be remediated according to a protocol developed by Court-appointed experts.  None *require* oversight of repairs to ensure they are done properly, nor do they *require* training for workers whose repairs were deemed inadequate.  And none enable residents to call an independent call center, overseen by a Court-ordered Ombudsperson, when their complaints go unanswered.  *See* Ex. A.[1]  The HUD Housing Quality Standards touted by NYCHA do not even mention mold or excessive moisture.[2]  *See* 24 C.F.R. § 982.401.

---

[1] References to "Ex. __" in this reply brief are to the exhibits accompanying the Declaration of Dominique Kilmartin ("Kilmartin Decl.").

[2] In addition to the loss of Court-protected rights, NYCHA residents are harmed by NYCHA's administrative closure of work order tickets at the time of transition and failure to track whether

What's more, evidence demonstrates that PACT is not a panacea for all that ails NYCHA. Legal Services NYC has handled cases in PACT-managed buildings in the last year in which significant mold and moisture problems persisted in tenant apartments despite repeated requests for repairs.  *See* Decl. of Edward Josephson ¶¶ 6–9.  In one such apartment, the PACT manager responded to a ceiling that collapsed from a persistent leak by placing a board over the hole, but did nothing to address the root cause of the leak or the persistent leaks in other parts of the apartment, resulting in the tenant having to place a garbage bag on the ceiling, which she empties of water regularly.  *See id.* ¶ 6.  A recent AM New York article also details significant complaints raised by residents of PACT-managed buildings.  *See* Ex. B.

Plaintiffs are making no objection to the PACT program, but transitioning to PACT and compliance with the Revised Consent Decree are not mutually exclusive.  Put simply, NYCHA remains obligated to comply with the Decree in all respects in all NYCHA housing.

III. **NYCHA's Unilateral Decision Not to Comply with its Obligations Over Plaintiffs' Repeated Objections Is Not a "Course of Conduct" that Entitles it to Ignore the Revised Consent Decree.**

NYCHA advances the circular and nonsensical argument that because it has never implemented a series of Revised Consent Decree requirements in PACT-managed NYCHA housing—to provide NYCHA residents in such buildings access to the OCC and Ombudsperson, to include compliance metrics for PACT-managed buildings in the compliance reports required by the Revised Consent Decree, to provide the IDA access to such data, and to include such buildings in the IMA's required quality assurance inspections and trainings—NYCHA's failure somehow

---

PACT managers are responding adequately to complaints, which has the added harm of skewing NYCHA's performance metrics under the Revised Consent Decree.  *See* Pls.' Br. at 9–10. NYCHA's claim that these failures are de minimis, *see* NYCHA Br. at 23, improperly relies on Manhattan Bundle data alone, rather than accounting for the full third of units it plans to remove.

establishes that NYCHA was not required to comply with its obligations in PACT-managed housing. *See* NYCHA Br. at 14–16, 21. It does no such thing. What it does provide, however, is a clear admission of NYCHA's systematic non-compliance with an order of this Court.

NYCHA's argument also fails to address the fact that Plaintiffs have repeatedly objected to NYCHA's abrogation of its obligations. When NYCHA first informed Plaintiffs in September 2019 that it was transitioning certain NYCHA housing to RAD (PACT) management, Plaintiffs immediately reserved their rights. *See* Meyer Decl. Ex. D. Thereafter, Plaintiffs repeatedly asked NYCHA for information regarding the transitions and compliance within those buildings, and expressed their view that all NYCHA developments are covered by the Revised Consent Decree. NYCHA indicated that it would include compliance metrics for those buildings in its quarterly reports, but failed to include such information. *See* Kilmartin Decl. ¶¶ 6-8, Ex. C. And despite NYCHA's claims to the contrary, NYCHA did not always take the position that its non-compliance was evidence that the Revised Consent Decree did not apply to PACT-managed NYCHA housing. As late as June 2020, NYCHA's counsel informed Plaintiffs that the Brooklyn Bundle PACT contract "requires compliance with *Baez*" and she expected Manhattan to do the same. *See* Ex. D.

Put simply, nothing about NYCHA's systemic non-compliance with the Revised Consent Decree creates a "course of conduct" enabling it to escape the Court's jurisdiction.

## IV.   NYCHA's Interpretation of the Revised Consent Decree Contradicts Well-Settled Principles of Both Consent Decree Interpretation and Contract Construction.

As detailed in Plaintiffs' opening brief, while consent decrees are largely construed as contracts, courts have considerable latitude to interpret consent decrees to implement their purpose and intent and effect the courts' affirmative duty to protect the decrees' integrity. *See* Pls.' Br. at 11–12, 17–18. NYCHA simply ignores these settled principles of consent decree interpretation. But even if strictly construed as a contract, NYCHA's interpretation fails.

