UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIBEL BAEZ, *et al.*,

            Plaintiffs,

-against-

NEW YORK CITY HOUSING AUTHORITY,

            Defendant.

13 Civ. 8916 (LAP)

[~~PROPOSED~~] ORDER

WHEREAS, on April 12, 2021, this Court entered an Opinion and Order denying Plaintiffs' motion to enforce the Revised Consent Decree (ECF No. 220) with respect to class members residing in NYCHA housing funded through Section 8 and stating that its Opinion and Order "unveils a latent defect in the Revised Consent Decree" in that such class members "are no longer covered by the parties' agreement to injunctive relief;"

WHEREAS, the Opinion and Order directed the parties to "propose either a further revised consent decree that includes all class members or a proposed pre-trial schedule for litigating this action;"

WHEREAS the parties have negotiated an agreement and accompanying exhibit (the "Agreement") that provides protections to class members who reside in NYCHA housing funded through Section 8; it is hereby

**ORDERED** that the Agreement is adopted by the Court.

Dated: December 28, 2021

*Loretta A. Preska*

Hon. Loretta A. Preska, U.S.D.J.

*Baez v. New York City Housing Authority (NYCHA)*
**United States District Court for the Southern District of New York**
**Case No.: 13 Civ. 8916 (LAP)**

Agreement Regarding Settlement of Section 8 Claims (the "Agreement")

**I.     Applicability.**

1. The Modified Amended Stipulation and Order of Settlement, dated November 29, 2018 (Dkt. No. 220) ("Revised Consent Decree") will apply to all NYCHA-managed Section 9 units that are converted to Section 8 units and that continue to be managed by NYCHA, including pursuant to the public trust to be created through state legislation as identified in NYCHA's "Blueprint for Change." The applicability of the Revised Consent Decree to units in the Blueprint for Change program will be subject to the "review period" described below in Paragraphs 4 and 6.

2. The below terms shall apply to NYCHA developments that are or have been converted to Section 8 pursuant to Permanent Affordability Commitment Together ("PACT") (each, a "PACT Project" and the developer(s) leasing and operating that PACT Project, a "PACT Partner") and the residents therein ("PACT residents"), except as modified by Paragraph 5 below.

3. The terms of this Agreement shall be incorporated by reference in NYCHA's agreements with PACT Partners.

4. The date of the issuance of an Architect's Certificate of Completion (AIA Document G704), or equivalent documentation, for a particular PACT Project will commence an eighteen (18) month "review period" for that particular PACT Project during which the same data reporting and Ombudsperson Call Center ("OCC") access that were in place as of the date of the PACT conversion will continue.

5. Only the terms in Paragraphs 6, 10, 11, 12, 16, 17, 20, 21, 22, 23, 24, and 25 shall apply to PACT Projects converted to Section 8 prior to the effective date of this Agreement ("Prior PACT Conversions"), in accordance with the following "review periods":

    a. Prior PACT Conversions with an Architect's Certification of Completion prior to the date of this Agreement shall have a "review period" of fifteen (15) months from the effective date of this Agreement.

    b. Prior PACT Conversions without an Architect's Certification of Completion issued prior to the effective date of this Agreement shall have a "review period" of twelve (12) months after the issuance of an Architect's Certificate of Completion.

1

6. Upon the expiration of the "review period" for a given PACT Project, NYCHA and/or the relevant PACT Partner(s) may submit to the Special Master evidence, including data collected during the "review period," demonstrating that the PACT Project is in substantial compliance with its Mold and Excessive Moisture Obligations, as defined in Paragraph 13. NYCHA and/or the PACT Partner's filing shall also be provided to the Plaintiffs and the Independent Data Analyst (the "IDA"), PACT Independent Mold Analyst ("PACT IMA"), and Ombudsperson, who shall advise both the Special Master and Plaintiffs as to the sufficiency of the PACT Project's compliance. Plaintiffs shall have sixty (60) days after the expiration of the "review period" to submit evidence to the Special Master in support of or in opposition to the PACT Partners' submission. That sixty (60) day period shall not commence unless and until the reporting obligations described in Section IV of this Agreement are up to date and the filing has been provided. Upon a finding that the data indicate that the PACT Project is in substantial compliance with its obligations in this Agreement, the Special Master shall certify that the particular development is no longer subject to this Agreement. At that time, the parties will submit a stipulation to the Court stating that the PACT Project is no longer subject to the Baez litigation and PACT residents living in that PACT Project are no longer part of the Baez class while they reside there. For clarity, a PACT resident who relocates to housing that is subject to this Agreement or the Revised Consent Decree will again be deemed a member of the Baez class upon such relocation.