First, NYCHA's reliance on certain verbiage in the revised mold standard procedure and its assertion that the procedure is at the heart of the Revised Consent Decree are unavailing—indeed, they turn things on their head.  NYCHA's core obligations under the Revised Consent Decree are the effective remediation of mold and excessive moisture conditions within set performance parameters.  The revised mold standard procedure stems from these core obligations, not the other way around.  And as explained in Plaintiffs' opening brief, nothing about NYCHA's core obligations under the Revised Consent Decree is tied in any way to the form of NYCHA's funding or building management.  *See* Pls.' Br. at 3–6, 12–13, 15–16.  Moreover, despite NYCHA's assertions to the contrary, the Revised Consent Decree contemplates the revision of the mold standard procedure as necessary to ensure that all class members are able to obtain needed accommodations (with the timely and effective remediation of mold and moisture being the very types of reasonable accommodations that spurred the filing of the underlying lawsuit in the first place).  *See* ECF No. 22 ¶ 9 and ECF No. 220 ¶ 12; *see also* Pls.' Br. at 19.  That the procedure currently states it does not apply to PACT-managed NYCHA buildings is reason to revise the procedure, not to use it as the basis to argue NYCHA has no core obligations to all of its tenants.

Second, contrary to NYCHA's contention, the use of the undefined phrase "NYCHA's public housing developments" in Paragraph 7(f) does not limit the scope of the Revised Consent Decree, much less mean that the entire decree is limited to Section 9 housing.  As explained in Plaintiffs' opening brief, the defined term "NYCHA public housing developments" appears in only one paragraph in the entire Revised Consent Decree (Paragraph 11).  To hold that the undefined phrase in Paragraph 7(f) is the same as the defined term used in Paragraph 11 (and that both Paragraphs somehow permeate the rest of the Revised Consent Decree) ignores the well-settled principle of contract construction that definitions provide meaning *only to the provisions in which*

*they appear. See Tesfay v. HanesBrands Inc.*, No. 19 Civ. 3889 (GHW), 2019 WL 6879179, at *5–6 (S.D.N.Y. Dec. 17, 2019) (rejecting argument that defined term applied in section of contract where the term was not used).  NYCHA's attempt to dismiss Plaintiffs' argument as punctuation-driven, *see* NYCHA Br. at 17, misapprehends the only controlling case law on which it relies.  The issue in *Spandex House, Inc. v. Hartford Fire Ins. Co.*, 816 F. App'x 611 (2d Cir. 2020), was whether the meaning of a defined term was altered by the presence of commas *around the term*, not whether the meaning of the defined term could be substituted for an undefined phrase in the same contract.  *See id.* at 614.  Nor is NYCHA correct that the extrinsic evidence supports reading the undefined phrase to have the same meaning as the defined term.  *See* NYCHA Br. at 18.  The manifest intent in revising the Original Consent Decree was to afford additional protections to the class in light of NYCHA's systemic non-compliance, not to eliminate protections for anywhere between one-third and all of the class.  *See* Pls.' Br. at 13.[3]

Even if NYCHA were correct that the undefined phrase in Paragraph 7(f) should be interpreted to be the defined term used in Paragraph 11 (it is not), it would not have the far-reaching effect that NYCHA claims.  Section 7(f) is not a provision of general applicability, *see* NYCHA Br. at 18, but merely requires NYCHA to implement the revised standard procedure and the other provisions of the Revised Consent Decree across its portfolio by a date certain.  *See* ECF No. 220 ¶ 7(f).  Nothing about those requirements means that all provisions of the Revised Consent Decree apply only in Section 9 housing.  Reading the decree in the most charitable light to NYCHA would simply mean that NYCHA was obligated to implement the revised standard procedure and the

---

[3] NYCHA's claim that the PACT program was highly publicized at the time the Revised Consent Decree was negotiated is both irrelevant and incorrect.  The press releases to which NYCHA cites showed only that NYCHA planned to transition approximately 3,100 units to PACT management.  NYCHA's high-profile statement that it planned to transition 62,000 units to PACT came months after the Revised Consent Decree was submitted to the Court.  *See* Ex. E.

remainder of the Revised Consent Decree in Section 9 housing by a date certain, and to implement all provisions besides the revised standard procedure and Paragraph 11 in NYCHA housing funded through Section 8 sometime thereafter. The lack of a specified date for NYCHA to implement such requirements in NYCHA-owned Section 8 housing would make sense, given that there is no set date by which all PACT transitions will take place—indeed, they are still taking place.