## II. Practices and Procedures Relating Mold and Excessive Moisture Obligations.

7. NYCHA will require PACT Partners to remediate open mold and excessive moisture work orders within sixty (60) days of a closing, and to investigate and abate flooding conditions for work orders with the Maximo Problem Code "Flooding" within forty-eight (48) hours after the closing, with the understanding that follow-up repair work in these apartments may be needed after the forty-eight (48) hour period, unless a longer timeframe is agreed to by NYCHA in writing after approval from the Special Master in consult with the IDA, PACT IMA (upon selection), and Ombudsperson.

8. NYCHA will require PACT Partners to use a Mold and Leak Work Order Tracker developed by NYCHA in consultation with, and reviewed by, the IDA to track any open mold and excessive moisture work orders identified in Paragraph 7 above.

9. Each PACT Project must have a PACT Mold Operations & Maintenance Plan (the "PACT O&M Plan") that is approved by NYCHA and, for PACT Projects closing after April 1, 2022, the PACT IMA, prior to closing that is incorporated into the documents signed by PACT Partners at closing and that includes:

   a. Technical and procedural requirements for addressing mold and excessive moisture including:

      i. Standard methods and materials for mold and excessive moisture assessment, remediation, and abatement comparable to the NYCHA Mold Standard Procedures Appendix A;

      ii. Initial inspection process to identify root causes of mold and moisture conditions and to determine steps to remediate mold and related conditions, including excessive moisture conditions;

      iii. Quality assurance spot-check inspections by the PACT IMA within thirty (30) days of repair or closure for mold and excessive moisture related conditions;

      iv. Assessment of mold condition by a New York State Department of Labor ("DOL") licensed mold assessor whenever there is more than 10 square feet of mold (a "Mold Project" as defined by Local Law 61);

      v. Preparation of a Mold Remediation Work Plan and notification to the NYC Department of Environmental Protection ("DEP") for Mold Projects;

      vi. Remediation of mold and excessive moisture related conditions at their root source; and

      vii. Post-Remediation Assessments completed and submitted to DEP for Mold Projects.

b. A Resident Communication Procedure that includes:

      i. Reaching out to tenants to schedule inspections and in-unit work within forty-eight (48) hours of receiving the complaint;

      ii. A commitment to include information about residents' right to call the OCC as part of regular communication with tenants;

      iii. Language from the NYCHA Mold Busters and draft NYCHA Leak Standard Procedures for "questions to ask" related to mold and excessive moisture conditions, to help property management staff and licensed mold assessors identify root causes of conditions;

      iv. Clear explanation to residents of inspection findings and work needed; and

      v. Results of quality assurance inspections.

10. NYCHA will require PACT Partners to remediate resident mold and excessive moisture complaints made after closing within thirty (30) days after receiving the complaint and to investigate and abate flooding complaints made after closing within twenty-four (24) hours of receiving the complaint, and to remove standing water within forty-eight (48) hours, unless a longer remediation and/or repair schedule is warranted based upon the specific circumstances of the complaint as provided in Paragraphs 10(a) and 10(b).

   a. NYCHA will require PACT Partners to submit monthly reports (see Paragraph 17 below). PACT Partners shall identify in their monthly reports all unresolved mold or excessive moisture complaints that have been open for more than thirty (30) days and all flooding condition complaints open for more than forty-eight (48) hours; a brief description of the reason why the complaint has been open for more than thirty (30) days or forty-eight (48) hours for flooding conditions; and a proposed date for the complaint to be resolved ("Alternative Repair Schedule"). Such reports shall also be provided to the OCC/Ombudsperson.

   b. If NYCHA or the OCC/Ombudsperson determines that an Alternative Repair Schedule is not warranted and/or not reasonable based on the facts and circumstances provided by the PACT Partner, NYCHA or the OCC/Ombudsperson may initiate the process set forth in Exhibit A.