NYCHA's interpretation of Paragraph 7(f) fails for additional reasons. If NYCHA were correct that Paragraph 7(f) somehow meant that the entire Revised Consent Decree applied only to Section 9 housing, its further statement that it "expects" the Revised Consent Decree to apply to NYCHA units funded through Section 8 under the proposed Blueprint for Change would make no sense. *See* NYCHA Br. at 22. Moreover, holding that the Revised Consent Decree applies only to Section 9 housing conflicts with the certified class, which comprises certain NYCHA residents "who have mold and/or excessive moisture in their NYCHA housing," without distinction as to how that NYCHA housing is funded. *See* Pls.' Br. at 16–17.[4]

Third, that the Revised Consent Decree refers to "Maximo" and uses NYCHA terminology in referring to NYCHA obligations in no way means that NYCHA only has obligations to tenants in Section 9 housing. It is not at all surprising that Maximo only records data regarding Section 9 housing given that NYCHA—the entity which determines the data that Maximo records—has unilaterally taken the position that the Revised Consent Decree only applies to Section 9 housing. Nor is it helpful to NYCHA's case that the Revised Consent Decree explains that simple, seven-

---

[4] NYCHA's assertion that residents of NYCHA housing funded through Section 8 were excluded by the class notice, *see* NYCHA Br. at 20–21, is manifestly incorrect. The Order requiring distribution of class notice, which NYCHA cites to support its proposition, explicitly states that "Defendants shall cause the Notice . . . to be (a) posted in the lobby of housing units that [NYCHA] owns *and/or* operates. . . ." ECF No. 16 at 2 (emphasis added). The inclusion of "or" makes plain that such notices were to be posted in units that NYCHA owns *and* operates, as well as the units NYCHA owns *but does not* operate (which would now include PACT-managed buildings).

9

day repairs are those that can be performed by a Maintenance Worker or Caretaker.  The Revised Consent Decree also explains that complex, fifteen-day repairs are those that must be performed by skilled trades workers or other specialized staff.  *See* ECF No. 220 ¶ 3(c).  It is not difficult to extrapolate these obligations to PACT-managed buildings: where a repair requires a skilled trade (e.g., plumbing or carpentry), that repair must be completed within fifteen days and where it does not, it must be completed within seven days.  The Revised Consent Decree can easily be interpreted in line with its manifest intent to afford protections to all NYCHA residents, and the Court should do so here.  *See* Cases Cited in Pls.' Br. at 11–12.

## V.  Plaintiffs Seek Modification Only in the Alternative but, to the Extent the Court Deems it Necessary, Such Modification Would Be Proper.

NYCHA claims incorrectly that Plaintiffs seek to modify the Revised Consent Decree.  *See* NYCHA Br. at 24–25.  As explained in Plaintiffs' opening brief, the Court can and should give Plaintiffs the relief they seek without any need for modification.  *See, e.g.*, Pls.' Br. at 19–21. However, in the event the Court deems modification necessary, modification is well within the Court's powers.  *See id.* at 21–22.  NYCHA's assertion that Plaintiffs have failed to demonstrate NYCHA's continued non-compliance with the Revised Consent Decree in PACT-managed buildings (which NYCHA admits would be sufficient grounds for modification), *see* NYCHA Br. at 25, is belied by NYCHA's own argument that its consistent non-compliance in such buildings demonstrates that it has no obligations to NYCHA tenants who live in them.  *See id.* at 14–16.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' moving papers, this Court should enforce the Revised Consent Decree and order NYCHA to comply with its obligations under the Decree in all NYCHA housing.  In the alternative, Plaintiffs respectfully request that the Court modify the Decree as necessary to effect its manifest intent.

Dated: January 19, 2020

Respectfully submitted,

By: _/s/ David A. Picon_

David A. Picon
Jennifer E. Tarr
Erin M. Meyer
Dominique Kilmartin
**PROSKAUER ROSE LLP**
11 Times Square
New York, NY 10036
Tel. 212-969-3000
dpicon@proskauer.com
jtarr@proskauer.com
emeyer@proskauer.com
dkilmartin@proskauer.com

By: _/s/ Gregory Bass_

Gregory Bass
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
275 Seventh Avenue, Ste. 1506
New York, NY 10001
Tel. 212-633-6967
bass@nclej.org

By: _/s/ Nancy S. Marks_

Nancy S. Marks
**NATURAL RESOURCES DEFENSE COUNCIL**
40 West 20th Street
New York, NY 10011
Tel. 212-727-2700
nmarks@nrdc.org

_Attorneys for Plaintiffs_