### III. Accountability and Enforcement

11. All PACT residents will have the ability to file complaints with the Ombudsperson through the OCC. Such complaints will be routed to the PACT Partners to address, with a copy to NYCHA.

12. Within ninety (90) days of the execution of this Agreement, NYCHA will develop a specific procedure for how OCC complaints from PACT residents are to be routed and handled in conjunction with the Special Master, OCC, and Ombudsperson. This procedure will incorporate the process contained in Exhibit A for the Ombudsperson to issue directives to resolve open OCC complaints to this Agreement as well as the requirement that PACT residents be notified of their right to contact the Ombudsperson and OCC.

13. The Special Master, NYCHA, and Plaintiffs will jointly decide on who to appoint as the PACT IMA, chosen from a list of available vendors provided by NYCHA, with the Special Master having final decision-making authority in the event of a disagreement. Selection of the PACT IMA cannot delay any scheduled PACT Project closings. The Special Master, NYCHA, and Plaintiffs will jointly draft the Scope of Work for the PACT IMA and will review the work conducted by the PACT IMA over a six (6) month period to determine if the work is performed in an acceptable manner. If it is determined by the Special Master, NYCHA, or the Plaintiffs that the PACT IMA's work was deficient and is subsequently determined by the Special Master to be deficient in the event of a dispute over the

sufficiency of the work, the Special Master, NYCHA, and Plaintiffs will jointly select another party to serve as the PACT IMA. The Special Master shall have final decision-making authority on whether the PACT IMA's work was deficient and who shall be selected as the PACT IMA. The PACT IMA will provide oversight for all mold and excessive moisture activities at PACT Projects and monitor PACT Partner compliance with PACT O&M Plans and this Agreement (together, the "Mold and Excessive Moisture Obligations"). Such Mold and Excessive Moisture Obligations also include relevant obligations under applicable local, state, or federal law. NYCHA shall pay the reasonable fees and expenses of the PACT IMA upon the Special Master's approval of the PACT IMA's monthly invoices. In the event that NYCHA determines that a particular expense is unreasonable, NYCHA may petition the Special Master for relief from payment obligations for that expense.

14. Each month, the PACT IMA will conduct a statistically significant number of inspections and report on the results of such inspections (the "PACT IMA Report"). PACT IMA Reports shall be shared with Plaintiffs and the Special Master as well as the relevant PACT developments.

15. NYCHA will take the steps referenced in Exhibit A to investigate and address a PACT Partner's alleged failure to comply with its Mold and Excessive Moisture Obligations.

IV. **Transparency/Data Reporting**

16. NYCHA will continue to pay the reasonable fees and expenses of the IDA, the OCC, and Ombudsperson for work related to this Agreement pursuant to the existing contracts between the Special Master and Stout Risius Ross, LLC and Cesar de Castro, respectively, as provided for in the Revised Consent Decree.

17. Within ninety (90) days of the execution of this Agreement, NYCHA will develop a consistent reporting framework from PACT Partners to NYCHA in conjunction with the IDA. NYCHA and the IDA will identify data to be included in the reporting framework and in the quarterly reports that NYCHA provides pursuant to the Revised Consent Decree ("Quarterly Reports"), and will begin including this data in the first Quarterly Report for which three (3) full months of data can be reported or six (6) months after closing, whichever is earlier. This data collection and reporting will continue throughout the relevant "review period" following finalization of the Architect's Certificate of Completion, as discussed in Paragraphs 4 through 6.

18. NYCHA agrees that PACT Partners will meet with Plaintiffs at Plaintiffs' election on an annual basis to discuss settlement compliance and mold and excessive moisture operation and maintenance issues. The PACT Partners shall also meet with the Special Master, IDA, PACT IMA, OCC, and Ombudsperson as reasonably requested by those entities.

### V. Miscellaneous

19. The parties agree that any disputes arising out of the interpretation, application, or enforcement of this Agreement will be raised in the first instance with the Special Master appointed by the Court in this litigation, who will have arbitral powers to resolve such disputes.

20. Nothing about this Agreement shall be read to obviate any of NYCHA's responsibilities under its agreements with PACT Partners. Nor shall anything about this Agreement be read to obviate any of the PACT Partners' responsibilities under their respective agreements with NYCHA.

21. The parties agree to issue a joint statement in support of this Agreement shortly following its execution.

22. This Agreement may be executed in counterparts. This Agreement may be signed by hand or by way of an electronic signature.

23. The effective date of this Agreement shall be deemed to be the date that the Agreement is signed by the last party.

24. All prior discussions, promises, representations, and negotiations between Plaintiffs and NYCHA pertaining to this Agreement are merged and integrated into, and superseded by, this Agreement.

25. Notices to Plaintiffs under this Agreement should be provided to David Picon on behalf of Proskauer Rose LLP, Vivian Wang on behalf of Natural Resources Defense Council, and Gregory Bass on behalf of National Center for Law and Economic Justice. Notices to NYCHA under this Agreement should be provided to Gregory Laufer on behalf of Paul, Weiss, Rifkind, Wharton, and Garrison LLP.

As agreed:

David A. Picon
Jennifer E. Tarr
**Proskauer Rose LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
dpicon@proskauer.com
jtarr@proskauer.com

Lisa Bova-Hiatt
**New York City Housing Authority**
90 Church Street
New York, NY 10007
Tel: (212) 306-3420
Lisa.Bova-Hiatt@nycha.nyc.gov

*General Counsel for NYCHA*

6

Vivian Wang
Sara Imperiale
**Natural Resources Defense Counsel**
40 West 20th Street
New York, NY 10011
Tel: (212) 727-2700
vwang@nrdc.org
simperiale@nrdc.org

Gregory Bass
**National Center For Law & Economic Justice, Inc.**
275 Seventh Avenue, Suite 1506
New York, NY 10001
Tel: (212) 633-6967
bass@nclej.org

*Counsel for Plaintiffs*

Dated: December 17, 2021

Dated: December 20, 2021

7

# EXHIBIT A

Below is a summary of the steps that NYCHA, the Ombudsperson Call Center/Ombudsperson, and Special Master will take to address a PACT Partner's failure to substantially comply with and observe its obligations with respect to mold and excessive moisture under the PACT transaction documents and the Agreement.

| Steps | Source of Complaint | |
|---|---|---|
| | **NYCHA Compliance Investigation** | **Ombudsperson Call Center (OCC) / Ombudsperson** |
| **I. Mold or Excessive Moisture Complaint** | 1. NYCHA will review PACT Partner data reporting, PACT IMA Reports, and third-party mold and leak complaints (i.e. from residents, elected officials, and others) on a monthly basis and shall flag failures to comply with the Agreement within two weeks of a given review.<br>2. Within two weeks, NYCHA's Compliance, Environmental Health and Safety Departments, in coordination with the NYCHA Real Estate Development Division ("REDD"), will investigate any (i) material discrepancies between PACT Partner data and the PACT IMA Reports, (ii) data indicating PACT Partner substantial non-compliance with its mold and leak obligations, and (iii) third-party complaints to verify the alleged non-compliance.<br>3. If verified, NYCHA will issue a Notice of Non-Compliance to the PACT Partner within one week of the verification. Additionally, NYCHA's Leased Housing Department will undertake an inspection of the issue for HUD Housing Quality Standards ("HQS") violations.<br>4. Upon receiving a PACT Partner's monthly data reports, NYCHA will review work orders that have been open for more than thirty (30) days and any Alternative Repair Schedules provided by the PACT Partner. Each month, NYCHA shall inform the OCC whether it intends to object to any of the Alternative Repair Schedules and issue a Notice of Non-Compliance to the PACT Partner. A PACT Partner's failure to propose a | 1. PACT residents can call the OCC with complaints regarding mold or excessive moisture in their units.<br>2. The OCC will conduct intake and, pursuant to a procedure to be developed in conjunction with the OCC and Ombudsperson, those complaints will be sent to the PACT Partner to address the complaint, with a copy to NYCHA REDD Asset Management and the NYCHA Compliance Department. Additionally, NYCHA's Leased Housing Department will undertake an inspection of the complaint for HQS violations.<br>3. If the Ombudsperson determines that the complaint has not been adequately addressed by the PACT Partner within a reasonable timeframe (or, if a timeframe cannot reasonably be set forth, setting forth the steps the PACT Partner must take to correct the issue), the Ombudsperson will issue a notice to NYCHA, with a copy to the PACT Partner, instructing NYCHA to issue a Directive to the PACT Partner.<br>4. If NYCHA does not plan to object to an Alternative Repair Schedule, the Ombudsperson can object to complaints that are open for more than thirty (30) days following a meet and confer with NYCHA. If, after conferring with NYCHA, the OCC determines that a PACT Partner is in substantial non-compliance with Paragraph 10 of the Agreement and that NYCHA is not adequately addressing the non-compliance, the Ombudsperson will issue a notice to NYCHA, with a copy to the PACT Partner, instructing NYCHA to issue a Directive to the PACT Partner. |

1

EXHIBIT A

| | | |
|---|---|---|
| | reasonable revised timeframe or to substantially meet an approved revised timeframe will result in a Notice of Non-Compliance.<br>5. The Notice of Non-Compliance will set forth a reasonable timeframe for the PACT Partner to correct the issue (or, if a timeframe cannot reasonably be set forth, setting forth the steps the PACT Partner must take to correct the issue).<br>6. If the PACT Partner does not correct the issue during the set timeframe or pursuant to the steps set forth in the Notice of Non-Compliance, NYCHA will promptly issue a Directive to the PACT Partner.<br>7. For those complaints that will be best addressed by an upcoming capital repair, NYCHA will take this into account when determining the appropriate steps to address the complaint in the immediate term. The need for a capital repair may not be used to avoid providing interim solutions for residents.<br>8. NYCHA shall include information regarding the number of investigations, verifications, notices, and Directives that it undertakes and/or issues each quarter in the Quarterly Reports. | 5. In the event that NYCHA does not promptly issue a Directive to the PACT Partner in accordance with Section II below or does not issue a Directive that is sufficient to address the complaint, the Ombudsperson may refer the issue to the Special Master for review. The Ombudsperson must consult with NYCHA to try and resolve the issue before referring it to the Special Master for review.<br>6. For those complaints that will be best addressed by an upcoming capital repair, the Ombudsperson will take this into account when determining the appropriate steps to address the complaint in the immediate term.<br>7. NYCHA shall include information regarding the number of investigations, verifications, notices, and Directives that the Ombudsperson undertakes and/or issues each quarter in the Quarterly Reports. |
| **II. NYCHA Directive** | 1. NYCHA will issue a formal Directive that will include a Corrective Action Plan ("CAP") specifying requirements for the PACT Partner, as well as the timeframe within which the CAP needs to be addressed, to ensure prompt compliance.<br>2. The Directive shall include measures that NYCHA will take if the PACT Partner fails to comply with the CAP, including but not limited to NYCHA undertaking the work itself, if appropriate, and NYCHA referral of the issue of non-compliance to the Special Master for a determination (see below). | |
| **III. Suspension of HAP** | If the PACT Partner does not correct the HQS violations within the required timeframe, NYCHA Leased Housing will suspend Section 8 Housing Assistance payments for the unit in accordance with its HQS policies and procedures. | |
| **IV.** | 1. Failure to materially comply with any Directive mentioned above as determined by NYCHA or the Ombudsperson will result in an appearance before the Special Master, at which NYCHA/the Ombudsperson and the PACT Partner will have an opportunity to submit evidence in support of each party's position. | |

# EXHIBIT A

| **Referral to Special Master** | 2. PACT Partners will be required to consent to the Special Master's limited jurisdiction to determine the outcome of the NYCHA Directive.<br>3. Upon a finding that the PACT Partner has failed to comply with the NYCHA Directive, the Special Master will have the authority to issue an order against the PACT Partner to correct the non-compliance that has the force of a court order or, if appropriate, issue other penalties and fines.<br>4. Upon a finding that a Prior PACT Conversion is in substantial non-compliance with applicable Agreement provisions, or a finding that NYCHA has not promptly issued a Directive or issued a Directive insufficient to address a complaint, as discussed in Section I, Paragraph 5 (OCC side of the section) above, the Special Master will have the authority to issue an order against NYCHA to ensure that the non-compliance is addressed that has the force of a court order or, if appropriate, issue other penalties and fines. |